**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Stuart Komrower, Esq.
Ryan T. Jareck, Esq.
Matteo W. Percontino, Esq.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
Email: msirota@coleschotz.com
      skomrower@coleschotz.com
      rjareck@coleschotz.com
      mpercontino@coleschotz.com

*Proposed Counsel for Debtors*
*and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| RTW RETAILWINDS, INC., *et al.,* | Case No. 20-_____( ) |
| Debtors.[1] | Joint Administration Requested |

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 366 FOR
INTERIM AND FINAL ORDERS (I) APPROVING DEBTORS' PROPOSED FORM OF
ADEQUATE ASSURANCE OF PAYMENT TO UTILITY PROVIDERS, (II)
ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE
ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, AND
(III) PROHIBITING UTILITY PROVIDERS FROM ALTERING,
<u>REFUSING, OR DISCONTINUING UTILITY SERVICE</u>**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc. (4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095); Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341); Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936). The Debtors' principal place of business is 330 W. 34th St., 9th Floor, New York, New York 10001.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

RTW Retailwinds, Inc. and its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), by and through their undersigned proposed counsel, submit this motion (the "**Motion**") pursuant to sections 105(a) and 366 of title 11 of the United States Code (the "**Bankruptcy Code**") for entry of an interim order and final order, substantially in the forms submitted herewith (i) approving the Debtors' proposed form of adequate assurance of payment to utility providers, (ii) establishing procedures for determining adequate assurance of payment for future utility services, and (iii) prohibiting utility providers from altering or discontinuing utility service on account of an outstanding prepetition invoice. In support of the Motion, the Debtors respectfully represent as follows:

## I. <u>JURISDICTION</u>

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, dated September 18, 2012 (Simandle, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are sections 105 and 366 of the Bankruptcy Code.

## II. <u>BACKGROUND</u>

3. On the date hereof (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

4.     Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

5.     Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert Shapiro in Support of Debtors' Chapter11 Petitions and First Day Pleadings*, sworn to on the date hereof (the "**First Day Declaration**"), which has been filed with the Court contemporaneously herewith.[2]

### III.     THE DEBTORS' UTILITIES

**A.     The Utility Providers**

6.     In the ordinary course of their business, the Debtors receive utility services from various utility providers (the "**Utility Providers**") for, among other things, electricity, sewer, water, natural gas, fuel oil, and telecommunications services.  The Utility Providers include, without limitation, the entities set forth on the schedule attached hereto as **Exhibit A** (the "**Utility Service List**").[3]

7.     On average, the Debtors spend approximately $360,000 each month on utility costs, based on an average monthly cost over the trailing 12-month period.  Accordingly, the Debtors estimate that their costs for utility services during the next 30 days will be approximately $360,000.  The Debtors are seeking to continue paying Utility Providers in the ordinary course, including amounts outstanding as of the Petition Date.

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

[3] The Debtors reserve the right to amend or supplement the Utility Service List to include any Utility Provider omitted.  The inclusion of any entity on the Utility Service List is not an admission that such entity is a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve the right to contest any such characterization in the future.

60917/0001-20080549v2

8.     To manage the Debtors' payments owed to most of their Utility Providers, the Debtors entered into that a services agreement (as amended, modified, and supplemented from time to time, the "**Service Agreement**") with ENGIE Insight Services, Inc. ("**ENGIE**"). Pursuant to the Service Agreement, the Debtors pay Engie on a weekly basis for the amounts invoiced for the Utility Services managed by Engie, plus a monthly fee, in each case, in the ordinary course of business.

9.     Preserving utility services on an uninterrupted basis is essential to the Debtors' operations.  Any interruption in utility services, even for a brief period of time, would seriously disrupt the Debtors' ability to conduct their store closing sales and service their customers.  This disruption would result in a decline in the Debtors' revenues.  Such a result could seriously jeopardize the Debtors' efforts to maximize value for the benefit of their creditors.  Therefore, it is critical that utility services continue uninterrupted during these chapter 11 cases.

B.     **The Proposed Adequate Assurance**

10.     The Debtors intend to pay postpetition obligations owed to the Utility Providers in a timely manner.  The Debtors expect that cash flows from operations and their anticipated use of cash collateral will be sufficient to pay postpetition obligations related to their utility services in the ordinary course of business.

11.     Nevertheless, the Debtors propose to deposit, within twenty (20) days following entry of the Interim Order granting this Motion, into a newly-created, segregated, interest-bearing bank account (the "**Adequate Assurance Account**") a sum equal to the cost of two weeks' worth of the average utility cost for each Utility Provider (less any amounts already on deposit with any such Utility Provider that have not been applied to outstanding prepetition amounts), based on the Debtors' average usage (collectively, the "**Adequate Assurance**

4

**Deposit**").  As of the Petition Date, the Debtors estimate that the Adequate Assurance Deposit will total approximately $168,000 (not including any fees that may become due to Engie).

12.     Although the Adequate Assurance Deposit will be placed into a single bank account, two weeks' worth of estimated utility costs will be separately allocated for, and payable to, each Utility Provider as reflected on the Utility Service List.  The portion of the Adequate Assurance Deposit attributable to each Utility Provider shall be maintained until the earlier of (i) the Debtors' termination of services from such Utility Provider and (ii) the confirmation of a plan of reorganization or further order of this court, if not applied or returned to the Debtors earlier.[4]

13.     If the Debtors fail to pay a utility bill when due (including the passage of any cure period), the relevant Utility Provider shall provide notice of such default to the Debtors.  If within five (5) business days of the Debtors' receipt of such notice, the bill is not paid, the Utility Provider may file an application with the Court certifying that payment has not been made and requesting the amount due up to an aggregate maximum equal to the Adequate Assurance Deposit allocable to such Utility Provider.

14.     The Debtors submit that the Adequate Assurance Deposit, in conjunction with the cash flows from operations, and cash on hand demonstrate the Debtors' ability to pay for future utility services in the ordinary course of business (collectively, the "**Proposed Adequate Assurance**") and constitute sufficient adequate assurance of payment to the Utility Providers to satisfy the requirement of section 366 of the Bankruptcy Code.  However, if any Utility Provider

---

[4] In the event that a Utility Provider has multiple accounts with the Debtors, then, upon termination of an account by the Debtors, only that portion of the Adequate Assurance Deposit attributable to such account will be returned.

believes additional assurance is required, they may request such assurance pursuant to the procedures described below.

C.     **The Proposed Adequate Assurance Procedures**

15.     In light of the severe consequences to the Debtors of any interruption in services by the Utility Providers, but recognizing the right of each Utility Provider to evaluate the Proposed Adequate Assurance on a case-by-case basis, the Debtors request that the Court approve, and allow the Debtors to implement, the following procedures (the "**Adequate Assurance Procedures**") by which a Utility Provider not satisfied with the Proposed Adequate Assurance may request additional adequate assurance:

(a)     Within two (2) business days of the date the proposed Interim Order granting this Motion is docketed, the Debtors will mail a copy of the Interim Order to the Utility Providers on the Utility Service List.

(b)     In the event that any Utility Provider was omitted from the Utility Service List, the Debtors will have the right to supplement the Utility Service List – and deposit two weeks' worth of estimated utility costs in the Adequate Assurance Account for the benefit of such Utility Provider (less any amounts on deposit with any such subsequently added Utility Provider that have not been applied to outstanding prepetition amounts) – and will promptly serve the Interim Order or the Final Order, as the case may be, upon such omitted Utility Provider upon learning of such Utility Provider (each such Utility Provider is referred to herein as a "**Subsequently Identified Utility Provider**").

(c)     Any Utility Provider that is not satisfied with the Adequate Assurance Deposit and seeks additional or other assurance of payment must serve a request for additional assurance of future payment (an "**Additional Assurance Request**") no later than (i) the date that is seven (7) calendar days before the date of the hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "**Final Hearing**"), or (ii) in the case of a Subsequently Identified Utility Provider, the date that is fourteen (14) days after the date such Subsequently Identified Utility Provider receives notice (as applicable, the "**Additional Assurance Request Deadline**") by serving a request upon the Debtors at the following: (i) RTW Retailwinds, Inc., 330 W. 34th St., 9th Floor, New York, NY 10001, Attn: Marc Schuback and via email at MSchuback@retailwinds.com; and (ii) Cole Schotz P.C., Court Plaza North, 25 Main Street, Hackensack, New Jersey 07602, Attn.: Michael D.

Sirota and Ryan T. Jareck and via email at msirota@coleschotz.com and rjareck@coleschotz.com.

(d)   Any Additional Assurance Request must (i) be in writing, (ii) set forth the location for which utility services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits or other prepayments or assurances previously provided by the Debtors, (iv) describe in sufficient detail the reason(s) why the proposed treatment afforded pursuant to the procedures set forth herein does not constitute satisfactory adequate assurance of payment, and (v) include a proposal for what would constitute adequate assurance from the Debtors, along with an explanation of why such proposal is reasonable.

(e)   If a Utility Provider makes a timely Additional Assurance Request that the Debtors believe is reasonable, the Debtors will be authorized, in their sole discretion, to comply with such request without further order of the Court, and may, in connection with such Additional Assurance Request, provide such Utility Provider with additional adequate assurance of future payment, including, but not limited to, cash deposits, prepayments, and other forms of security, without further order of the Court.

(f)   If the Debtors determine that the Additional Assurance Request is not reasonable and are not able to reach a resolution with the Utility Provider, (i) the Debtors will request that the Court hear such Additional Assurance Request at the Final Hearing, or (ii) if the party making the Additional Assurance Request is a Subsequently Identified Utility Provider whose Additional Assurance Request Deadline falls after the date of the Final Hearing, the Debtors will schedule a hearing before the Court (a "**Determination Hearing**") to determine (x) if additional assurance to such Utility Provider is necessary and, if so, (y) the nature and amount of the adequate assurance to be provided to such Utility Provider.

(g)   Pending resolution of a Utility Provider's Additional Assurance Request at the Final Hearing or a Determination Hearing, as the case may be, such Utility Provider will be prohibited from altering, refusing or discontinuing service to the Debtors.

(h)   If a Utility Provider fails to send an Additional Assurance Request by the applicable Additional Assurance Request Deadline, such Utility Provider will have waived its right to make an Additional Assurance Request and will be deemed to have received adequate assurance of payment in accordance with section 366(c)(1)(A)(vi) of the Bankruptcy Code by virtue of the Adequate Assurance Deposit.

60917/0001-20080549v2

(i) A Utility Provider will be deemed to have received adequate assurance of payment unless and until a future order of this Court is entered requiring further adequate assurance of payment.

## IV.    BASIS FOR RELIEF REQUESTED

16.    This Court has the authority to grant the relief requested herein pursuant to Bankruptcy Code section 105 and 366(a).

17.    Congress enacted section 366 of the Bankruptcy Code to protect debtors from utility service cutoffs upon a bankruptcy filing while providing utility companies with adequate assurance that the debtors would pay for postpetition services.  *See* H.R. Rep. No. 95-595, at 350 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6306.  Accordingly, section 366 of the Bankruptcy Code protects debtors by prohibiting utilities from altering, refusing or discontinuing services to a debtor solely because of the commencement of the case or because of unpaid prepetition amounts for a period of 30 days after a chapter 11 filing.  At the same time, section 366 protects utilities by permitting them to alter, refuse or discontinue service after 30 days if the debtor has not furnished "adequate assurance" of payment in a form "satisfactory" to the utility.

18.    Amendments to the Bankruptcy Code did not abrogate the bankruptcy court's ability to determine the amount of adequate assurance necessary or change the fundamental requirement that assurance of payment simply must be "adequate."  Thus, while section 366(c) of the Bankruptcy Code limits the factors a court may consider when determining whether a debtor has provided adequate assurance of payment, it does not limit the court's ability to determine the amount of payment necessary, if any, to provide adequate assurance.  Section 366(c) of the Bankruptcy Code gives courts the same discretion in determining the amount of payment necessary for adequate assurance that they previously had.  *Compare* 11 U.S.C. § 366(b) (2005) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide

8

adequate assurance of payment.") *with* 11 U.S.C. § 366(c)(3)(A) (2005) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance payment under paragraph (2)").

19.    Section 366(c)(1)(A) of the Bankruptcy Code provides that the phrase "adequate assurance of payment" means (i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee.  In addition, it is well established that section 366(b) of the Bankruptcy Code permits a court to find that no adequate assurance payment at all is necessary to provide a utility with adequate assurance of payment. *See Va. Elec. & Power Co. v. Caldor Inc.*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly . . . a bankruptcy court's authority to 'modify' the level of the 'deposit or other security' provided for under § 366(b), includes the power to require 'no deposit or other security' where none is necessary to provide a utility supplier with 'adequate assurance of payment'").

20.    Finally, section 366(c), only requires that a utility's assurance of payment be "adequate."  Courts have recognized that, in determining the requisite level of adequate assurance, bankruptcy courts should "focus 'upon the need of the utility for assurance, and to require that the debtor supply *no more than that*, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'"  *Va. Elec. & Power Co.*, 117 F.3d at 650 (emphasis in original); *see also In re Penn. Cent. Transp. Co.*, 467 F.2d 100, 103-04 (3d Cir. 1972) (affirming bankruptcy court's ruling that utility deposits were not necessary where such deposits likely would "jeopardize the continuing operation of the [debtor] merely to give further security to suppliers who already are reasonably protected").  Accordingly, demands by a Utility

Provider for a guarantee of payment should be refused when the Debtors' specific circumstances already afford adequate assurance of payment.

21.     The Debtors anticipate having sufficient resources to pay, and intend to pay, all valid postpetition obligations for utility services in a timely manner.  In addition, the Debtors' reliance on utility services for the operation of their business and preservation of value of their assets provides them with a powerful incentive to stay current on their utility obligations.  These factors, which the Court may consider when determining the amount of any adequate assurance payments, justify finding that the Debtors are not required to make any additional adequate assurance payments in these chapter 11 cases.  In light of the foregoing, the Debtors respectfully submit that the Proposed Adequate Assurance is more than sufficient to assure the Utility Providers of future payment.

22.     Absent the approval of the Adequate Assurance Procedures, Utility Providers could discontinue service, without warning, thirty (30) days from the Petition Date, if they claim they have not yet received a "satisfactory" adequate assurance payment.  Under the Adequate Assurance Procedures, however, any Utility Provider that fails to file a timely Additional Assurance Request shall be deemed to consent to the Adequate Assurance Procedures and shall be bound by the Court's order approving this Motion.  *See In re Syroco, Inc.*, 374 B.R. 60, 62 (Bankr. D.P.R. Aug. 22, 2007) (a utility provider's lack of objection, response or counter-demand after receiving notice of hearing on a utilities motion, notice of interim order and notice of final hearing constitutes tacit acceptance of the debtor's proposed two-week cash deposit as adequate assurance of payment as such term is used in section 366 of the Bankruptcy Code).

23.     The Adequate Assurance Procedures are necessary for the Debtors to effectuate their chapter 11 strategy.  If the Adequate Assurance Procedures are not approved, the Debtors

60917/0001-20080549v2

likely will be confronted with and forced to address numerous requests by their Utility Providers at a critical point in their chapter 11 cases. Moreover, the Debtors could be blindsided by a Utility Provider unilaterally deciding – on or after the 30th day following the Petition Date – that it is not adequately protected and, therefore, either making an exorbitant demand for payment to continue service or discontinuing service to the Debtors altogether. Such an outcome could seriously jeopardize the Debtors' operations and asset values and ability to maximize recoveries to their stakeholders.

24. Under the circumstances of these cases, the Debtors believe that the establishment of a cash reserve in a bank account, in an amount that is substantial relative to the Debtors' average usage for the fiscal year ending 2019, constitutes adequate assurance of payment under section 366(c) of the Bankruptcy Code. The Adequate Assurance Procedures also are consistent with procedures adopted in other recent chapter 11 cases in this District. *See, e.g.*, *In re Modell's Sporting Goods, Inc.*, Case No. 20-14179 (Bankr. D.N.J. Mar. 11, 2020) (two weeks' deposit); *In re Aceto Corp.*, Case No. 19-13448 (Bankr. D.N.J. Mar. 15, 2019) (same); *In re New England Motor Freigh, Inc.*, Case No. 19-12809 (Bankr. D.N.J. Feb. 13, 2019) (same) *In re B. Lane, Inc.*, Case No. 17-32958 (Bankr. D.N.J. Dec. 15, 2017) (same); *In re Mountain Creek Resort, Inc.*, Case No. 17-19899 (Bankr. D.N.J. June 5, 2017) (same); *In re C. Wonder LLC*, Case No. 15-11127 (Bankr. D.N.J. January 26, 2015) (same); *In re Crumbs Bake Shop, Inc.*, Case No. 14-24287 (Bankr. D.N.J. July 16, 2014) (same); *In re MEE Apparel LLC*, Case No. 14-16484 (Bankr. D.N.J. Apr. 4, 2014) (same).

25. Based on the foregoing, the Debtors respectfully submit that the relief requested herein is necessary and appropriate, is in the best interest of the Debtors' estates, and should be granted in all respects.

60917/0001-20080549v2

## V.     RESERVATION OF RIGHTS

26.     Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## VI.     NO PRIOR REQUEST

27.     No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

## VII.     REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

28.     To implement the foregoing successfully, the Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

## VIII.     NOTICE

29.     Notice of this Motion has been provided to (i) the Office of the United States Trustee for Region 3; (ii) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (iii) counsel for the administrative agent under the Debtors' pre-petition revolving credit facility, Wells Fargo Bank, National Association, c/o Otterbourg P.C. (Attn: Daniel F. Fiorillo, Esq. and Chad B. Simon, Esq.), 230 Park Avenue, New York, NY 10169-0075; (iv) the Internal Revenue Service; (v) the United States Attorney's Office for the District of New Jersey; and (vi) the Utility Providers listed on **Exhibit A** hereto.  The Debtors

submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

60917/0001-20080549v2

WHEREFORE the Debtors respectfully request entry of the proposed interim and final orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated:  July 13, 2020

Respectfully submitted,

**COLE SCHOTZ P.C.**

By:    */s/ Michael D. Sirota*
     Michael D. Sirota, Esq.
     Stuart Komrower, Esq.
     Ryan T. Jareck, Esq.
     Matteo W. Percontino, Esq.
     Court Plaza North
     25 Main Street
     Hackensack, NJ 07601
     Telephone: (201) 489-3000
     Facsimile:  (201) 489-1536
     Email: msirota@coleschotz.com
            skomrower@coleschotz.com
            rjareck@coleschotz.com
            mpercontino@coleschotz.com

60917/0001-20080549v2