**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Stuart Komrower, Esq.
Ryan T. Jareck, Esq.
Matteo W. Percontino, Esq.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile:  (201) 489-1536
Email: msirota@coleschotz.com
       skomrower@coleschotz.com
       rjareck@coleschotz.com
       mpercontino@coleschotz.com

*Proposed Counsel for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| In re: | Chapter 11 |
|---|---|
| RTW RETAILWINDS, INC., *et al.,* | Case No. 20-_____(    ) |
| Debtors.[1] | Joint Administration Requested |

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), 507(a), AND 541 FOR ENTRY OF AN ORDER AUTHORIZING, BUT NOT DIRECTING, THE DEBTORS TO PAY CERTAIN PRE-PETITION TAXES AND FEES**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc. (4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095); Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341); Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936).  The Debtors' principal place of business is 330 W. 34th St., 9th Floor, New York, New York 10001.

60917/0001-20080841v1

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

RTW Retailwinds, Inc. and its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows:

## I.    JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, dated September 18, 2012 (Simandle, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are sections 105(a), 363(b), 507(a), and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## II.    BACKGROUND

3. On the date hereof (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

4. Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

5. Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert Shapiro in Support of Debtors' Chapter 11 Petitions and First Day*

*Pleadings*, sworn to on the date hereof (the "**First Day Declaration**"), which has been filed with the Court contemporaneously herewith.[2]

### III.   THE SALES AND USE TAXES

6.   In the ordinary course of operating their business, the Debtors collect, withhold, or incur an assortment of state and local sales taxes in connection with the sale of various products to their customers through both in-store and eCommerce sales (collectively, the "**Sales Taxes**"). The Debtors remit the Sales Taxes to various state and local taxing authorities (collectively, the "**Authorities**") generally on a monthly or fiscal period basis, with some remittance made on a quarterly or annual basis. Sales Taxes are essentially general consumption taxes charged at the point of purchase for certain goods and services. Sales Taxes are usually set by the applicable taxing Authority as a percentage of the retail price of the good or service purchased.

7.   In addition, the Debtors incur use taxes on account of the purchase of various supplies or other goods utilized by the Debtors in the ordinary course of their businesses (collectively, the "**Use Taxes**" and, together with Sales Taxes, the "**Sales and Use Taxes**") and remit such taxes to the Authorities. Use Taxes typically arise if a supplier does not have business operations in the state in which it is supplying goods and, therefore, does not charge sales tax, but the goods are otherwise taxable to the Debtors as purchasers.

8.   Prior to the Petition Date, the Debtors engaged Eisner Amper LLP ("**Eisner**") to administer their compliance requirements for Sale and Use Taxes, including the preparation and filing of applicable returns and the processing and remittance of Sales and Use Taxes to the

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

60917/0001-20080841v1

applicable Authorities. As part of the Debtors relationship with Eisner, the Debtors fund an Eisner bank account with amounts due for Sales and Use Taxes so that Eisner can pay such amounts to the appropriate Authorities on behalf of the Debtors. As of the Petition Date, the Debtors do not owe Eisner for services related to the Sales and Use Taxes.

9. The pre-petition Sales and Use Taxes are not property of the Debtors' estates but, rather, are held in trust for the Authorities. The Debtors seek to pay the pre-petition Sales and Use Taxes in order to, among other things, prevent the Authorities from taking actions that might interfere with the Debtors' administration of their chapter 11 cases, which may include bringing personal liability actions against the Debtors' directors, officers, and other key employees as "responsible persons" (whose full-time attention to the Debtors' chapter 11 cases is required to avoid business disruptions and maximize recoveries to the Debtors' creditors) or assessing penalties and/or significant interest on past-due taxes. In addition, non-payment of the Sales and Use Taxes may give rise to priority claims pursuant to section 507(a)(8) of the Bankruptcy Code. Accordingly, the Debtors submit that the proposed relief is in the best interest of the Debtors' estates.

10. From January 1, 2020 through and including March 31, 2020, the Debtors remitted, in the aggregate, approximately $6,822,691 in Sales and Use Taxes to the Authorities. Although the Debtors believe they are current with respect to their payment of Sales and Use Taxes, the Debtors estimate that, as of the Petition Date, they have collected or incurred approximately $3,225,000 in pre-petition Sales and Use Taxes that have not yet been remitted to the appropriate Authorities. The Debtors estimate that approximately $2,169,000 in pre-petition Sales and Use Taxes will become due and payable within twenty-one (21) days following the Petition Date.

11. By this Motion, the Debtors request authority, but not the direction, to pay prepetition unremitted Sales and Use Taxes, to pay to Eisner for prepetition amounts due to Eisner for services rendered in connection with the Sales and Use Taxes, if any become due and payable, and to continue to fund and use Eisner to process and remit Sales and Use Taxes in the ordinary course of business.

## IV.    RELIEF REQUESTED

12. Pursuant to sections 105(a), 363(b), 507(a), and 541 of title 11 of the Bankruptcy Code, the Debtors request entry of interim and final orders authorizing, but not directing, the payment of Sales and Use Taxes, in the ordinary course of business and without regard to whether such obligations accrued or arose before or after the Petition Date.

13. The proposed orders submitted herewith (i) authorize and direct financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent the Debtors or Eisner, as applicable, have sufficient funds standing to their credit with such bank, whether such checks were presented or electronic requests were submitted before or after the Petition Date, and (ii) provide that all such financial institutions are authorized to rely on the Debtors' or Eisner's, as applicable, designation of any particular check or electronic payment request as appropriate pursuant to this Motion without any duty of further inquiry and without liability for following the Debtors' or Eisner's instructions.

14. The Debtors request the immediate entry of the contemporaneously submitted proposed form of order granting the relief requested herein on an interim basis. Pending a final hearing on the relief requested herein, the Debtors request the entry of the contemporaneously submitted proposed form of order granting the relief requested herein on a final basis.

## V.   BASIS FOR THE RELIEF REQUESTED

### A.   The Sales and Use Taxes Are Not Property of the Debtors' Estates.

15. Section 541(d) of the Bankruptcy Code provides, in relevant part, that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." 11 U.S.C. § 541(d).

16. The Sales and Use Taxes constitute "trust fund" taxes, which the Debtors are required to collect from their customers and hold in trust for payment to the Authorities. As a result, courts have held that such taxes are not part of a debtor's estate. *See, e.g., Begier v. Internal Revenue Serv.*, 496 U.S. 53, 57-60 (1990) (holding that any pre-petition payment of trust fund taxes is not a transfer subject to avoidance because such funds are not the debtor's property); *In re Calabrese*, 689 F.3d 312, 321 (3d Cir. 2012) (sales tax collected by debtor from its customers pursuant to state law is a non-dischargeable "trust fund" tax). To the extent these "trust fund" taxes are collected, they are not property of the Debtors' estates under section 541(d). *See, e.g., Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721-22 (4th Cir. 1998) (funds from various lenders held by closing agent in trust for designated third parties are not property of a debtor's estate); *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 104-5 (Bankr. E.D. Pa. 1987).

17. Additionally, a constructive trust may be imposed on collected taxes where there exists a reasonable nexus between the funds and the taxes in question. *See Integrated Health Servs., Inc.*, 344 B.R. 262, 270 (Bankr. D. Del. 2006). The Debtors, therefore, may not have a legally cognizable interest in funds held on account of such "trust fund" taxes and, accordingly,

such taxes, which generally consist of sales taxes, would not constitute "property of the [Debtors'] estate[s]" as such term is defined in section 541 of the Bankruptcy Code.

18.    In light of the fact that they generally do not have an equitable interest in funds held on account of such "trust fund" taxes, the Debtors should be permitted to pay the Sales and Use Taxes to the Authorities as they become due.

B.    **Certain of the Pre-Petition Sales and Use Taxes May Be Priority Claims.**

19.    Claims for some or all of the Sales and Use Taxes owed by the Debtors are or may be entitled to priority status under section 507(a)(8) of the Bankruptcy Code such that payment of such Sales and Use Taxes (i) would give the Authorities no more than that to which they otherwise would be entitled under a chapter 11 plan and (ii) will save the Debtors potential interest expense, legal expense, and penalties that otherwise might accrue on, or be incurred in connection with, such Sales and Use Taxes.

20.    More specifically, section 507(a)(8) of the Bankruptcy Code provides that claims entitled to priority status include unsecured claims of governmental units for (i) taxes on or measured by income or gross receipts for a taxable year ending on or before the Petition Date, for which a return, if required, is last due after three years prior to the Petition Date, or which is assessed within 240 days before the Petition Date, *see* 11 U.S.C. § 507(a)(8)(A); (ii) taxes incurred before the Petition Date and last payable without penalty after one year before the Petition Date, *see* 11 U.S.C. § 507(a)(8)(B); and (iii) taxes required to be collected or withheld and for which the Debtor is liable in whatever capacity, *see* 11 U.S.C. § 507(a)(8)(C). Moreover, to the extent that the Sales and Use Taxes are entitled to priority treatment under section 507(a)(8) of the Bankruptcy Code, the Authorities also may attempt to assess penalties that may also be accorded priority status. *See* 11 U.S.C. § 507(a)(8)(G) (granting eighth-priority status to

"a penalty related to a claim of a kind specified in [section 507(a)(8)] and in compensation for actual pecuniary loss").

**C.   Payment of the Sales and Use Taxes May Eliminate Unnecessary Distractions from Administration of Chapter 11 Estates.**

21.   If the Debtors fail to pay the Sales and Use Taxes in a timely manner, the Authorities may assert that the Debtors' directors, officers, and other key employees are personally liable for payment of same.  This is the case even if the failure to pay certain Sales and Use Taxes was not a result of malfeasance on their part.  Any claims or litigation related to the failure to pay Sales and Use Taxes would be distracting for the Debtors, their directors, officers, and other key employees as well as this Court, which could be asked to entertain various motions seeking injunctions relating to potential court actions.  As such, it is in the best interest of the Debtors' estates to eliminate the possibility of these distractions and to enable the Debtors to continue operating without interruption and to focus on their restructuring efforts.

**D.   Ample Authority Exists to Support Payment of the Sales and Use Taxes.**

22.   Notwithstanding the foregoing, to the extent certain Sales and Use Taxes constitute property of the Debtors' estates, the Court may grant the relief requested herein pursuant to sections 105(a) and 363(b) of the Bankruptcy Code. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that, "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). This provision grants a court broad flexibility to authorize a debtor to pay pre-petition claims where a sound business purposes exists. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

23.   Further, section 105(a) provides, in relevant part, that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

title." 11 U.S.C. §105(a). This provision codifies the inherent equitable powers of the bankruptcy court, including the power to authorize payment of pre-petition claims, under what is known as the "doctrine of necessity" or the "necessity of payment" doctrine, when such payment is critical to a debtor's reorganization or necessary for the preservation of the value of the debtor's estate. *See, e.g.*, *In re Lehigh & N. E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that "the sine qua non for the application of the 'necessity of payment' doctrine is the possibility that the creditor will employ an immediate economic sanction failing such payment. In such a circumstance, it is evident that the payment made under the 'necessity of payment' rule is in the interest of all parties . . . because such payment will facilitate the [debtor's] continued operation"); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102, n.1 (3d Cir. 1972) (citations omitted) ("A number of cases declare a so-called 'necessity of payment' exception to the normal deferment of the payment of pre[-]reorganization claims until their disposition can be made part of a plan of reorganization. These cases permit immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid."); *In re Motor Coach Indus. Int'l, Inc.*, No. 08-12136-BLS, 2009 WL 330993, at *2, n.5 (D. Del. Feb. 10, 2009) (citing *Lehigh*, *inter alia*¸ for the proposition that "[t]he 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the proposition that a court can authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor"); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (stating "it is only logical that the bankruptcy court be able to use Section 105(a) of the Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate").

24. The payment of pre-petition claims under the doctrine of necessity is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code: preserving going concern value and maximizing property available to satisfy creditors. *See Bank of Am. Nat'l Trust & Savs. Ass'n. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999). It is consistent with Bankruptcy Rule 6003, which implies that the payment of pre-petition obligations may be permissible within the first twenty-one (21) days of a case where doing so is "necessary to avoid immediate and irreparable harm."

25. To the extent certain Sales and Use Taxes constitute property of the Debtors' estates, the relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates, and is justified under sections 105(a) and 363(b) of the Bankruptcy Code. As noted above, paying the Sales and Use Taxes will benefit the Debtors' estates and their creditors by allowing the Debtors' operations to continue without interruption and will not prejudice the Debtors' stakeholders. Accordingly, the proposed relief is in the best interest of the Debtors and their estates.

E. **Cause Exists to Authorize the Debtors' Financial Institutions to Honor Checks and Electronic Fund Transfers.**

26. The Debtors have sufficient funds to pay the amounts described herein in the ordinary course of business by virtue of expected cash flows from ongoing business operations. Under the Debtors' existing cash management system, the Debtors can readily identify check requests, wire transfer requests, or funds provided to Eisner, as relating to an authorized payment in respect of the Sales and Use Taxes. Accordingly, the Debtors believe that check requests, wire transfer requests, or funds provided to Eisner relating to unauthorized payments will not be honored inadvertently and that the Court should authorize and direct all applicable financial institutions, when requested by the Debtors or Eisner, to receive, process, honor, and pay any and

all check or wire transfer requests in respect of the relief requested herein, solely to the extent the Debtors or Eisner, as applicable, have sufficient funds standing to their credit with such financial institution.

### VI. RESERVATION OF RIGHTS

27. Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any party-in-interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### VII. BANKRUPTCY RULE 6003 HAS BEEN SATISFIED

28. Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion "to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition. Fed. R. Bankr. P. 6003(b). The Debtors require immediate relief to pay Sales and Use Taxes that become due within twenty-one (21) days of the Petition Date to avoid the harmful consequences noted above to their business and restructuring efforts. Accordingly, the Debtors have satisfied the requirements of Bankruptcy Rule 6003.

## VIII.    REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

29.    To implement the foregoing successfully, the Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

## IX.    NO PRIOR REQUEST

30.    No prior request for the relief sought in this Motion has been made to this Court or any other court.

## X.    NOTICE

31.    Notice of this Motion has been provided to (i) the Office of the United States Trustee for Region 3; (ii) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (iii) counsel for the administrative agent under the Debtors' pre-petition revolving credit facility, Wells Fargo Bank, National Association, c/o Otterbourg P.C. (Attn: Daniel F. Fiorillo, Esq. and Chad B. Simon, Esq.), 230 Park Avenue, New York, NY 10169-0075; (iv) the Internal Revenue Service; (v) the United States Attorney's Office for the District of New Jersey; and (vi) the Authorities.  The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

60917/0001-20080841v1

WHEREFORE the Debtors respectfully request entry of the proposed interim and final orders granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: July 13, 2020

Respectfully submitted,

**COLE SCHOTZ P.C.**

By:   */s/ Michael D. Sirota*
    Michael D. Sirota, Esq.
    Stuart Komrower, Esq.
    Ryan T. Jareck, Esq.
    Matteo W. Percontino, Esq.
    Court Plaza North
    25 Main Street
    Hackensack, NJ 07601
    Telephone: (201) 489-3000
    Facsimile:  (201) 489-1536
    Email: msirota@coleschotz.com
          skomrower@coleschotz.com
          rjareck@coleschotz.com
          mpercontino@coleschotz.com

60917/0001-20080841v1