**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Stuart Komrower, Esq.
Ryan T. Jareck, Esq.
Matteo W. Percontino, Esq.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile:  (201) 489-1536
Email: msirota@coleschotz.com
       skomrower@coleschotz.com
       rjareck@coleschotz.com
       mpercontino@coleschotz.com

*Proposed Counsel for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| RTW RETAILWINDS, INC., *et al.,* | Case No. 20-_____(    ) |
| Debtors.[1] | Joint Administration Requested |

**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(a) AND 363 FOR ENTRY OF INTERIM AND FINAL ORDERS (I) APPROVING CASH MANAGEMENT SYSTEM, (II) AUTHORIZNG THE DEBTORS TO CONTINUE USING EXISTING BANK ACCOUNTS AND BUSINESS FORMS AND (III) AUTHORIZING THE <u>DEBTORS TO CONTINUE INTERCOMPANY TRANSACTIONS</u>**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc. (4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095); Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341); Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936).  The Debtors' principal place of business is 330 W. 34th St., 9th Floor, New York, New York 10001.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

RTW Retailwinds, Inc. and its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), respectfully represent as follows:

### I. JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, dated September 18, 2012 (Simandle, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**").

### II. BACKGROUND

3. On the date hereof (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

4. Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

5. Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the *Declaration of Robert Shapiro in Support of Debtors' Chapter 11 Petitions and First Day*

2
60917/0001-20072854v2

*Pleadings*, sworn to on the date hereof (the "**First Day Declaration**"), which has been filed with the Court contemporaneously herewith.[2]

### III. THE DEBTORS' CASH MANAGEMENT SYSTEM, BANK ACCOUNTS, AND BUSINESS FORMS

6. In the ordinary course of business, the Debtors utilize an integrated, centralized cash management system to collect, concentrate, and disburse funds generated by their operations (the "**Cash Management System**"). The Cash Management System is tailored to meet the Debtors' operating needs as the operator of 387 retail stores and an eCommerce business. The Cash Management System enables the Debtors to efficiently collect and disburse cash generated by their businesses, pay their financial obligations, centrally control and monitor corporate funds and available cash, comply with the requirements of their financing agreement, reduce administrative expenses, and efficiently obtain accurate account balances and other financial data. It is critical that the Cash Management System remain intact to ensure seamless continuation of operations and uninterrupted collection of revenues.

7. The Cash Management System is segregated by the following business lines: (i) Lerner New York; (ii) Lerner New York Outlets; and (iii) Fashion to Figure. Each of those business lines use various bank accounts at various financial institutions (the "**Banks**") to collect, organize, and track various forms of customer receipts and cash disbursements (collectively, the "**Bank Accounts**"). A schedule of each of the Debtors' Bank Accounts is attached hereto as **Exhibit A**.

8. All store deposit accounts are swept daily into the Wells Fargo concentration account (Account No. ending 8598) which is linked to the Wells Fargo Bank N.A. — Sweep

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

Account – Treasury Plus MMKT account. All credit card sales and ACH/wire payments come in/out of the Wells Fargo concentration account. Funds are moved between the Wells Fargo concentration account and the Wells Fargo money market account daily, depending on balances. Checks are written against the corporate accounts and after a vendor deposits a check and a negative balance appears in the corporate account, it is then funded with cash from the Wells Fargo concentration account. A schematic of the flow of funds in the Cash Management System is attached hereto as **Exhibit B**.

9. Contemporaneously herewith, the Debtors have filed a motion seeking, among other things, entry of an Order authorizing the use of their prepetition lenders' cash collateral. In connection with the prepetition lenders' consent to the use of their cash collateral, the Debtors are seeking continued use of their Cash Management System, which is vital to the Debtors' ability to continue to access cash and maintain uninterrupted business operations.

10. The Debtors also request that the Banks be authorized and directed to continue to administer the Bank Accounts as they were maintained and administered pre-petition, without interruption and in the ordinary course, and to honor all representations from the Debtors as to which checks should be honored or dishonored. The Banks also should be authorized and directed to pay all checks, drafts, wires, and Automated Clearing House payments ("**ACH Payment**") drawn from the Bank Accounts for payment of any claims authorized by the Debtors arising on or after the Petition Date so long as those accounts contain sufficient funds. To the extent that the Debtors have directed that any pre-petition checks be dishonored, they reserve the right to issue replacement checks to pay the amounts related to any dishonored checks, consistent with orders of this Court.

11.     Based on information and belief, all of the Bank Accounts are located at Banks designated as authorized depositories by the Office of the United States Trustee for Region 3 (the "**U.S. Trustee**"), pursuant to the U.S. Trustee's Operating Guidelines for Chapter 11 Cases (the "**UST Guidelines**").  Therefore, the Debtors believe the Banks are each party to a uniform depository agreement with the U.S. Trustee such that the Bank Accounts will be collateralized in a manner consistent with the requirements of section 345 of the Bankruptcy Code.

**The Debtors' Existing Business Forms and Checks**

12.     In the ordinary course of business, the Debtors use several types of checks. Additionally, the Debtors use a variety of correspondence and business forms, including, but not limited to, letterhead, purchase orders, and invoices (collectively, the "**Business Forms**").

13.     To minimize expenses, the Debtors seek authorization to continue using all checks substantially in the forms used immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession; provided that in the event that the Debtors generate new checks during the pendency of these cases other than from their existing stock of checks, such checks will include a legend referring to the Debtors as "Debtors In Possession." To the extent practicable, the Debtors also will print such legend on any checks electronically generated during these cases.  Additionally, the Debtors seek authority to use all other Business Forms without reference to the Debtors' status as debtors in possession.

14.     The Debtors have prepared communication materials to distribute to the various parties with whom they conduct business, which will, among other things, notify such parties of the commencement of these chapter 11 cases.  The Debtors believe that these direct communications will provide adequate notice of the Debtors' status as debtors in possession.[3]

---

[3] Although the UST Guidelines require the Debtors to obtain and use new checks bearing the "Debtor-In-Possession" designation, the Debtors do not believe that they impose any limitation on the Debtors' other

## IV. RELIEF REQUESTED

15. Pursuant to sections 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), the Debtors request interim and final authority to (i) modify their existing Cash Management System, (ii) continue maintenance of their existing Bank Accounts and Business Forms, (iii) continue their Cash Management System in the ordinary course of business, including, without limitation, opening new or closing existing Bank Accounts, and (iv) continue to perform under and honor any intercompany transactions (the "**Intercompany Transactions**") in the ordinary course of business, in their business judgment and at their sole discretion.

16. The Debtors further request that the Court authorize and direct the financial institutions at which the Debtors maintain various Bank Accounts to (i) continue to maintain, service, and administer the Debtors' Bank Accounts, and (ii) debit the Bank Accounts in the ordinary course of business on account of (a) wire transfers or checks drawn on the Bank Accounts, provided that any payments drawn, issued, or made prior to the Petition Date shall not be honored absent direction of the Debtors and a separate order of the Court authorizing such pre-petition payment, or (b) undisputed service charges and other fees owed to the Banks for maintenance of the Debtors' Cash Management System (collectively, the "**Bank Charges**"), if any.

17. The Proposed Interim Order (defined below) and the Proposed Final Order (defined below) (i) authorize and direct financial institutions to receive, process, honor, and pay certain checks presented for payment and electronic payment requests relating to the foregoing to

---

correspondence and Business Forms. Nevertheless, out of an abundance of caution, the Debtors seek explicit authority to continue using their existing correspondence and Business Forms without reference to the Debtors' status as debtors in possession.

the extent the Debtors have sufficient funds standing to their credit with such Bank, whether such checks were presented or electronic requests were submitted before or after the Petition Date, and (ii) provide that all such financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as appropriate pursuant to this Motion or any other Order of this Court without any duty of further inquiry and without liability for following the Debtors' instructions.

18. The Debtors request the immediate entry of the contemporaneously submitted proposed form of order granting the relief requested herein on an interim basis (the "**Proposed Interim Order**"). Pending a final hearing on the relief requested herein, the Debtors request the entry of the contemporaneously submitted proposed form of order granting the relief requested herein on a final basis (the "**Proposed Final Order**").

V. **BASIS FOR RELIEF REQUESTED**

A. **Approval of the Cash Management System and Continued Use of Existing Bank Accounts are in the Best Interests of the Debtors, Their Creditors, and All Other Parties-in-Interest**

19. Upon the filing of this Chapter 11 Case, the Debtors became bound by the *Operating Guidelines for Chapter 11 Cases* (the "**Operating Guidelines**") promulgated by the Office of the United States Trustee for the District of New Jersey (the "**UST**"). Pursuant to the Operating Guidelines, the Debtors' "failure to comply with the operating and/or reporting requirements . . . may result in the dismissal or conversion of these case to cases under Chapter 7 of the Bankruptcy Code." The Operating Guidelines state that, upon filing its Chapter 11 petition, the Debtor:

> must immediately close all of its existing bank accounts and open new bank accounts which must be (i) designated as debtor in possession accounts ("**DIP Accounts**") and (ii) maintained subject to the following conditions:

> a. <u>All</u> money of the bankruptcy estate must be deposited in the DIP Accounts . . . .

Operating Guidelines at ¶¶ 1-2 (emphasis in the original).

20. The Debtors respectfully request that the Court enter an Order authorizing their continued use of the Bank Accounts, waiving the requirement that the Debtors open new debtor-in-possession accounts, and authorizing the Debtors to continue use of their Cash Management System as set forth above.

21. The relief requested herein is authorized pursuant to section 363(c)(1) of the Bankruptcy Code which provides that a debtor-in-possession may "use property of the estate in the ordinary course of business without notice or a hearing." The purpose of section 363(c)(1) is to provide a debtor-in-possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the court. *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *Chaney v. Official Comm. of Unsecured Creditors of Crystal Apparel, Inc. (In re Crystal Apparel, Inc.)*, 207 B.R. 406, 409 (S.D.N.Y. 1997). Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by its cash management system. *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996).

22. The Cash Management System, as modified, constitutes an ordinary course and essential business practice of the Debtors. The Cash Management System provides significant benefits to the Debtors including, among other things, the ability to (i) control corporate funds, (ii) ensure the maximum availability of funds when and where necessary, and (iii) reduce costs and administrative expenses by facilitating the movement of funds and the development of more timely and accurate account information.

23. The operation of the Debtors' businesses requires that the Cash Management System, as modified, continue during the pendency of the chapter 11 cases. As a practical matter, because of the Debtors' corporate and financial structure, it would be extremely difficult and expensive to establish and maintain a separate cash management system for each Debtor. Requiring the Debtors to adopt new, segmented cash management systems at this early and critical stage of these cases would be extraordinarily disruptive and harmful to their operations. Any such disruption would have a severe and adverse impact upon the Debtors' chapter 11 estates. In sum, maintaining the existing Cash Management System, as modified, is in the best interest of all parties-in-interest.

24. Indeed, courts in this district have long recognized that strict enforcement of bank account closing requirements does not serve the purposes of chapter 11 and have approved motions seeking relief similar to that sought by this Motion. *See, e.g., In re New England Motor Freight, Inc.*, Case No. 19-12809 (Bankr. D.N.J. Feb. 13, 2019); *In re Aceto Corporation*, Case No. 19-13448 (Bankr. D.N.J. Feb. 21, 2019); *In re Icon Eyewear, Inc.*, Case No. 18-34902 (Bankr. D.N.J. Dec. 21, 2018); *In re Mountain Creek Resort, Inc., et al.*, Case No. 17-19899 (Bankr. D.N.J. May 17, 2017); *In re Cinram Group, Inc.*, Case No. 17-15258 (Bankr. D.N.J. Mar. 24, 2017); *In re SMMC Liquidation Corp. (f/k/a Saint Michael's Medical Center)*, Case No. 15-24999 (Bankr. D.N.J. Aug. 12, 2015); *In re Kid Brands, Inc.*, Case No. 14-22582 (Bankr. D.N.J. June 20, 2014); *In re RIH Acquisitions NJ, LLC*, Case No. 13-34483 (Bankr. D.N.J. Nov. 8, 2013).

25. Accordingly, the Debtors seek authority under section 363(c)(1) to continue the collection, concentration, and disbursement of cash pursuant to its modified Cash Management System, which relief necessarily entails maintenance of the Bank Accounts.

26. Even if continuation of the Cash Management System is outside of the ordinary course, the Court may grant the relief requested herein pursuant to sections 105(a) of the Bankruptcy Code, which provides, in relevant part, that, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

**B.     The Debtors Should Be Authorized to Maintain and Continue Ordinary Course Intercompany Transactions**

27. The Debtors routinely engage in Intercompany Transactions. Thus, the Debtors respectfully submit that the Intercompany Transactions are within the ordinary course of their business and that Court approval of these transactions is not required pursuant to section 363(c)(1). Nevertheless, out of an abundance of caution, the Debtors seek Court approval of these transactions, in the event this Court finds that the Intercompany Transactions are outside the ordinary course of business.

28. The Debtors believe continuing the Intercompany Transactions is sound and appropriate exercise of their business judgment because, among other reasons discussed herein, the Intercompany Transactions facilitate the collection of cash and satisfaction of the Debtors' obligations and are otherwise integral to the Debtors' daily operations. If the Intercompany Transactions were to be discontinued, the Debtors' business operations would be hindered unnecessarily and acutely. Thus, the Debtors respectfully submit that continuation of the Intercompany Transactions is in the best interests of the Debtors and their estates.

**C.     Honoring Certain Pre-Petition Obligations Related to the Cash Management System Should Be Approved**

29. The Debtors incur periodic Bank Charges as well as other service charges and fees from their credit card processors (together with the Bank Charges, collectively, the "**Service Charges**") in connection with the maintenance of the Cash Management System. The Service

10
60917/0001-20072854v2

Charges average approximately $420,000 per month. Similarly, the Debtors' credit card processors deduct Service Charges before transferring the Debtors' credit card and debit card receivables. Such fees generally are between 1.6% and 3.9% percent for credit cards (not including the Debtors' private label cards). Payment of any pre-petition Service Charges is in the best interests of the Debtors and all parties-in-interest in these chapter 11 cases, as it will prevent unnecessary disruptions to the Cash Management System and ensure that the Debtors' receipt of funds is not delayed. Further, because the Banks and credit and debit card processors likely have setoff rights for the Service Charges, payment of pre-petition Service Charges should not alter the rights of unsecured creditors in these chapter 11 cases.

D. **Maintenance of the Debtors' Existing Bank Accounts and Business Forms Is Warranted**

30. The Debtors request that the Court waive the requirements of the UST Guidelines, which require, among other things, the closure of the Debtors' pre-petition Bank Accounts, the opening of new bank accounts, and the immediate printing of new Business Forms, including new checks referencing the Debtors as "Debtors-In-Possession." The Debtors seek an order authorizing and directing the Banks, including, but not limited to those listed on Exhibit A, to continue to treat, service, and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the usual and ordinary course, and to receive, process, honor, and pay all checks, drafts, wires, or ACH Payments drawn on the Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be; provided that any payments issued or made prior to the Petition Date will not be honored absent direction of the Debtors and an order of the Court.

31. The Debtors believe that their chapter 11 cases will be more orderly if they are permitted to maintain all Bank Accounts with the same account numbers during these chapter 11

cases. By preserving business continuity and avoiding any disruption and/or delay to the Debtors' disbursement obligations, all parties-in-interest, including employees, vendors, and customers, will be best served by the relief requested. In addition, to the extent necessary, the Debtors request authorization to open new bank accounts at their existing Banks or other authorized depositories designated by the U.S. Trustee.

32. To minimize expenses, the Debtors further request they be authorized to continue to use their Business Forms, substantially in the forms existing immediately before the Petition Date, without reference to their status as debtors in possession. The Debtors request authority to utilize their existing checks and electronically generated forms, rather than obtain new checks and implement new electronic forms reflecting their status as debtors in possession. To the extent the Debtors use all their existing stock of checks, any new checks ordered will reflect their status as debtors in possession. The Debtors will work with their systems personnel and outside consultants to determine what computer system changes are required to reflect their status as debtors in possession on electronically generated checks and will implement such changes as soon as reasonably practicable.

33. By virtue of the nature and scope of the Debtors' business operations and the large number of suppliers of goods and services with which the Debtors transact, it is important that the Debtors be permitted to continue to use their existing Business Forms without alteration or change, except as requested herein.

### VI. RESERVATION OF RIGHTS

34. Nothing contained herein is intended to be or shall be construed as (i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate party-in-interest's rights to dispute any claim, or (iii) an approval or assumption of

60917/0001-20072854v2

any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

### VII. BANKRUPTCY RULE 6003 HAS BEEN SATISFIED

35. Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting a "motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" before twenty-one (21) days after filing of the petition. Fed. R. Bankr. P. 6003(b). The Cash Management System is critical to the Debtors' ongoing operations. Disruptions to the Cash Management System likely would cause delays in receipt of funds from stores, large-scale payment delays, and impede the Debtors' ability to efficiently track the flow of funds. Late payments could frustrate the Debtors' relationships with employees and cause other severe and irreparable disruptions to the Debtors' business and store closing sales. Additionally, changes to the Cash Management System could impair the Debtors' ability to obtain important financial information in a timely manner. Ultimately, these outcomes would cause a diminution in the value of the Debtors' estates, which would have a negative impact on all parties-in-interest. Accordingly, the Debtors have satisfied the requirements of Bankruptcy Rule 6003.

### VIII. REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

36. To implement the foregoing successfully, the Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent such stay applies.

13
60917/0001-20072854v2

## IX. NO PRIOR REQUEST

37. No prior request for the relief sought in this Motion has been made to this Court or any other court.

## X. NOTICE

38. Notice of this Motion has been provided to (i) the Office of the United States Trustee for Region 3; (ii) the holders of the twenty (20) largest unsecured claims against the Debtors (on a consolidated basis); (iii) counsel for the administrative agent under the Debtors' pre-petition revolving credit facility, Wells Fargo Bank, National Association, c/o Otterbourg P.C. (Attn: Daniel F. Fiorillo, Esq. and Chad B. Simon, Esq.), 230 Park Avenue, New York, NY 10169-0075; (iv) the Internal Revenue Service; (v) the United States Attorney's Office for the District of New Jersey; and (vi) each of the Banks at which the Debtors maintain the Bank Accounts identified on **Exhibit A**. The Debtors submit that, in view of the facts and circumstances, such notice is sufficient and no other or further notice need be provided.

WHEREFORE the Debtors respectfully request entry of the Proposed Interim Order and the Proposed Final Order granting the relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: July 13, 2020

Respectfully submitted,

**COLE SCHOTZ P.C.**

By:   */s/ Michael D. Sirota*
    Michael D. Sirota, Esq.
    Stuart Komrower, Esq.
    Ryan T. Jareck, Esq.
    Matteo W. Percontino, Esq.
    Court Plaza North
    25 Main Street
    Hackensack, NJ 07601
    Telephone: (201) 489-3000
    Facsimile: (201) 489-1536
    Email: msirota@coleschotz.com
           skomrower@coleschotz.com
           rjareck@coleschotz.com
           mpercontino@coleschotz.com

60917/0001-20072854v2