**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Stuart Komrower, Esq.
Ryan T. Jareck, Esq.
Matteo W. Percontino, Esq.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
Email: msirota@coleschotz.com
      skomrower@coleschotz.com
      rjareck@coleschotz.com
      mpercontino@coleschotz.com

*Proposed Counsel for Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>RTW RETAILWINDS, INC., *et al.*,<br><br>        Debtors.[1] | Chapter 11<br><br>Case No. 20-_____(    )<br><br>Joint Administration Requested |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL AND AFFORDING ADEQUATE PROTECTION; (II) MODIFYING AUTOMATIC STAY; (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**

RTW Retailwinds, Inc. and its subsidiaries, as debtors and debtors in possession in the

above-captioned chapter 11 cases (collectively, the "**Debtors**"), by and through its proposed

counsel, Cole Schotz P.C., hereby files this motion (the "**Motion**") for entry of an interim order,

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc. (4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095); Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341); Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936). The Debtors' principal place of business is 330 W. 34th St., 9th Floor, New York, New York 10001.

in substantially the form attached hereto as **Exhibit A** (the "**Interim Order**" or "**Order**"), and a final order (the "**Final Order**,"[2] and together with the Interim Order shall be referred to herein collectively as, the "**Cash Collateral Orders**") pursuant to sections 105, 361, 362, 363, and 507(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 4001, 6004(h), 7062, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-3 of the Local Rules of the United States Bankruptcy Court for the District of New Jersey (the "**Local Rules**"):

    (a)    authorizing the Debtors' use of cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code, subject to the terms of the Cash Collateral Orders, and granting adequate protection to the Prepetition Lender (as defined below) in respect of its rights under the Prepetition Credit Agreement (as defined below) and its interests in the Prepetition Collateral (as defined below) pursuant to sections 105, 361, 362, 363, and 507 of the Bankruptcy Code with respect to any diminution in the value of such rights and interests on and after the Petition Date (as defined below);

    (b)    vacating and modifying the automatic stay arising under section 362 of the Bankruptcy Code in accordance with the provisions hereof to the extent necessary to implement and effectuate the terms and provisions of the Cash Collateral Orders;

    (c)    scheduling a final hearing (the "**Final Hearing**") pursuant to Bankruptcy Rule 4001(b)(2) to be held before this Court to consider entry of a Final Order authorizing and granting the relief requested in the Motion on a final basis; and

    (d)    granting certain related relief.

---

[2] A proposed final Order will be submitted to the Court in advance of the final hearing.

In support of this Motion, the Debtors submit the *Declaration of Robert Shapiro in Support of First Day Relief* (the "**First Day Declaration**"),[3] filed with the Court contemporaneously herewith.  In further support of this Motion, the Debtors respectfully represent as follows:

## I.     <u>JURISDICTION, VENUE AND STATUTORY PREDICATES</u>

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered on July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  This matter is a "core" proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for the relief requested herein are sections 105, 361, 362, 363, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 4001, 6004(h), 7062 and 9014, and Local Rule 4001-3.

## II.     <u>BACKGROUND</u>

4.      On the date hereof (the "**Petition Date**"), each of the Debtors commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or statutory committee of creditors has been appointed in these chapter 11 cases.

---

[3] All capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the First Day Declaration.

5. Contemporaneously herewith, the Debtors have filed a motion requesting joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).

6. Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these chapter 11 cases is set forth in the First Day Declaration.

A. **The Debtors' Prepetition Capital Structure**

7. The Debtors are party to that certain Fourth Amended and Restated Loan and Security Agreement, dated October 24, 2014, as amended by Amendment No. 1 dated October 24, 2019, Amendment No. 2 dated June 5, 2020 and Amendment No. 3 dated July 2, 2020 (as amended, restated, supplemented or otherwise modified from time to time prior to the Petition Date, the "**Prepetition Credit Agreement**") with Wells Fargo Bank, National Association, as administrative agent and lender (the "**Prepetition Lender**"). The Prepetition Credit Agreement provided for a $75 million revolving credit facility (which includes a sub-facility for issuance of letters of credit up to $10 million) with a maturity date of October 24, 2024 (the "**ABL**"). The interest rates on the ABL are determined with reference to either the LIBOR rate or the Base Rate, as further set forth in the Prepetition Credit Agreement.

8. As of July 10, 2020, the Debtors had outstanding debt obligations in the aggregate principal amount of not less than approximately $12,716,045.60, on account of revolving loans under the ABL owed to the Prepetition Lender, plus (i) additional amounts arising from and relating to Letters of Credit (as defined in the Prepetition Credit Agreement) in the aggregate undrawn face amount of approximately $7,124,274.20, plus (ii) all interest, together with all costs, fees, expenses (including attorneys' fees and legal expenses) and all other Obligations. The ABL is secured on a first priority basis by substantially all the Debtors' assets under the Prepetition Credit Agreement.

4

9. More specifically, to secure the Debtors' obligations under the Prepetition Credit Agreement, the Debtors granted the Prepetition Lender a first-priority lien and security interest in substantially all the Debtors' assets, including, without limitation, the following:

(a) all Accounts;

(b) all general intangibles;

(c) all goods, including, without limitation, Inventory and Equipment, whether ordered, in progress, finished or received;

(d) all fixtures;

(e) all chattel paper, including, without limitation, all tangible and electronic chattel paper;

(f) all instruments, including, without limitation, all promissory notes;

(g) all documents;

(h) all deposit accounts;

(i) all letters of credit, banker's acceptances and similar instruments and including all letter-of-credit rights;

(j) all supporting obligations and all present and future liens, security interests, rights, remedies, title and interest in, to and in respect of Receivables and other Collateral, including (A) rights and remedies under or relating to guaranties, contracts of suretyship, letters of credit and other insurance related to the Collateral, (B) rights of stoppage in transit, replevin, repossession, reclamation and other rights and remedies of an unpaid vendor, lienor or secured party, (C) goods described in invoices, documents, contracts or instruments with respect to, or otherwise representing or evidencing, Receivables or other Collateral, including returned, repossessed and reclaimed goods, and (D) deposits by and property of account debtors or other persons securing the obligations of account debtors;

(k) all (A) investment property (including securities, whether certificated or uncertificated, securities accounts, security entitlements, commodity contracts or commodity accounts) and (B) monies, credit balances, deposits and other property of such Borrower or Guarantor now or hereafter held or received by or in transit to Agent, any Secured Party or its Affiliates or at any other depository or other institution from or for the account of such Borrower or Guarantor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(l)      all commercial tort claims;

(m)      to the extent not otherwise described above, all Receivables;

(n)      all Records; and

(o)      all products and proceeds of the foregoing, in any form, including insurance proceeds (including proceeds of any business interruption insurance) and all claims against third parties for loss or damage to or destruction of or other involuntary conversion of any kind or nature of any or all of the other Collateral.

(collectively, ¶¶ 12(a)-12(o), the "**Prepetition Collateral**").

10.      Notably, the Prepetition Collateral does not include any intellectual property.

11.      Amendment No. 1 dated October 24, 2019 provided for, among other things: (i) an extension of the term of the revolving credit facility to October 24, 2024; (ii) a reduction of interest rates related to the revolving credit facility; (iii) a reduction of certain fees related to the revolving credit facility; and (iv) a release of certain intangible assets as collateral. Amendment No. 2 dated June 5, 2020 provided for, among other things: (i) a reduction in the availability of credit under the Prepetition Credit Agreement from $100 million to $75 million (including a reduction in the sub-facility for issuance of letters of credit from $45 million to $10 million); (ii) an increase in interest rates related to the revolving credit facility; (iii) an anti-hoarding provision such that if the Debtors are holding cash in excess of $40 million as of June 13, 2020, the Debtors would be required to pay down the pre-petition debt by such amount in excess of $40 million; (iv) increased reporting responsibilities under the Prepetition Credit Agreement; and (v) an agreement by the Prepetition Lender to forbear from exercising certain rights and remedies under the Prepetition Credit Agreement as a result of certain events of default. Amendment No. 3 dated July 2, 2020 provided for, among other things: (i) an extension of the forbearance period to July 15, 2020 in exchange for a $75,000 fee; (ii) the Debtors depositing $8 million with Wells Fargo intro a controlled account; (iii) the Debtors transferring cash collateral in an amount equal

to one hundred five percent (105%) of all letter of credit exposure; and (iv) the Debtors'
agreement to pay down the loan by not less than $2,700,000 on or before July 3, 2020.

12.     Attached hereto as **Exhibit B** is a more detailed summary of the Prepetition
Credit Agreement.

### III.     CONCISE STATEMENT OF RELIEF REQUESTED CONCERNING USE OF CASH COLLATERAL PURSUANT TO BANKRUPTCY RULE 4001(B)(1)(B)[4] AND LOCAL RULE 4001-3

13.     To preserve the Debtors' business and assets for the benefit of all creditors, the
Debtors seek authorization to use the Prepetition Lender's Cash Collateral in accordance with the
budget attached hereto as **Exhibit C** (the "**Budget**") and enter the accompanying proposed
Interim Order attached hereto as **Exhibit A**.  The Debtors propose to use approximately
$8,510,000 in net Cash Collateral[5] on an interim basis during the first 30 days of these cases to
fund operating expenses, plus additional amounts to provide adequate protection, all in
accordance with the Budget.  Thereafter, and following a hearing to be scheduled by the Court,
the Debtors will seek final approval of the their use of Cash Collateral pursuant to a Final Order.

14.     Without the use of Cash Collateral, the Debtors will be unable to pay their
ordinary and necessary business expenses including, but not limited to, payroll and related
obligations, taxes, utilities, amounts owed to vendors and other suppliers of goods and services,
insurance, rent, and costs of administration of these Chapter 11 cases pending an orderly
liquidation of the Debtors' assets.  To preserve the Debtors' business and assets for the benefit of
their creditors and estates, and to enable the Debtors to run "store closing" sales, the Debtors

---

[4] The Motion is intended to provide only a summary of the relief requested.  To the extent there are inconsistencies between the Interim Order and the Motion, the Interim Order shall govern.

[5] The gross amount of Cash Collateral utilized in the first 30 days of these cases is approximately $42 million.  The $8,510,000 figure set forth above takes into account the generation of receipts as set forth in the Budget.

seek approval for the use of the Prepetition Lender's Cash Collateral in accordance with the Interim Order and the Budget.

## IV. RELIEF REQUESTED AND BASIS THEREFOR

### A. Applicable Legal Authorities

15. Section 363(a) of the Bankruptcy Code defines Cash Collateral to mean:

> cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

16. The "interest" set forth in Section 363(a) refers to a valid and perfected security interest between the parties that secures the Cash Collateral. See In re Corner Pockets of the Sw., Inc., 85 B.R. 559, 563 (Bankr. D. Mont. 1988) (stating that "[o]nly perfected security interests give rise to 'cash collateral' as defined by" Section 363 of the Bankruptcy Code) (citing Waldron v. Nw. Acceptance Corp. (In re Johnson), 62 B.R. 24, 28-29 (B.A.P. 9th Cir. 1986)); In re Fairview-Takoma Ltd. P'ship, 206 B.R. 792, 796-800 (Bankr. D. Md. 1997). A creditor holding a perfected security interest in property will be entitled to the protection of the Cash Collateral provisions of Section 363(a) because such interests are not avoidable under the "strong arm" provisions of Section 544(a)(1) and (3) of the Bankruptcy Code. See Batt v. Scully, 168 B.R. 541, 545 (D.N.J. 1994); see also Indian Motorcycle Assocs. III L.P. v. Massachusetts Housing Fin. Agency, 66 F.3d 1246, 1252 (1st Cir. 1995) (holding that the secured creditor therein "would have to demonstrate that it held a perfected lien or security interest" in certain

collateral, "otherwise, as property of the chapter 11 estate, any unperfected lien . . . would be subject to avoidance by the debtor in possession pursuant to its 'strong arm' powers.").

17.     Section 363(c)(2) of the Bankruptcy Code provides that a debtor-in-possession may not use Cash Collateral unless: (1) each entity with an interest in such Cash Collateral consents; or (2) the court, after notice and hearing, authorizes the use, sale, or lease of such Cash Collateral in accordance with the provisions of Section 363 of the Bankruptcy Code.  See 11 U.S.C. § 363(c)(2).  Section 363(e) provides that "on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the [debtor-in-possession], the court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).

18.     In turn, adequate protection can be provided where the debtor:

- makes cash payments or periodic cash payments;

- grants an additional or replacement lien; or

- provides other relief as will result in the secured creditor's realization of the "indubitable equivalent" of its interest in its pre-petition collateral.

11 U.S.C. § 361.

19.     What constitutes sufficient adequate protection is decided on a case-by-case basis. See Resolution Trust Corp. v. Swedeland Dev. Group, Inc.(In re Swedeland Dev. Group, Inc.), 16 F.3d 552 (3d Cir. 1993) ("[A] determination of whether there is adequate protection is made on a case by case basis."); see also In re Martin, 761 F.2d 472, 474 (8th Cir. 1985); In re Mosello, 195 B.R 277, 289 (Bankr. S.D.N.Y. 1996); In re Realty Southwest Assocs., 140 B.R. 360, 366 (Bankr. S.D.N.Y. 1992); In re Columbia Gas Sys., Inc., Nos. 91-803, 91-804, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992).

20.     Section 363(p) of the Bankruptcy Code provides that the debtor-in-possession has the burden of proof on the issue of adequate protection, and the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest. 11 U.S.C. § 363(p).

## B.     The Debtors Should Be Authorized to Use Cash Collateral and Grant Adequate Protection in Connection Therewith

21.     Pursuant to D.N.J. LBR 4001-3(a)(2)(B), the Debtors propose to grant adequate protection to the Prepetition Lender, to the extent of any diminution in value of its interests in the Prepetition Collateral, from and after the Petition Date as follows:[6]

(a)     Replacement Liens: Subject to the Carve-Out, as adequate protection for and solely to the extent of the amount of diminution in value from and after the Petition Date, of its interests in the Collateral, including, without limitation, the aggregate amount of Cash Collateral used by any Debtor on a dollar for dollar basis, the imposition of the automatic stay and any other act or omission which causes diminution in the value of its interests in the Collateral (collectively, the "**Diminution in Value**"), the Prepetition Administrative Agent, for the benefit of itself and the other Prepetition Credit Parties, is hereby granted, pursuant to sections 361 and 363 of the Bankruptcy Code, valid, binding, enforceable and perfected replacement liens upon and security interests in all of each Debtor's presently owned or hereafter acquired property and assets, whether such property and assets were acquired by such Debtor before or after the Petition Date, of any kind or nature, whether real or personal, tangible or intangible, wherever located, and the proceeds and products thereof, including, without limitation, the proceeds from any disposition of any leasehold interests of the Debtors and all property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to Sections 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code (collectively, to the extent acquired after the Petition Date, the "**Postpetition Collateral**" and, together with the Prepetition Collateral and the Cash Collateral, the "**Collateral**") to the extent of any Diminution in Value (the "**Replacement Lien**"); provided that the Replacement Lien shall not attach to any property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to Sections 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy

---

[6] All capitalized terms used but not otherwise defined herein shall have the same meaning ascribed to them in the Interim Order.

Code until the entry of a Final Order. The Replacement Lien shall be junior and subordinate only to (A) the Carve-Out, (B) the Prepetition Liens on the Prepetition Collateral, and (C) any Prior Senior Liens on such Prepetition Collateral, and shall otherwise be senior to all other security interests in, liens on, or claims against any asset of a Debtor and all rights of payment of all other parties. .

(b)     Section 507(b) Priority Claims: Subject only to the Carve-Out, as adequate protection for the Diminution in Value of its interest in the Collateral the Prepetition Administrative Agent, for the benefit of itself and the other Prepetition Credit Parties, is hereby granted as and to the extent provided by Sections 503 and 507(b) of the Bankruptcy Code, an allowed superpriority administrative expense claim in the Cases and any successor bankruptcy case (the "**Adequate Protection Superpriority Claim**"). The Adequate Protection Superpriority Claim shall be subordinate to the Carve-Out solely to the extent set forth in the Interim Order, but otherwise shall have priority over all administrative expense claims, including administrative expenses of the kinds specified in or ordered pursuant to Sections 503(b) and 507(b) of the Bankruptcy Code, and unsecured claims against each Debtor and each Estate now existing or hereafter arising, of any kind or nature whatsoever.

(c)     Default Interest: At all times during these Chapter 11 cases, interest on all outstanding Obligations shall bear interest at the applicable default rate of interest.

(d)     Mandatory Paydowns of Obligations: For so long as any Obligations remain outstanding and are not fully satisfied and Paid in Full on terms and conditions acceptable to the Prepetition Administrative Agent, Debtors shall make weekly mandatory payments to Prepetition Administrative Agent, for the benefit of the Prepetition Administrative Agent and the other Prepetition Credit Parties, commencing on the first (1st) full week after the Petition Date, and on the Friday of each week thereafter, in the amounts set forth in the Budget; provided, that any such payments shall be without prejudice to the rights of any party to challenge the Prepetition Obligations in accordance with and solely to the extent set forth in the Cash Collateral Orders.

(e)     Segregated Collateral Account: Debtors shall maintain funds in an amount not less than $8,000,000 in a controlled account at Wells Fargo Bank, National Association, which funds shall secure the Payment in Full of the Obligations (the "**Segregated Collateral Account**").

(f)     Letter of Credit Exposure: Prepetition Administrative Agent is authorized to (i) maintain Cash Collateral in an amount equal to one hundred and five percent (105%) of all Letter of Credit Exposure (as defined in the Loan Agreement); and (ii) apply such Cash Collateral, or any portion thereof,

11

immediately upon any draw on any Letter of Credit (as defined in the Loan Agreement), in each case in an amount not to exceed any such draw plus any associated fees and costs due under the terms of the Loan Agreement.

(g)     Payment and Review of Prepetition Lender Fees and Expenses:  As further adequate protection, the Debtors shall pay all reasonable fees and expenses under the Prepetition Credit Agreement, including, without limitation, the non-refundable payment to the Prepetition Lender of the reasonable and documented attorney fees and expenses and any other professional fees and expenses whether incurred before or after the Petition Date and whether incurred in connection with the Prepetition Credit Agreement, the Collateral, or these Chapter 11 cases.

(h)     Additional Payments from Sale of Collateral.  Notwithstanding anything to the contrary set forth in the Interim Order, in the Budget, or in any other order entered in these Chapter 11 cases, if the Prepetition Administrative Agent and other Prepetition Credit Parties have not received the indefeasible Payment in Full of all Obligations on or before August 31, 2020, then the Debtors shall pay to the Prepetition Administrative Agent, for the benefit of the Prepetition Administrative Agent and the other Prepetition Credit Parties, all net sale proceeds generated from any sales, dispositions, or proceeds of casualty insurance of all Collateral outside the ordinary course of Debtors' businesses, including sales or dispositions of Collateral with respect to all "going out of business" sales and all other sales of Collateral pursuant to section 363 of the Bankruptcy Code until all Obligations are Paid in Full. All of the Prepetition Administrative Agent's and other Prepetition Credit Parties' rights under the Financing Agreements or otherwise are expressly reserved and, by this Interim Order, preserved.

(i)      Cash Management.  Until Prepetition Administrative Agent receives Payment in Full, (i) Debtors shall not open any new deposit accounts without the prior consent of the Prepetition Administrative Agent and shall otherwise continue to maintain and operate the Debtors' cash management system in in the same manner as such cash management system was maintained and operated prior to the Petition Date; (ii) all Deposit Account Control Agreements, executed by any Debtor in favor of the Prepetition Administrative Agent are hereby ratified and affirmed and approved in all respects, and all banks, depository entities, securities intermediaries and commodities intermediaries that are parties to any such Deposit Account Control Agreements (as defined in the Financing Agreements) shall be authorized and directed to afford Prepetition Administrative Agent with exclusive dominion and control over such accounts in accordance with the terms and conditions of the applicable Deposit Account Control Agreement and other terms of this Interim Order, (iii) the Debtors are hereby authorized and directed to execute any

additional deposit account control agreements as may be necessary or appropriate to effectuate the terms of this Interim Order. The terms "Paid in Full" and "Payment in Full" mean (I) all of the Obligations (as defined in the Loan Agreement) have been indefeasibly paid in full in cash; (II) in the case of any contingent or unliquidated Obligations, including, without limitation, any obligations that Debtors are required to furnish cash collateral to Prepetition Administrative Agent in accordance with the Financing Agreements, and any other liabilities arising from matters or circumstances known to Prepetition Administrative Agent at the time which are reasonably expected to result in any actual loss, cost, damage or expense (including attorneys' fees and legal expenses) to the Prepetition Administrative Agent or any of the other Prepetition Credit Parties, the provision to Prepetition Administrative Agent of cash collateral in an amount determined by Prepetition Administrative Agent to fully secure and collateralize such contingent or unliquidated obligations and liabilities; and (III) that the Prepetition Administrative Agent or each of the other Prepetition Credit Parties shall receive a release from each Debtor and the Committee of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities in form and substance acceptable to the Prepetition Administrative Agent.

(j) <u>Consent Fee</u>. In consideration for the Prepetition Administrative Agent's and other Prepetition Credit Parties' consent to the use of its Cash Collateral in accordance with the terms of this Interim Order, if the Obligations are not Paid in Full on or before the fourth Friday following the Petition Date, then Prepetition Administrative Agent shall be paid, in addition to all Obligations owing by Debtors to the Prepetition Administrative Agent and other Prepetition Credit Parties, a weekly fee in the amount of $50,000, which shall be fully earned the date that is the fourth Friday following the Petition Date and on each Friday thereafter until the Obligations are Paid in Full.

22. The Replacement Lien is a valid form of adequate protection. <u>See</u>, <u>e.g.</u>, <u>In re Prichard Plaza Assocs. Ltd.</u>, 84 B.R. 289, 302 (Bankr. D. Mass. 1988) ("If the proceeds stream is likely to remain stable through the collection of new accounts receivable or the sale of new inventory, adequate protection is often ensured by a replacement lien on post-petition accounts and inventory and their proceeds and by some provision for monitoring the use of proceeds."); <u>In re Airport Inn Assocs., Ltd.</u>, 132 B.R. 951, 960 (Bankr. D. Colo. 1990) ("The [c]ourt could order a lien in post-petition accounts receivable as adequate protection if that relief was requested …");

In re Int'l Design & Display Group, Inc., 154 B.R. 362, 364 (Bankr. S.D. Fla. 1993) (court authorized debtor to use cash collateral and, as adequate protection, granted secured creditor replacement lien on all post-petition accounts receivable, inventory and contracts to the extent the creditor's collateral was depleted).

23. The Debtors respectfully submit that granting the Prepetition Lender a Replacement Lien and an Adequate Protection Superpriority Claim to protect against diminution, if any, provides adequate protection of the Prepetition Lender's interests for the Debtors' use of Cash Collateral. Moreover, the Debtors respectfully submit that payment of the Prepetition Lender's attorney fees and expenses, posting of $8,000,000 in the Segregated Collateral Account, collateralizing the Prepetition Lender's Letter of Credit Exposure, and the additional adequate protection set forth above, provides additional adequate protection of the Prepetition Lender's interests for the Debtors' use of Cash Collateral.

24. The Debtors believe that the proposed adequate protection for the Prepetition Lender is necessary and appropriate to ensure that the Debtors can continue to use the Prepetition Lender's Cash Collateral to pay the Debtors' ordinary and necessary operating expenses as reflected in the Budget during these Chapter 11 cases. More specifically, the Debtors have an immediate need to use the Prepetition Lender's Cash Collateral to permit, among other things, the orderly liquidation of the Debtors' business. The access to sufficient working capital and liquidity through the use of Cash Collateral is vital to the preservation and maintenance of the Debtors' business operations while pursuing an orderly liquidation.

25. Therefore, the Debtors should be authorized to use the Prepetition Lender's Cash Collateral in accordance with the Budget initially on an interim basis and, thereafter, on a final basis. The Debtors have been advised by the Prepetition Lender that in exchange for the

14

adequate protection outlined above, the Prepetition Lender consents to the Debtors' use of the

Cash Collateral provided such use is in accordance with the Budget and the Interim Order.

## C.    Provisions to be Highlighted Under Local Rule 4001-3(c)

26.    The following provisions are required to be highlighted under Local

Rule 4001-3(c):

| Carve-Out | The Interim Order provides that all claims and liens granted by the Interim Order shall be subject to the Carve-Out, to the extent provided in the Interim Order.  As used in the Interim Order, the term "**Carve-Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate through the Carve-Out Termination Date (defined below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code; (iii) to the extent allowed at any time, whether by interim order, procedural order, or other order of this Court, all unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "**Debtor Professionals**") and the Committee  pursuant to section 328 or 1103 of the Bankruptcy Code (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before or on the last day of the week in which a Carve-Out Trigger Notice (as defined below) is served, <u>provided</u>, that until the Obligations are Paid in Full, the Allowed Professional Fees (I) shall not at any time exceed the aggregate amount of the fees and expenses identified in the Budget for each such Professional Person or category of Professional Persons covering the period of time commencing on the Petition Date through the earlier of (A) the date of determination, and (B) the last day of the week in which a Carve-Out Trigger Notice (defined below) is served, and (II) shall be permanently reduced with respect to each Professional Person by the aggregate amount of professional fees and expenses actually received by such Professional Person following the Petition Date (the amount set forth in this clause (iii), the "**Professional Fee Carve-Out Cap**"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $500,000 incurred after the first business day following delivery by the Prepetition Administrative Agent of the Carve-Out Trigger Notice, to the |
|---|---|

60917/0001-20333066v2

| | |
|---|---|
| | extent allowed at any time, whether by interim order, procedural order, or other order of this Court (the amounts set forth in this clause (iv) being the "**Post-Carve-Out Trigger Notice Cap**").<br><br>Interim Order, ¶ 4(a). |
| **Cross-Collateralization** | There is no cross-collateralization in the Interim Order. |
| **Termination or Default Provision** | Use of Cash Collateral pursuant to the Interim Order shall terminate immediately upon the earliest to occur of the following (the earliest such date, herein defined as the "**Termination Date**"): (i) the Debtors' failure to satisfy any Milestone (defined below) set forth in the Cash Collateral Orders; (ii) the entry of an order of this Court terminating the right of any Debtor to use Cash Collateral; (iii) the dismissal of any of the Cases or the conversion of any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (iv) the appointment in any of the Cases of a trustee or an examiner with expanded powers; (v) the entry of any order of the Court that impairs in any way the security interests, liens, priority claims or rights granted to the Prepetition Administrative Agent and/or any of the other Prepetition Credit Parties under the terms of this Interim Order; (vi) the Interim Order shall cease, for any reason, to be in full force and effect, or the Debtors shall so assert in writing, or any liens, rights or claims created in favor of the Prepetition Administrative Agent and/or any of the other Prepetition Credit Parties under the Interim Order shall cease to be enforceable and of the same effect and priority purported to be created hereby, or the Debtors shall so assert in writing; (vii) any of the Debtors challenge or object to the extent, validity, enforceability, priority, perfection and/or non-avoidability of the Prepetition Obligations or the Prepetition Administrative Agent's security interests in and liens upon the Collateral; (viii) an order of this Court shall be entered reversing, staying, vacating or otherwise modifying the Interim Order or any provision contained herein without the prior written consent of the Prepetition Administrative Agent; (ix) the actual Net Cash Flow deviates in any Cash Flow Measurement Period beyond the Permitted Variance as set forth in Paragraph 3(c) of the Interim Order from the amounts set forth in the Budget for such Cash Flow Measurement Period, without, in each instance, the prior written consent of the Prepetition Administrative Agent; (x) any Debtor fails to Pay in Full the Obligations in accordance with the terms set forth in this Interim Order, without the prior written consent of the Prepetition Administrative Agent; (xi) |

| | |
|---|---|
| | any material misrepresentation by any Debtor in the financial reporting or certifications to be provided by the Debtors to the Prepetition Administrative Agent under the Financing Agreements and/or this Interim Order; (xii) any of the Debtors propose or support any plan of reorganization or sale of all or substantially all of any Debtor's assets or entry of any order confirming any such plan or sale that is not conditioned on the Payment in Full of all Obligations on the effective date of such plan or closing of such sale; (xiii) the Debtors fail to provide any additional adequate protection ordered by the Court and such failure shall continue unremedied for more than three (3) business days after written notice thereof; (xv) any Debtor's failure to perform, in any respect, any of its obligations under the Interim Order; (xvi) any Debtor, including any subsidiary or affiliate thereof, promotes or otherwise markets discounting of Collateral offered for sale at any store location other than in the normal course of business without Prepetition Administrative Agent's prior written consent; or (xvii) any order is entered approving, in each case on terms and conditions that are not acceptable to Prepetition Administrative Agent, (A) the Debtors' store closing sales in accordance with Section 363 of the Bankruptcy Code, (B) the assumption of the Consulting Agreement dated as of May 18, 2020 by and between Debtors, Great American Group, LLC and Tiger Capital Group, LLC (the "**Store Closing Liquidation Agreement**"), (C) of bid procedures and authorization to conduct an auction for the sale of all or substantially all of the Debtors' intellectual property and real estate assets; or (D) the sale of all or substantially all of the Debtors' assets pursuant to Section 363 of the Bankruptcy Code (each of the forgoing, a "**Termination Event**"). <br><br> Interim Order, ¶ 5. |
| **Milestones** | Each Debtor shall satisfy or cause to be satisfied, as applicable, each of the following conditions (each individually a "**Milestone**," and collectively the "**Milestones**") unless otherwise consented to in writing by the Prepetition Administrative Agent: (a) on or prior to August 10, 2020, the Court shall have entered the Final Order, in form and substance acceptable to Prepetition Administrative Agent approving the Debtors' use of Cash Collateral; and (b) on or prior to August 31, 2020, the Debtors shall have made Payment in Full of all outstanding Obligations pursuant to the Financing Agreements and this Interim Order. <br><br> Interim Order, ¶ 26. |

| | |
|---|---|
| **Section 506(c) Waiver** | The Final Order contains a provision that seeks to waive the Debtors' rights under Section 506(c) of the Bankruptcy Code.<br><br>Interim Order, ¶ 21. |
| **Liens on Causes of Action** | Upon the entry of the Final Order, the Replacement Liens shall attach to property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to Sections 542, 544, 545, 547, 548, 549, 550, 551, 552 and 553 of the Bankruptcy Code.<br><br>Interim Order, ¶ 6(a). |
| **Limitations on Challenges** | The recitals in paragraph E of the Interim Order provide stipulations by the Debtors to the validity and priority of the liens securing the Prepetition Loans.<br><br>Paragraph 18 of the Interim Order provides that these stipulations shall be binding on the Debtors' estates and all parties in interest, including, without limitation, the Committee, unless any Committee (if appointed) or any other party in interest shall, after obtaining standing approved by the Court, commence a contested matter or adversary proceeding raising such claim, objection, or challenge, including, without limitation, any claim or cause of action against the Prepetition Lenders (each, a "**Challenge**") no later than the date that is (x)(i) with respect to the Committee, sixty (60) calendar days from the date of appointment of the Committee by the U.S. Trustee, (ii) with respect to all other parties in interest, seventy-five (75) calendar days from the Petition Date, or (iii) with respect to a chapter 11 trustee appointed in these Cases, or any chapter 7 trustee appointed in any Successor Case, in both cases prior to the expiration of the periods set forth in (i) and (ii), the date that is the later of twenty (20) days after the appointment of such trustee or the latest date set forth in subsections (i-ii) (collectively, the "**Challenge Period**").<br><br>Interim Order, ¶ 18. |

### D.    Immediate Relief Is Necessary and Appropriate

27.    Bankruptcy Rule 4001(b)(2) provides that a final hearing on a motion to use cash collateral pursuant to Sections 363 of the Bankruptcy Code may not be commenced earlier than

fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a hearing before such fourteen (14) day period and authorize the use of cash collateral to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing. See Fed. R. Bankr. P. 4001(b)(2).

28.     Pursuant to Bankruptcy Rule 4001(b)(2), the Debtors request that the Court conduct an interim hearing on the Motion within two (2) business days of the Petition Date and authorize the Debtors to use the Prepetition Lender's Cash Collateral on an interim basis in the amounts reflected in the Budget. As demonstrated above, the Debtors have an emergent need to use cash collateral to operate their business. Absent interim relief, the Debtors and their estates will suffer immediate and irreparable harm in that they will not have the ability to operate their business. Accordingly, it is appropriate for the Court to approve the Motion on an interim basis.

29.     During the interim period and pending a Fina Hearing pursuant to Bankruptcy Rule 4001(b)(2), the use of cash collateral will be governed by the terms of the Interim Order and the Budget. A proposed final Order will be submitted before the Final Hearing on substantially similar terms or incorporating such terms as may be agreed upon by the Debtors and the Prepetition Lender.

30.     Accordingly, it is appropriate for the Court to hear the Motion on an expedited basis.

### V.     REQUEST FOR BANKRUPTCY RULE 6004 WAIVERS

31.     The Debtors seek a waiver of (i) the notice requirements under Bankruptcy Rule 6004(a), and (ii) the stay of the order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent they are applicable, because the relief requested herein is necessary to avoid immediate and irreparable harm.

## VI.    WAIVER OF MEMORANDUM OF LAW

32.    The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to D.N.J. LBR 9013-1(a)(3) because the legal basis upon which the Debtors rely are incorporated herein and the Motion does not raise any novel issues of law.

## VII.    NO PRIOR REQUEST

33.    No previous motion for the relief sought herein has been made to this or to any other court.

## VIII.    NOTICE

34.    Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of New Jersey; (ii) the Internal Revenue Service; (iii) the New Jersey Division of Taxation Compliance and Enforcement - Bankruptcy Unit; (iv) the Office of the Attorney General of the State of New Jersey, Division of Law; (v) the United States Attorney's Office for the District of New Jersey; (vi) counsel for the administrative agent under the Debtors' pre-petition revolving credit facility, Wells Fargo Bank, National Association, c/o Otterbourg P.C. (Attn: Daniel F. Fiorillo, Esq. and Chad B. Simon, Esq.), 230 Park Avenue, New York, NY 10169-0075; (vii) the Debtors' twenty largest unsecured creditors; and (viii) all parties that have requested to receive notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested herein, the Debtors respectfully submit that no other or further notice is required.

20

# IX.  CONCLUSION

**WHEREFORE**, the Debtors respectfully request that the Court enter the Interim Order following the interim hearing on the Motion and a Final Order following the Final Hearing on the Motion, and grant such other relief as the Court deems just and appropriate under the circumstances.

Dated:  July 13, 2020

Respectfully submitted,

**COLE SCHOTZ P.C.**

By:  */s/ Stuart Komrower*

Michael D. Sirota, Esq.
Stuart Komrower, Esq.
Ryan T. Jareck, Esq.
Matteo W. Percontino, Esq.
Court Plaza North
25 Main Street
Hackensack, NJ 07601
Telephone: (201) 489-3000
Facsimile:  (201) 489-1536
Email: msirota@coleschotz.com
        skomrower@coleschotz.com
        rjareck@coleschotz.com
        mpercontino@coleschotz.com

60917/0001-20333066v2