# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Chapter 11 |
| RTW RETAILWINDS, INC., *et al.,* | Case No. 20-18445 (JKS) |
| Debtors.[1] | (Jointly Administered) |

## JOINT PLAN OF LIQUIDATION OF RTW RETAILWINDS, INC. AND AFFILIATED DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF ANY DEBTOR OR ANY OTHER PARTY IN INTEREST AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES. PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT, YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED HEREIN, OR THE TERMS OF THIS PLAN FOR ANY PURPOSE.**

**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Michael D. Sirota, Esq. (msirota@coleschotz.com)
Stuart Komrower, Esq. (skomrower@coleschotz.com)
Ryan T. Jareck, Esq. (rjareck@coleschotz.com)
Matteo Percontino, Esq. (mpercontino@coleschotz.com)

*Attorneys for Debtors and
Debtors in Possession*

Dated:  September 30, 2020

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc. (4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095); Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341); Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936). The Debtors' principal place of business is 330 W. 34th St., 9th Floor, New York, New York 10001.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW ............................................................................. 1

    A.   Defined Terms. .............................................................................................. 1

    B.   Rules of Interpretation and Computation of Time......................................... 11

    C.   Governing Law. ............................................................................................. 12

    D.   Reference to Monetary Figures. .................................................................... 12

    E.   No Amendment of Interim, Second Interim, Subsequent or Final Cash Collateral Orders ............................................................................................... 12

ARTICLE II ADMINISTRATIVE CLAIMS,   AND PRIORITY TAX CLAIMS ......... 12

    A.   Administrative Claims.................................................................................. 12

    B.   Priority Tax Claims. ...................................................................................... 14

    C.   Statutory Fees. .............................................................................................. 14

ARTICLE III CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ................................................................................................................... 14

    A.   Classification of Claims and Interests. ......................................................... 14

    B.   Summary of Classification. .......................................................................... 15

    C.   Treatment of Claims and Interests. .............................................................. 15

    D.   Special Provision Governing Claims that are Not Impaired. ........................ 18

    E.   Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code. .............................................................................................. 18

    F.   Subordinated Claims. ................................................................................... 18

    G.   Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes............................................................................................................... 19

    H.   Controversy Concerning Impairment. .......................................................... 19

    I.   Acceptance or Rejection of the Plan. ............................................................ 19

ARTICLE IV MEANS FOR IMPLEMENTATION OF THE PLAN............................. 20

    A.   Vesting of Assets........................................................................................... 20

    B.   Sources of Consideration for Plan Distributions. .......................................... 20

    C.   Liquidation Trust. ......................................................................................... 20

    D.   Dissolution of Liquidation Trust. ................................................................. 27

    E.   Liquidation Trust Security Matters............................................................... 27

    F.   Tax Returns. .................................................................................................. 27

i

G.   Cancellation of Existing Securities. ............................................. 27

H.   Indemnification Obligations. .......................................................... 27

I.   Effectuating Documents; Further Transactions. ............................. 28

J.   Exemption from Certain Taxes and Fees. ...................................... 28

K.   Treatment of Causes of Action. ..................................................... 28

L.   Ability to Seek and Obtain Discovery. .......................................... 28

M.   Debtors' Directors, Officers, and Managers. ................................. 29

N.   Debtors' Existence. ........................................................................ 29

O.   Dissolution of Creditors' Committee. ............................................ 29

P.   Corporate Authority. ...................................................................... 30

ARTICLE V FUNDING AND DISBURSEMENTS ..................................................... 30

A.   Distribution Agent. ........................................................................ 30

B.   Cash Payments. .............................................................................. 30

C.   Distribution for Allowed Claims. .................................................. 30

D.   Interest and Charges. ...................................................................... 30

E.   Compliance with Tax Requirements. ............................................. 30

F.   Fractional Dollars: De Minimis Distributions. .............................. 31

G.   Delivery of Distributions to Holders of Allowed Claims. ............. 31

H.   Unclaimed Distributions. ............................................................... 32

I.   No Penalty Claims. ......................................................................... 32

J.   Setoffs and Recoupment. ............................................................... 32

K.   Distributions by Liquidation Trust. ............................................... 32

L.   Claims Paid or Payable by Third Parties. ...................................... 33

ARTICLE VI SUBSTANTIVE CONSOLIDATION ................................................... 33

ARTICLE VII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ...................................................................................................................... 34

A.   Rejection of Executory Contracts and Unexpired Leases. ............. 34

B.   Claims Based on Rejection of Executory Contracts or Unexpired Leases. .... 35

ARTICLE VIII SETTLEMENT, RELEASE, INJUNCTION, AND RELATED
PROVISIONS .............................................................................................................. 35

A.   Settlement, Compromise, and Release of Claims and Interests. ................... 35

B.   Liabilities to, and Rights of, Governmental Units. ........................ 36

C.   Exculpation. ................................................................................... 36

D.   Release. .......................................................................................... 36

E.   Injunction. ...................................................................................... 37

60917/0001-21157183v4

F.    Term of Injunctions or Stays..........................................................................38

ARTICLE IX CONDITIONS PRECEDENT TO  CONSUMMATION OF
THE PLAN ..............................................................................................................38

A.    Conditions Precedent to the Effective Date. ..................................................38

B.    Waiver of Conditions.......................................................................................39

C.    Effect of Failure of Conditions. ......................................................................39

ARTICLE X MODIFICATION, REVOCATION OR WITHDRAWAL OF
THE PLAN ..............................................................................................................39

A.    Modification and Amendments. .......................................................................39

B.    Effect of Confirmation on Modifications. .......................................................40

C.    Revocation or Withdrawal of Plan. .................................................................40

ARTICLE XI RETENTION OF JURISDICTION...................................................40

ARTICLE XII MISCELLANEOUS PROVISIONS .................................................40

A.    Immediate Binding Effect. ..............................................................................40

B.    Additional Documents......................................................................................41

C.    Reservation of Rights. .....................................................................................41

D.    Successors and Assigns. ..................................................................................41

E.    Notices. ............................................................................................................41

F.    Entire Agreement. ...........................................................................................42

G.    Exhibits............................................................................................................42

H.    Severability of Plan Provisions. ......................................................................42

I.    Closing of Chapter 11 Cases...........................................................................43

J.    No Admission Against Interest.........................................................................43

K.    No Waiver. .......................................................................................................43

L.    Headings. .........................................................................................................43

M.    Conflicts...........................................................................................................43

60917/0001-21157183v4

# TABLE OF AUTHORITIES

**Page(s)**

**Statutes**

11 U.S.C. §101(27) and (ii) January 11, 2021 ................................................................3

11 U.S.C. §§ 105(a), 327, and 330 ...............................................................................8

26 U.S.C. § 601(b)(3) ..................................................................................................21

26 U.S.C. § 6012(b)(3) ................................................................................................20

28 U.S.C.§ 157 ...............................................................................................................2

31 U.S.C. § 3713(5) .....................................................................................................20

31 U.S.C. § 3713(b) .....................................................................................................21

United States Code title 11 .......................................................................................2, 21

United States Code title 28, 28 U.S.C. §§ l-4001 ....................................................7, 14

Bankruptcy Code chapter 11 ............................................................................... *passim*

Bankruptcy Code section 101(2) ..................................................................................1

Bankruptcy Code section 101(5) ..................................................................................3

Bankruptcy Code section 101(10) .............................................................................4, 7

Bankruptcy Code section 101(15) ................................................................................5

Bankruptcy Code section 101(16) ................................................................................6

Bankruptcy Code section 101(27) ................................................................................6

Bankruptcy Code section 101(41) ................................................................................8

Bankruptcy Code section 101(49) ..............................................................................10

Bankruptcy Code section 102 ....................................................................................11

Bankruptcy Code sections 105(a) and 1142 ..............................................................40

Bankruptcy Code section 365 .............................................................................5, 9, 11

Bankruptcy Code sections 365(a) and 1123 ...................................................................34

Bankruptcy Code section 501 .........................................................................................35

Bankruptcy Code section 502 ...................................................................................10, 35

Bankruptcy Code section 502(c) ......................................................................................4

Bankruptcy Code section 502(d) .....................................................................................4

Bankruptcy Code section 503(b)(1)(D) ..........................................................................13

Bankruptcy Code section 503(b)(4) ..................................................................................9

Bankruptcy Code section 503(b)(9) ................................................................................13

Bankruptcy Code section 505(b) .....................................................................................27

Bankruptcy Code section 507(a) .......................................................................................8

Bankruptcy Code section 507(a)(8) ..................................................................................9

Bankruptcy Code section 510 ..........................................................................................19

Bankruptcy Code section 510(b) ...............................................................................10, 19

Bankruptcy Code section 511 ..........................................................................................14

Bankruptcy Code section 521 ..........................................................................................10

Bankruptcy Code section 541 ............................................................................................5

Bankruptcy Code sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b),
   and 724(a) .....................................................................................................................2

Bankruptcy Code section 553 ..........................................................................................10

Bankruptcy Code section 558 ......................................................................................3, 32

Bankruptcy Code section 1122 ........................................................................................14

Bankruptcy Code section 1122(a) .....................................................................................3

Bankruptcy Code section 1123(a)(l) ...............................................................................12

Bankruptcy Code section 1123(b) .......................................................................20, 29, 36

Bankruptcy Code section 1123(b)(3) ...............................................................................21

Bankruptcy Code section 1124 .....................................................................................6, 11

v

Bankruptcy Code section 1126(f) ........................................................................15, 16, 17

Bankruptcy Code section 1126(g) ..............................................................................17, 18

Bankruptcy Code section 1127 .........................................................................................39

Bankruptcy Code section 1127(a)....................................................................................40

Bankruptcy Code section 1129 ......................................................................................1, 4

Bankruptcy Code section 1129(a)(8) ...............................................................................19

Bankruptcy Code Section 1129(a)(10) .............................................................................18

*Bankruptcy Code Sections 1129(a)(10) and 1129(b)* ...............................................18

Bankruptcy Code section 1129(b) ....................................................................................18

Bankruptcy Code section 1145 .........................................................................................27

Bankruptcy Code section 1146(a)...............................................................................20, 28

Tax Code Sections 671 through 679 ................................................................................25

Trade Act of 1974 Section 301 (19 U.S.C §2411)...........................................................3

Uniform Commercial Code................................................................................................28

**Other Authorities**

Bankruptcy Rule 1009 .........................................................................................................1

Bankruptcy Rule 2004 .......................................................................................................28

Bankruptcy Rule 3001 .......................................................................................................31

Bankruptcy Rule 3018 .........................................................................................................4

Bankruptcy Rule 3019 .................................................................................................39, 40

Bankruptcy Rule 3022 .......................................................................................................43

Bankruptcy Rule 9006(a)...................................................................................................12

Bankruptcy Rule 9006(a)(6) ...............................................................................................3

Bankruptcy Rule 9019 .......................................................................................................35

Bankruptcy Rules 3020(e), 6004(h)................................................................................40

Bankruptcy Rules 3020(e), 6004(h), and 6006(d) ..........................................................................38

Local Rule 3022-1 ...............................................................................................................34, 43

Revenue Procedure 94-45 ..................................................................................................25

Revenue Procedure 94-45, 1994-2 C.B. 684 ..................................................................25

Treas. Reg. 1.671¬4(a) ........................................................................................................23

Treasury Regulation Section 1.468B-9, and (ii) ..........................................................26

Treasury Regulation Section 301.7701-4(d) ..................................................................25

Treasury Regulations Section 1.671-4(a) ........................................................................25

60917/0001-21157183v4

## INTRODUCTION

RTW Retailwinds, Inc. and its affiliated Debtors, as debtors and debtors in possession in the above-captioned Chapter 11 Cases propose this joint chapter 11 plan. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an Order of the Bankruptcy Court.

Holders of Claims and Interests should refer to the accompanying Disclosure Statement for a discussion of the Debtors' history, businesses and assets, as well as a summary and description of this Plan and certain related matters. Each Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

A.    *Defined Terms.*

As used in this Plan, capitalized terms have the meanings ascribed to them below.

1.    *"Administrative Claim"* means any Claim against the Debtors or their Estates for costs and expenses of administration pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the businesses of the Debtors (such as wages, salaries, or commissions for services and payments for goods and other services and leased premises) and (b) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of the Judicial Code, provided that any Administrative Claim shall expressly exclude any Professional Fee Claim.

2.    *"Administrative Claims Bar Date"* means the date that is twenty-one (21) days from service of the Notice of Effective Date or such other date ordered by the Bankruptcy Court.

3.    *"Affiliate"* has the meaning set forth in section 101(2) of the Bankruptcy Code.

4.    *"Allowed"* means with respect to any Claim against the Debtors or their Estates (including any Administrative Claim) or portion thereof: (a) a Claim that is listed on the Debtors' Schedules, as such Schedule may be amended from time to time in accordance with Bankruptcy Rule 1009 prior to the closing of the Chapter 11 Cases, as neither disputed, contingent nor unliquidated and for which no contrary Proof of Claim has been Filed and as to which no objection to allowance thereof, or Challenge or action to reclassify, subordinate, or otherwise limit recovery with respect thereto, shall have been Filed within such period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or Final Order of the Bankruptcy Court; (b) a Claim that is allowed pursuant to the terms of the Plan or by a Final Order of the Bankruptcy Court or by agreement of the Liquidation Trustee following the Effective Date; or (c) a Claim as to which a Proof of Claim has been Filed and as to which no objection has been Filed or Challenge or action to reclassify, subordinate, or otherwise limit recovery with respect thereto has been Filed within such time period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order. Except for any Claim that is expressly Allowed

herein, any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed and for which no Proof of Claim has been timely Filed by the applicable bar date is not considered Allowed and any person or entity holding such Claim shall not be treated as a Creditor with respect to such Claim for the purposes of voting and distributions under the Plan.

5.      *"Assets"* means any and all of the right, title and interest of the Debtors in and to property of whatever type or nature, or wheresoever located, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Claims, Causes of Action, and any other general intangibles of the Debtors, as the case may be, including, without limitation, the Debtors' Estates; *provided*, *however*, that any Assets sold to the Buyer pursuant to the Asset Purchase Agreement and the Sale Order shall not be considered Assets of the Estates under this Plan.

6.      *"Asset Purchase Agreement"* means that certain Asset Purchase Agreement, by and among the Debtors and the Buyer, dated as of August 28, 2020, together with all amendments and schedules thereto, and related documents, and as may be amended, supplemented or otherwise modified from time to time.

7.      *"Avoidance Actions"* means any and all Causes of Action to avoid or recover a transfer of property, or avoid an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including sections 542, 543, 544, 545, 547, 548, 549, 550, 551, 553(b), and 724(a) of the Bankruptcy Code and any other applicable non-bankruptcy law, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date.

8.      *"Bank Products Claim"* means the contingent Claim of the Prepetition Credit Parties arising from bank products provided by the Prepetition Credit Parties to the Debtors.

9.      *Bank Products Claim Reserve"* means the sum of $100,000.00 on deposit with the Prepetition Credit Parties as adequate protection for the Bank Products Claim in accordance with the Second Interim Cash Collateral Order.

10.     *"Bankruptcy Code"* means title 11 of the United States Code.

11.     *"Bankruptcy Court"* means the United States Bankruptcy Court for the District of New Jersey having jurisdiction over the Chapter 11 Cases or any other court having jurisdiction over the Chapter 11 Cases, including, to the extent of the withdrawal of the reference under 28 U.S.C.§ 157, the United States District Court for the District of New Jersey.

12.     *"Bankruptcy Rules"* means the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of the Judicial Code.

13.     *"Beneficial Trust Interests"* means a beneficial interest in the Liquidation Trust held by Allowed Class 5 General Unsecured Claims, which interest shall be uncertificated and which shall be non-transferable except as expressly provided otherwise in the Liquidation Trust Agreement.

14.    ***"Business Day"*** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

15.    ***"Buyer"*** means Saadia Group LLC

16.    ***"Cash"*** means cash and cash equivalents, including, but not limited to, bank deposits, wire funds, checks, and legal tender of the United States of America or equivalents thereof.

17.    ***"Causes of Action"*** means any of the Debtors' action, Claim, cause of action, controversy, demand, right, action, Lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, offset, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.  Causes of Action also include: (a) any right of setoff, counterclaim or recoupment and any claim for breaches of duties imposed by law or in equity; (b) any Avoidance Action; (c) any Challenge; (d) any Claim or defense including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim. Causes of Action include (i) a litigation in the U.S. Court of International Trade on behalf of the Debtors which seeks to void the action taken by the U.S. Trade Representative to impose punitive tariffs on certain commodities at the time of entry under Section 301 of the Trade Act of 1974 (19 U.S.C §2411) and (ii) certain claims for legal malpractice against Colucci & Umans, Frank J. Colucci, Greg Colucci, O'Reilly IP, PLLC, Brian O'Reilly, Gabriel & Paleaz, PLLC, Michael George Gabriel and Andrea Palaez arising from their previous representation of the Debtors.

18.    ***"Challenge"*** shall have the meaning ascribed to it in the Interim Cash Collateral Order.

19.    ***"Chapter 11 Cases"*** means the cases pending for the Debtors under chapter 11 of the Bankruptcy Code jointly administered under case number 20-18445 (JKS).

20.    ***"Claim"*** means any claim against either of the Estates, as such term is defined in section 101(5) of the Bankruptcy Code.

21.    ***"Claims Bar Date"*** means the date or dates established by the Bankruptcy Court by which Proofs of Claim must be Filed which are (i) November 6, 2020 at 4:00 p.m. EDT for all persons and entities *other than* governmental units (as that term is defined in 11 U.S.C. §101(27) and (ii) January 11, 2021 at 4:00 p.m. EDT for governmental units.

22.    ***"Class"*** means pursuant to section 1122(a) of the Bankruptcy Code, a class of Claims against or Interests in the Debtors as set forth in Article III.

23.    ***"Cole Schotz"*** means Cole Schotz P.C., counsel for the Debtors.

3

24. **"Collateral"** means any property or interest in property in the Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not (or has not been) avoided or otherwise satisfied or discharged under the Bankruptcy Code or applicable state laws.

25. **"Confirmation Date"** means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases.

26. **"Confirmation Hearing"** means the hearing held by the Bankruptcy Court, as such hearing may be continued from time to time, to consider entry of the Confirmation Order pursuant to section 1129 of the Bankruptcy Code.

27. **"Confirmation Order"** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

28. **"Consensual Third-Party Releases"** means the releases set forth in Article VIII.D of the Plan.

29. **"Consummation"** means the occurrence of the Effective Date.

30. **"Creditor"** has the same meaning as set forth in section 101(10) of the Bankruptcy Code.

31. **"Creditors' Committee"** means the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases by the Office of the United States Trustee [*See* Docket No. 107].

32. **"Debtors"** means collectively  RTW Retailwinds, Inc., Lerner New York Holding, Inc., Lernco, Inc., Lerner New York, Inc., New York & Company, Inc., Lerner New York GC, LLC, Lerner New York Outlet, LLC, New York & Company Stores, Inc., FTF GC, LLC, Lerner New York FTF, LLC, Fashion to Figure, LLC and FTF IP Company, Inc., each of the foregoing as a debtor and debtor in possession in the Chapter 11 Cases.

33. **"Disclosure Statement"** means the Disclosure Statement for the Joint Plan of Liquidation of the Debtors pursuant to Chapter 11 of the Bankruptcy Code, dated September [___], 2020, as amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, and that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules and any other applicable law.

34. **"Disputed"** means, any Claim against or Interest in any Debtor that is (a) listed in the Schedules as disputed, contingent, or unliquidated and for which a Proof of Claim has not been timely Filed by the Applicable Claims Bar Date; (b) subject to an objection, Challenge, and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection, Challenge and/or request for estimation has not been withdrawn or determined by a Final Order; (c) held by a party that is adverse to the Debtors in any litigation or contested matter and as to which no Final Order resolving such litigation or contested matter has been entered; or (d) disallowed pursuant to section 502(d) of the

4

Bankruptcy Code.  A Claim or Interest that is Disputed as to its amount shall not be Allowed in any amount until it is no longer a Disputed Claim or Disputed Interest.

35.     ***"Distribution Agent"*** means, from the Effective Date, any Person(s) selected by the Liquidation Trustee to make or to facilitate distributions required by this Plan.

36.     ***"Distribution Date"*** means, with respect to (a) any Claim that is Allowed as of the Effective Date, the date that is as soon as reasonably practicable after the Effective Date; or (b) any Claim that is Allowed after the Effective Date, a date as soon as reasonably practicable after the date on which such Claim becomes Allowed.

37.     ***"Effective Date"*** means, with respect to the Plan, the date that is a Business Day selected by the Debtors in consultation with the Committee, on which (a) the conditions to the occurrence of the Effective Date have been met or waived in accordance with the Plan and (b) no stay of the Confirmation Order is in effect.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

38.     ***"Encumbered Cash"*** means any Cash held in the Prepetition Credit Parties Reserves.

39.     ***"Entity"*** means an entity as such term is defined in section 101(15) of the Bankruptcy Code.

40.     ***"Estates"*** means the estates created for the Debtors in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

41.     ***"Exculpated Claim"*** means any Cause of Action, arising during the period commencing on the Petition Date through the Effective Date related to any act or omission derived from, based upon, related to or arising from (a) the Chapter 11 Cases; (b) the formulation, preparation, dissemination, or negotiation of any document in connection with the Chapter 11 Cases, the Disclosure Statement, the Plan, and/or the Plan Supplement; (c) the formulation, preparation, or negotiation of any documents with respect to, or the consummation of, any sale of the Debtors' assets during the Chapter 11 Cases; (d) any contract, instrument, release, and/or other agreement or document created or entered into in connection with the foregoing subsections (a), (b), or (c); (e) the pursuit of Consummation; and/or (f) the filing, administration, and/or implementation of the Chapter 11 Cases, the Plan, or the distribution of property in connection therewith or thereunder.

42.     ***"Exculpated Party"*** means each of: (a) the Debtors; (b) the Creditors' Committee; (c) the members of the Creditors' Committee solely in their capacities as such; and (c) with respect to each of the foregoing Entities in clauses (a) and (b), such Entity's officers and directors, managers, members, employees, agents, representatives, financial advisors, professionals, accountants, attorneys, and each of their predecessors, successors, and assigns, but only to the extent that such party served in such a capacity any time during the Chapter 11 Cases.

43.     ***"Executory Contract"*** means a contract to which a Debtor is a party and that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

44.     *"File"* or *"Filed"* means file or filed with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

45.     *"Final Cash Collateral Order"* means any Final Order Authorizing Use of Cash Collateral and Granting Related Relief which may be entered after the date of the filing of this Plan.

46.     *"Final Distribution"* means the last distribution under this Plan made by the Liquidation Trust.

47.     *"Final Order"* means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to seek reconsideration or relief from judgment, appeal, or seek *certiorari* has expired and no request for reconsideration or relief from judgment, appeal, or petition for *certiorari* has been timely taken, or as to which any appeal that has been taken or any petition for *certiorari* that has been or may be filed has been resolved by the highest court to which the order or judgment could be appealed or from which *certiorari* could be sought or the reconsideration, relief from judgment, new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

48.     *"General Unsecured Claim"* means any Claim against a Debtor that is (i) neither Secured nor entitled to priority under the Bankruptcy Code or an order of the Bankruptcy Court and (ii) not an Administrative Claim, a Professional Fee Claim, a Priority Tax Claim, a Secured Tax Claim, an Other Priority Claim, a Prepetition Credit Parties Claim, an Other Secured Claim, an Intercompany Claim, a Subordinated Claim, or an Interest.

49.     *"Governmental Claim"* means any Claim against any Debtor Filed by a Governmental Unit.

50.     *"Governmental Unit"* means a governmental unit as defined in section 101(27) of the Bankruptcy Code.

51.     *"Impaired"* means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

52.     *"Indemnification Claim"* means the contingent Claim of the Prepetition Credit Parties for indemnification in the event a Challenge, as that term is defined in the Interim Cash Collateral Order, is asserted against any of the Prepetition Credit Parties.

53.     *"Indemnification Claim Reserve"* means the sum of $200,000.00 on deposit with the Prepetition Credit Parties as adequate protection for the Indemnification Claim in accordance with the Second Interim Cash Collateral Order.

54.     *"Interests"* means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including, without limitation, all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors together with any warrants, options, or

60917/0001-21157183v4

contractual rights to purchase or acquire such equity securities at any time and all rights arising with respect thereto.

55.     *Interim Cash Collateral Order"* means the Interim Order (I) Authorizing the Use of Cash Collateral and Affording Adequate Protection; (II) Modifying Automatic Stay; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief [Docket No. 49].

56.     *"Interim Compensation Order"* means the Administrative Fee Order Establishing Procedures for the Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of this Court [Docket No. 184].

57.     *"Intercompany Claim"* means any Claim against a Debtor held by another Debtor.

58.     *"Judicial Code"* means title 28 of the United States Code, 28 U.S.C. §§ l-4001.

59.     *"Letters of Credit Claim"* means the contingent Claim of the Prepetition Credit Parties related to potential liability for issued and outstanding letters of credit.

60.     *Letters of Credit Claim Reserve"* means a sum equal to 105% of the aggregate amount of outstanding letters of credit issued by the Prepetition Credit Parties on deposit with the Prepetition Credit Parties as adequate protection for the Letters of Credit Claim in accordance with the Interim Cash Collateral Order and Second Interim Cash Collateral Order, the unused portion of which shall be released and returned to the Liquidation Trust (if after the Effective Date) no later than five (5) business days of the day that the letter(s) of credit to which the applicable portion of this Reserve relates is drawn, cancelled or replaced.

61.     *"Lien"* has the same meaning as set forth in section 101(10) of the Bankruptcy Code.

62.     *"Liquidation Trust"* means the trust, of which the Liquidation Trustee shall serve as trustee, formed pursuant to this Plan, the Liquidation Trust Agreement, and the Confirmation Order.

63.     *"Liquidation Trust Agreement"* means the trust agreement substantially in the form attached to the Plan Supplement and reasonably satisfactory to the Creditors' Committee establishing the Liquidation Trust and setting forth the terms and conditions of the Liquidation Trust, as may be modified from time to time.

64.     *"Liquidation Trust Assets"* means the Assets of the Estates as of the Effective Date, including without limitation, Unencumbered Cash, the Liquidation Trust Claims Reserve, the Retained Causes of Action and any proceeds therefrom, the proceeds in the Professional Fee Claims Reserve after payment of Allowed Professional Fee Claims, and the Prepetition Credit Parties Reserves after satisfaction of the Prepetition Credit Party Claims.

65.     *"Liquidation Trust Claims Reserve"* shall mean the reserve established by the Debtors to satisfy in full all Administrative Claims (other than Professional Fee Claims), Priority Tax Claims, Secured Tax Claims, Other Priority Claims, and Other Secured Claims.

66.     ***"Liquidation Trust Expense Reserve"*** shall mean the reserve established on or before the Effective Date comprised of Unencumbered Cash in an amount sufficient to satisfy the costs of administering the Liquidation Trust, and winding down the Debtors' Estates, in an amount to be set forth in the Plan Supplement (subject to replenishment or modification, as set forth in the Liquidation Trust Agreement).

*67.*     ***"Liquidation Trustee"*** means the trustee selected by the Creditors' Committee and identified in the Plan Supplement, to serve as the liquidation trustee under the Liquidation Trust Agreement, or any successor appointed in accordance with the terms of the Plan and Liquidation Trust Agreement.

68.     ***"Loan and Security Agreement"*** means the Fourth Amended and Restated Loan and Security Agreement, dated October 24, 2014, as amended, restated, supplemented or otherwise modified prior to the Petition Date, and collectively with any other agreements and documents executed or delivered in connection therewith, each as may have been amended, restated, supplemented, or otherwise modified in accordance with the terms thereof by and among the Debtors and the Prepetition Credit Parties.

69.     ***"Local Rules"*** means the Local Rules of the United States Bankruptcy Court for the District of New Jersey.

70.     ***"Notice and Claims Agent"*** means Prime Clerk LLC.

71.     ***"Notice of Effective Date"*** means a notice to be Filed with the Bankruptcy Court by the Debtors upon the occurrence of all the conditions to Confirmation and Consummation set forth in Article IX of the Plan.

72.     ***"Ordinary Course Professional Order"*** means the Order Pursuant to 11 U.S.C. §§ 105(a), 327, and 330 Authorizing Debtors to Employ Professionals Used in the Ordinary Course of Business [Docket No. 185].

73.     ***"Other Priority Claims"*** means any Claim against the Debtors, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

74.     ***"Other Secured Claims"*** means any Secured Claim that is not a Prepetition Credit Party Claim or a Secured Tax Claim.

75.     ***"Person"*** means a person as such term is defined in section 101(41) of the Bankruptcy Code.

76.     ***"Petition Date"*** means July 13, 2020, the date on which the Debtors commenced the Chapter 11 Cases.

77.     ***"Plan"*** means this Joint Plan of Liquidation of the Debtors Pursuant to Chapter 11 of the Bankruptcy Code (as modified, amended or supplemented from time to time).

78.    ***"Plan Supplement"*** means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, including, without limitation, the Liquidation Trust Agreement, to be filed within ten (10) days prior to the Confirmation Hearing.

79.    *"**Prepetition Credit Parties**"* means Wells Fargo Bank, National Association, in its capacities as administrative agent, collateral agent and issuing bank under the Loan and Security Agreement, and the lender parties thereto from time to time.

80.    ***"Prepetition Credit Party Claims"*** means the Indemnification Claim, the Bank Products Claim and the Letter of Credit Claim."

81.    ***"Prepetition Credit Parties Reserves"*** means the Bank Products Reserve, the Indemnification Reserve and the Letters of Credit Reserve.

82.    ***"Priority Tax Claim"*** means any Claim against the Debtors of the kind specified in section 507(a)(8) of the Bankruptcy Code.

83.    ***"Professional"*** means any Person: (a) employed pursuant to a Bankruptcy Court order in accordance with sections 327, 363, or 1103 of the Bankruptcy Code and to be compensated for services rendered before or on the Effective Date, pursuant to sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by Final Order of the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code after motion on notice under that section of the Bankruptcy Code.

84.    ***"Professional Fee Claim"*** means a Claim for any accrued but unpaid fees and expenses owed to a Professional pursuant to such Professional's engagement letter or otherwise under sections 328, 330, 331, 503(b), 1103, or 503 of the Bankruptcy Code; *provided* that any such Professional Fee Claim shall be reduced by the amount of any retainer held by such Professional.

85.    ***"Professional Fee Claim Reserve"*** means the reserve established by the Debtors and maintained pursuant to the terms of this Plan and the Confirmation Order to be distributed to holders of Professional Fee Claims pursuant to the Interim Compensation Order or Order(s) of the Bankruptcy Court approving Professional Fee Claims.

86.    ***"Proof of Claim"*** means a written proof of Claim that is Filed against the Debtors in the Chapter 11 Cases.

87.    ***"Proof of Interest"*** means a written proof of Interest that is Filed against the Debtors in the Chapter 11 Cases.

88.    ***"Rejection Claim"*** means a Claim against the Debtors arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.

89.    ***"Released Party"*** means (a) the Debtors; (b) the Creditors' Committee; (c) the members of the Creditors' Committee (but only in their capacity as such); (d) the Prepetition Credit Parties and (e) with respect to each of the foregoing in clauses (a) through (d) such Person's or Entity's predecessors, successors and assigns, current and former Affiliates,

subsidiaries, beneficial owners, current or former officers, directors, managers, principals, shareholders, direct and indirect equity holders, general partners, limited partners, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in their capacity as such.

90.    *"Retained Causes of Action"* means any Cause of Action other than any Cause of Action that (i) is expressly subject to the release and exculpation provisions of this Plan or (ii) was sold to the Buyer pursuant to the Asset Purchase Agreement and the Sale Order.

*91.    "Sale Order"* means the *Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (B) Authorizing the Debtors to Enter Into and Perform Their Obligations Under the Purchase Agreement, (C) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) Granting Related Relief* [Docket No. 319].

92.    *"Schedules"* means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, as such schedules may be amended, modified or supplemented from time to time.

93.    *Second Interim Cash Collateral Order"* means the Second Interim Order (I) Authorizing the Use of Cash Collateral and Affording Adequate Protection; (II) Modifying Automatic Stay; (III) Scheduling a Final Hearing; and (IV) Granting Related Relief [Docket No. 259].

94.    *"Secured"* means when referring to a Claim: (a) secured by a Lien on property in which the Estates have an interest, which Lien is valid, perfected and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in the Estates' interests in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) or (b) of the Bankruptcy Code Allowed as such pursuant to the Plan.

95.    *"Secured Tax Claim"* means any Claim of a federal, state or local taxing authority against the Debtors that is secured by a lien on Assets of the Estates under applicable law.

96.    *"Security"* shall have the meaning set forth in section 101(49) of the Bankruptcy Code.

97.    *"Subordinated Claim"* means any Claim that is subordinated, pursuant to section 510(b) of the Bankruptcy Code or otherwise, including any Claims arising from rescission of a purchase or sale of a Security of any Debtor or an Affiliate of any Debtor, which Security is not an Interest, for damages arising from the purchase or sale of such a Security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim.

98. "***Subsequent Cash Collateral Order***" means any further Interim Cash Collateral that may be entered after the date of the filing of this Plan.

99. "***Tax Code***" means the Internal Revenue Code of 1986, as amended.

100. "***Unclaimed Property***" means any distribution to any Creditor under this Plan that is unclaimed thirty (30) days following the date of such distribution under this Plan.

101. "***Unclaimed Property Reserve***" means any Unclaimed Property reserved for a period of thirty (30) days by the Liquidation Trustee on behalf of holders of Unclaimed Property.

102. "***Unencumbered Cash***" means all Cash of the Debtors other than Encumbered Cash.

103. "***Unexpired Lease***" means a lease to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

104. "***Unimpaired***" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

105. "***U.S. Trustee***" means the United States Trustee for Region 3.

106. "***Voting Deadline***" means 4:00 p.m. [December __, 2020].

B. *Rules of Interpretation and Computation of Time.*

For purposes of this Plan: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (7) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with the applicable law, including the Bankruptcy Code and the Bankruptcy Rules; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the

11

Bankruptcy Court's CM/ECF system; and (11) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated.  Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

C.      *Governing Law.*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New Jersey, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

D.      *Reference to Monetary Figures.*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

E.      *No Amendment of Interim, Second Interim, Subsequent or Final Cash Collateral Orders*

Notwithstanding anything else contained in the Plan or the Liquidation Trust Agreement, nothing in the Plan or the Liquidation Trust Agreement is intended to or shall be deemed to amend, modify, alter or supersede any of the provisions of the Interim Cash Collateral Order, the Second Interim Cash Collateral Order, any Subsequent Cash Collateral Order and any Final Cash Collateral Order, the terms of each which are hereby, and will be, incorporated herein in its entirety as a part of this Plan.

## ARTICLE II
## ADMINISTRATIVE CLAIMS,
## AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(l) of the Bankruptcy Code, Administrative Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *Administrative Claims.*

1.      Administrative Claims

Except to the extent that a holder of an Allowed Administrative Claim and the Debtors agree to less favorable treatment with respect to such Allowed Administrative Claim, each holder of an Allowed Administrative Claim shall be paid in full in Cash on the earlier of the date that is (a) on or as soon as reasonably practicable after the Effective Date if such Administrative Claim is Allowed as of the Effective Date or (b) on or as soon as reasonably practicable after the date such Administrative Claim is Allowed, if such Administrative Claim is not Allowed as of the Effective Date.

      2.     Professional Fee Claims

Any Person asserting a Professional Fee Claim for services rendered before the Effective Date must File and serve on the parties required in the Interim Compensation Order or any other applicable order of the Bankruptcy Court, an application for final allowance of such Professional Fee Claim no later than forty-five (45) days after the Effective Date; *provided, however* that any Professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professional Order may continue to receive such compensation or reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professional Order.  Objections to any Professional Fee Claim must be Filed and served on the requesting party no later than fourteen (14) days from the service of an application for final allowance of a Professional Fee Claim. On the Effective Date, the Professional Fee Claim Reserve shall be transferred by the Debtors to Cole Schotz's IOLTA account to be held for the distribution of Allowed Professional Fee Claims.  Upon entry of an Order approving any such application for such Professional Fee Claim, Cole Schotz shall promptly distribute from the Professional Fee Claim Reserve any unpaid portion of such Allowed Professional Fee Claim to the applicable Professional.  To the extent that any Cash is remaining in the Professional Fee Claim Reserve after payment in full of all Allowed Professional Fee Claims, Cole Schotz shall promptly transfer any such remaining Cash to the Liquidation Trust and such Cash shall become Liquidation Trust Assets and be treated in accordance with the Liquidation Trust Agreement, the Plan, and the Confirmation Order.

      3.     Administrative Claim Bar Date

Requests for payment of Administrative Claims must be Filed on or before the Administrative Claims Bar Date.  Except as otherwise ordered by the Court, holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors or its property and such Administrative Claims shall be deemed released against the Debtors as of the Effective Date.  For the avoidance of doubt, (i) Governmental Units asserting Administrative Claims pursuant to section 503(b)(1)(D) of the Bankruptcy Code shall not be required to File a request for payment prior to the Administrative Claims Bar Date; and (ii) the Administrative Claims Bar Dates shall not apply to requests for claims arising under section 503(b)(9) of the Bankruptcy Code as the Claims Bar Date for those claims is November 6, 2020.

60917/0001-21157183v4

B.    *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive, at the option of the Debtors, one of the following treatments: (i) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, plus interest at the rate determined under applicable non-bankruptcy law and to the extent provided for by section 511 of the Bankruptcy Code; or (ii) such other treatment (which treatment shall be no more favorable than the treatment set forth in subsection (i) of this section) as may be agreed upon by such holder and the Debtors or otherwise determined upon an order of the Bankruptcy Court. Allowed Priority Tax Claims shall be paid on or as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim against the Debtors becomes an Allowed Priority Tax Claim, or (iii) such other date as may be ordered by the Bankruptcy Court.

C.    *Statutory Fees.*

All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code ("**Quarterly Fees**") prior to the Effective Date shall be paid by the Debtors on the Effective Date. On and after the Effective Date, the Liquidation Trust shall be responsible for (i) filing post-Confirmation quarterly reports and any pre-Confirmation monthly reports not filed as of the Confirmation Hearing in conformity with the U.S. Trustee guidelines and (ii) all Quarterly Fees (as defined below) for the Chapter 11 Cases until the entry of a final decree or until such Chapter 11 Cases are closed or dismissed; provided, however, to the extent the Debtors have paid (or have caused to be paid) Quarterly Fees on the Liquidation Trust Assets to the Liquidation Trust (for the transfer of such assets to the Liquidation Trust), the Liquidation Trustee shall not pay any Quarterly Fees on such Assets upon its transfer of those Assets to third parties, including, without limitation, any beneficiary of the Liquidation Trust.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Classification of Claims and Interests.*

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims against and Interests in the Debtors. All Claims and Interests, except for Administrative Claims, Professional Fee Claims and Priority Tax Claims are classified in the Classes set forth in this Article III. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

60917/0001-21157183v4

The classification of Claims against and Interests in the Debtors pursuant to the Plan is as set forth below.  The Plan shall apply as a substantively consolidated Plan for all of the Debtors. All of the potential Classes for the Debtors are set forth herein.

B.    *Summary of Classification.*

The following chart summarizes the classification of Claims and Interests pursuant to the Plan:

| **Class** | **Claim/Interest** | **Status** | **Voting Rights** |
|---|---|---|---|
| 1 | Secured Tax Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 4 | Prepetition Credit Parties Claims | Unimpaired | Deemed to Accept |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Impaired | Deemed to Reject |
| 7 | Subordinated Claims | Impaired | Deemed to Reject |
| 8 | Interests | Impaired | Deemed to Reject |

C.    *Treatment of Claims and Interests.*

To the extent a Class contains Allowed Claims or Allowed Interests with respect to a particular Debtor, the treatment provided for the holders of such Allowed Claims or Allowed Interests within each class is specified below:

1.    Class 1 – Secured Tax Claims

i.    *Classification*: Class 1 consists of all Secured Tax Claims.

*Treatment*: Each holder of an Allowed Secured Tax Claim shall receive, at the option of the Liquidation Trustee: (a) payment in full in Cash of such holder's Allowed Secured Tax Claim; or (b) equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five (5) years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the Liquidation Trustee to prepay the entire amount of such Allowed Secured Tax Claim during such time period.

ii.    *Voting:* Class 1 is Unimpaired by the Plan, and each holder of a Class 1 Secured Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 1 Secured Tax Claims are not entitled to vote to accept or reject the Plan.

2.      Class 2 – Other Secured Claims

     i.      *Classification:* Class 2 consists of all Other Secured Claims.

     ii.      *Treatment*: Each holder of an Allowed Other Secured Claim shall receive, at the option of the Liquidation Trustee, (a) payment in full in Cash of such holder's Allowed Other Secured Claim; (b) the Collateral securing such holder's Allowed Other Secured Claim; (c) Reinstatement of such holder's Allowed Other Secured Claim; or (d) such other treatment rendering such holder's Allowed Other Secured Claim Unimpaired.

     iii.      *Voting*: Class 2 is Unimpaired by the Plan, and each holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.      Class 3 – Other Priority Claims

     i.      *Classification*: Class 3 consists of all Other Priority Claims.

     ii.      *Treatment*: Each holder of an Allowed Other Priority Claim shall receive payment in full in Cash of such holder's Allowed Other Priority Claim from the Liquidation Trustee or such other treatment rendering such holder's Allowed Other Priority Claim Unimpaired.

     iii.      *Voting*: Class 3 is Unimpaired by the Plan, and each holder of a Class 3 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Class 3 Other Priority Claims are not entitled to vote to accept or reject the Plan.

4.      Class 4 – Prepetition Credit Party Claims

     i.      *Classification*: Class 4 consists of all Prepetition Credit Party Claims which are (i) the Indemnification Claim, (ii) the Bank Services Claim and (ii) the Letters of Credit Claim.

     ii.      *Treatment*: In full and final satisfaction of all Allowed Prepetition Credit Party Claims, the Prepetition Credit Parties shall retain and apply to the applicable Allowed Prepetition Credit Party Claims the funds in the Indemnification Claim Reserve, the Bank Services Claim Reserve and the Letters of Credit Claim Reserve in accordance with either subparagraph 4(b) of the Second Interim Cash Collateral Order or any Subsequent Cash Collateral Order or agreement that supersedes such subparagraph, and shall be paid in

16

Cash on account of any applicable Allowed Prepetition Credit Party Claim that exceeds the amounts in the applicable Prepetition Credit Party Reserve. At such time that any of the Prepetition Credit Party Claims become fixed or no longer exist, any unused amounts in the Prepetition Credit Party Reserves shall be returned to the Liquidation Trust.

*Voting*: The Holder of Class 4 Claims is Unimpaired by the Plan and therefore is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holder of the Prepetition Credit Party Claims is not entitled to vote to accept or reject the Plan.

5.  Class 5 - General Unsecured Claims

    i.  *Classification*: Class 5 consists of all General Unsecured Claims.

    ii.  *Treatment*: Except to the extent that a holder of an Allowed General Unsecured Claim agrees to less favorable treatment, in exchange for full and final satisfaction, settlement, and release of each Allowed General Unsecured Claim, each holder of such Allowed General Unsecured Claim shall receive its pro rata share of the Beneficial Trust Interests, which Beneficial Trust Interests shall entitle the holders thereof to receive their pro rata share of the Liquidation Trust Assets.

    iii.  *Voting*: Class 5 is Impaired by the Plan. Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.  Class 6—Intercompany Claims

    i.  *Classification*: Class 6 consists of consists of all Intercompany Claims.

    ii.  *Treatment*: On the Effective Date, all Class 6 Intercompany Claims shall be cancelled without any distribution on account of such Claims.

    iii.  *Voting*: Class 6 is Impaired by the Plan, and each holder of a Class 6 Intercompany Claim is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Class 6 Intercompany Claims are not entitled to vote to accept or reject the Plan.

7.  Class 7-Subordinated Claims

60917/0001-21157183v4

  i.  *Classification*:  Class 7 consist of all Subordinated Claims.

  ii.  *Treatment*:  On the Effective Date, all Class 7 Subordinated Claims shall be cancelled without any distribution on account of such Claims.

  iii.  *Voting*:  Class 7 is Impaired by the Plan, and each holder of a Class 7 Subordinated Claim is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Class 7 Subordinated Claims are not entitled to vote to accept or reject the Plan.

 8. Class 8 -Interests

  i.  *Classification*:  Class 8 consists of all Interests in the Debtors.

  ii.  *Treatment*:  Holders of Interests in the Debtors will receive no distribution under the Plan, and all Interests shall be cancelled.

  iii.  *Voting*:  Class 8 is Impaired by the Plan, and each holder of Class 8 Interests is conclusively presumed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Class 8 Interests are not entitled to vote to accept or reject the Plan.

 D. *Special Provision Governing Claims that are Not Impaired.*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' rights in respect of any Claims or Interests that are not Impaired, including all rights of Debtors in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims or Interests that are not Impaired.

 E. *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article X of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

 F. *Subordinated Claims.*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan take

into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, and subject to the deadline for initiating a Challenge as set forth in the Interim Cash Collateral Order and Second Interim Cash Collateral Order, the Liquidation Trust reserves the right to request that the Bankruptcy Court reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

      G.     *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes.*

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.  If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

      H.     *Controversy Concerning Impairment.*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

      I.     *Acceptance or Rejection of the Plan.*

      1.     Voting Classes

Class 5 is entitled to vote on the Plan.

      2.     Presumed Acceptance of the Plan

Pursuant the Bankruptcy Code, Classes 1, 2, 3 and 4 are deemed to have accepted the Plan and are not entitled to vote to accept or reject the Plan.

      3.     Presumed Rejection of the Plan

Classes 6, 7 and 8 are deemed to have rejected the Plan and are not entitled to vote to accept or reject the Plan.

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *Vesting of Assets.*

On the Effective Date, all the Debtors' Assets shall automatically be transferred to and vest in the Liquidation Trust free and clear of all Claims, Liens, Interests, encumbrances, and contractually imposed restrictions except as otherwise provided herein. The Debtors shall take all necessary actions to indefeasibly and irrevocably transfer to the Liquidation Trust the Liquidation Trust Assets. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar Tax, pursuant to section 1146(a) of the Bankruptcy Code as provided in section IV.J. hereof. The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(5) and 26 U.S.C. § 6012(b)(3) as well as the representative of the Estates appointed pursuant to section 1123(b) of the Bankruptcy Code for all Liquidation Trust Assets including, but not limited to, all Retained Causes of Action that comprise Liquidation Trust Assets.

B.    *Sources of Consideration for Plan Distributions.*

Distributions under the Plan on account of the Beneficial Trust Interests will be funded by the Liquidation Trust Assets. All other distributions under the Plan, other than distributions on account of Beneficial Trust Interests, will be funded by the Liquidation Trust Claims Reserve or the Professional Fee Claims Reserve. On the Effective Date, the Debtors shall fund the Liquidation Trust Claims Reserve, the Liquidation Trust Expense Reserve, the Encumbered Cash Reserve, and Professional Fee Claims Reserve, in full in Cash.

C.    *Liquidation Trust.*

1.    <u>Creation of Liquidation Trust</u>. On the Effective Date, the Liquidation Trust shall be created in accordance with the Liquidation Trust Agreement for the benefit of holders of Beneficial Trust Interests. The Liquidation Trust Agreement shall (i) be in form and substance consistent in all respects with this Plan and (ii) contain customary provisions for trust agreements utilized in comparable circumstances, including any and all provisions necessary to ensure continued treatment of the Liquidation Trust as a grantor trust and the holders of Beneficial Trust Interests as the grantors and owners thereof for federal tax purposes. On the Effective Date, the Retained Causes of Action shall be assigned to the Liquidation Trust. All relevant parties (including, the Debtors, the Liquidation Trustee, and the holders of Beneficial Trust Interests) will take all actions necessary to cause title to the Liquidation Trust Assets to be transferred to the Liquidation Trust. The powers, authority, responsibilities, and duties of the Liquidation Trust and the Liquidation Trustee are set forth and will be governed by the Liquidation Trust Agreement, the Plan, and Confirmation Order.

107.    <u>Purpose of the Liquidation Trust</u>. The Liquidation Trust shall be established for the primary purpose of liquidating its assets and making distributions in accordance with the Plan, Confirmation Order, and the Liquidation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purposes of the Liquidation Trust. The Liquidation Trust, acting

20

through the Liquidation Trustee, shall be authorized to exercise and perform the rights, powers, and duties held by the Estate with respect to the Liquidation Trust Assets, including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code, and shall be deemed to be acting in the capacity of a bankruptcy trustee, receiver, liquidator, conservator, rehabilitator, creditors' committee, or any similar official who has been appointed to take control of, supervise, manage, or liquidate the Debtors, to provide for the prosecution, settlement, adjustment, retention, and enforcement of the Liquidation Trust Assets.

108.    _Administration of the Liquidation Trust._ The Liquidation Trust shall be administered by the Liquidation Trustee pursuant to the Liquidation Trust Agreement and the Plan.  In the event of any inconsistency between the Plan, the Confirmation Order and the Liquidation Trust Agreement the Confirmation Order shall control.

109.    _Appointment of Liquidation Trustee._ As of the Effective Date, the Liquidation Trustee shall be appointed as trustee of the Liquidation Trust pursuant to the Liquidation Trust Agreement, the Plan, and the Confirmation Order, and section 1123(b)(3) of the Bankruptcy Code, and shall have all of the rights, powers, authority, and obligations set forth in the Liquidation Trust Agreement, the Plan, the Confirmation Order, and the Bankruptcy Code.  The Liquidation Trustee shall be the exclusive trustee of the Estates under Title 11 for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 601(b)(3).

110.    _Compensation of the Liquidation Trustee._ The Liquidation Trustee shall be compensated pursuant to the terms of the Liquidation Trust Agreement.  Any professionals retained by the Liquidation Trustee shall be entitled to reasonable compensation for services rendered and reimbursement of expenses incurred, subject to approval by the Liquidation Trustee. The payment of fees and expenses of the Liquidation Trustee and its professionals shall be made in the ordinary course of business from the Liquidation Trust Expense Reserve and if inadequate, from the Liquidation Trust Assets, and shall not be subject to Bankruptcy Court approval. The identity of the Liquidation Trustee and the form of the Liquidation Trust Agreement shall be disclosed in the Plan Supplement.

111.    _Responsibilities of the Liquidation Trustee._ The responsibilities of the Liquidation Trustee under the Liquidation Trust Agreement and this Plan shall include those set forth in the Liquidation Trust Agreement, including, without limitation, the following (a) the receipt of the Liquidation Trust Assets; (b) the establishment and maintenance of such operating, reserve, and trust account(s) as are necessary and appropriate to carry out the terms of the Liquidation Trust and the Plan, including the Liquidation Trust Expense Reserve and Liquidation Trust Claims Reserve; (c) the investment of Cash that is a Liquidation Trust Asset; (d) the pursuit of objections to, estimation of, and settlements of all Claims, regardless of whether any such Claim is listed on the Debtors' Schedules, other than Claims that are Allowed pursuant to the Plan; (e)  the investigation, prosecution, settlement, or abandonment of any Retained Causes of Action; (f) unless otherwise provided in the Plan, the calculation of all distributions to be made under this Plan; (g) authorizing and making, through the Distribution Agent, all distributions to be made under this Plan, (h) filing for dissolution of the Debtors, winding down employee benefit plans, issuing of W-2 and 1099 forms, filing final tax returns and (i) such other responsibilities as may be vested in the Liquidation Trustee pursuant to this Plan, the Liquidation Trust Agreement,

the Confirmation Order, other Bankruptcy Court Orders, or as otherwise may be necessary and proper to carry out the provisions of this Plan.

112.  <u>Powers of Liquidation Trustee</u>. The powers of the Liquidation Trustee, as set forth in the Liquidation Trust Agreement shall include, without limitation and without further Bankruptcy Court approval, each of the following:

> i.  To act on behalf of the Liquidation Trust, including the right to effect all actions and execute all agreements, instruments, and other documents, exercise all rights and privileges previously held by the Debtors, necessary or convenient to implement the provisions of this Plan and the Liquidation Trust Agreement;

> ii.  With respect to any Liquidation Trust Asset, to exercise in a manner not inconsistent with the Plan all power and authority that may be or could have been exercised, commence or continue all proceedings that may be or could have been commenced or continued and take all actions that may be or could have been taken by any member, officer, director, or shareholder of the Debtors with like effect as if authorized, exercised and taken by unanimous action of such officers, directors, and shareholders, including, without limitation, the dissolution of the Debtors;

> iii.  To manage, monitor, and enforce all of the Debtors' and the Estates' rights, and interests under the Plan, the Confirmation Order, the Liquidation Trust Agreement, any other agreements of the Debtors, and any other orders of the Bankruptcy Court;

> iv.  To establish, maintain, and adjust as may be appropriate, the Liquidation Trust Expense Reserve, and to authorize and make disbursements from the Liquidation Trust Expense Reserve, including disbursements necessary or appropriate in connection with winding down the Estates;

> v.  To authorize and make, through the Distribution Agent, distributions to holders of Allowed Claims provided for or contemplated in the Plan;

> vi.  To authorize and make through the Distribution Agent, distribution to holders of Beneficial Trust Interests provided for or contemplated under the Plan or Liquidation Trust Agreement;

> vii.  Except to the extent set forth in the Plan, to review, reconcile, allow or object to any Claims regardless of whether such Claim was Disputed on the Effective Date, to compromise or settle any Claim regardless of whether such Claim was Disputed on the Effective Date, prior to objection without supervision or approval of the Bankruptcy Court, free of any restriction of the Bankruptcy Code, the Bankruptcy Rules, the local rules of the Bankruptcy Court, and the guidelines and requirements of the U.S. Trustee, other than those restrictions expressly imposed by the Plan, the Confirmation Order, or the Liquidation Trust Agreement; *provided,*

60917/0001-21157183v4

*however*, that nothing herein shall be deemed to extend the deadline for initiating a Challenge as set forth in the Interim Cash Collateral Order and the Second Interim Cash Collateral Order (as such deadline may be extended by any Final Order);

viii.    To make decisions, without further Bankruptcy Court approval, regarding the retention or engagement of professionals, employees, and consultants by the Liquidation Trust and the Liquidation Trustee and to pay the fees and charges incurred by the Liquidation Trustee on the Liquidation Trust's behalf on or after the Effective Date for fees and expenses of professionals (including those retained by the Liquidation Trustee), disbursements, expenses or related support services relating to the Liquidation Trust;

ix.    To (a) file, if necessary, any and all tax and information returns required with respect to the Liquidation Trust as a grantor trust pursuant to Treas. Reg. 1.671¬4(a) or otherwise, (b) make tax elections by and on behalf of the Liquidation Trust, and (c) pay taxes, if any, payable by the Liquidation Trust;

x.    To take all other actions not inconsistent with the provisions of the Plan that the Liquidation Trustee deems reasonably necessary or desirable with respect to administering the Plan, provided, however, the Liquidation Trustee may seek to extend any deadline or milestone established under this Plan or the Confirmation Order by filing a Notice of Extension with the Bankruptcy Court without any further action;

xi.    To implement and/or enforce all provisions of the Plan, including entering into any agreement or executing any document required by or consistent with the Plan, the Confirmation Order, or the Liquidation Trust Agreement;

xii.    To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any Liquidation Trust Asset that the Liquidation Trustee determines in its reasonable business judgment is of inconsequential value or burdensome to the Liquidation Trust;

xiii.    Except as otherwise set forth herein, to prosecute and/or settle any Retained Causes of Action, with or without approval of the Bankruptcy Court, and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction and participate as a party or otherwise in any administrative, arbitrative, or other nonjudicial proceeding and pursue to settlement or judgment such Retained Causes of Action;

23

xiv.    To purchase or create and carry all insurance policies and pay all insurance premiums and costs the Liquidation Trustee deems necessary or advisable;

xv.    To collect and liquidate and/or distribute all Liquidation Trust Assets pursuant to the Plan, the Confirmation Order, and the Liquidation Trust Agreement;

xvi.    To hold any legal title to any and all of the Liquidation Trust Assets;

xvii.    If any of the Liquidation Trust Assets are situated in any state or other jurisdiction in which the Liquidation Trustee is not qualified to act as trustee, to nominate and appoint a Person duly qualified to act as trustee in such state or jurisdiction and require from each such trustee such security as may be designated by the Liquidation Trustee in its discretion; confer upon such trustee all the rights, powers, privileges and duties of the Liquidation Trustee hereunder, subject to the conditions and limitations of the Liquidation Trust Agreement, except as modified or limited by the Liquidation Trustee and except where the conditions and limitations may be modified by the laws of such state or other jurisdiction (in which case, the laws or the state or jurisdiction in which the trustee is acting shall prevail to the extent necessary); require such trustee to be answerable to the Liquidation Trustee for all monies, assets, and other property that may be received in connection with the administration of all property; and remove such trustee, with or without cause, and appoint a successor trustee at any time by the execution by the Liquidation Trustee of a written instrument declared such trustee removed from office, and specifying the effective date and time of removal;

xviii.    Retain any and all insurance policies of the Debtors providing coverage with respect to Retained Causes of Action; and

xix.    Exercise such other powers as may be vested in or assumed by the Liquidation Trustee pursuant to the Plan, the Liquidation Trust Agreement, the Confirmation Order, other orders of the Bankruptcy Court, or as may be necessary and proper to carry out the provisions of the Plan.

xx.    Solely with respect to any Liquidation Trust Asset, the Liquidation Trustee shall stand in the same position as the Debtors with respect to any claim the Debtors may have to an attorney-client privilege, the work-product doctrine, or any other privilege, and the Liquidation Trustee shall succeed to all of the Debtors' rights to preserve, assert or waive any such privilege.

113.    <u>Indemnification and limitation of Liability of the Liquidation Trust</u>.  The Liquidation Trustee and each of its respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, real estate

brokers, transfer agents, independent contractors, managers, members, officers, partners, predecessors, principals, professional persons, representatives, affiliate, employer and successors (each, an "Indemnified Party") shall be indemnified for, and defended and held harmless against, by the Liquidation Trust and solely from the Liquidation Trust Assets, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) actually incurred without gross negligence, willful misconduct, or fraud on the part of the applicable Indemnified Party (which gross negligence, willful misconduct, or fraud, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or this Agreement, as applicable if the applicable Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Liquidation Trust or its beneficiaries.  An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, willful misconduct, or fraud.  The amounts necessary for the indemnification provided in this section (including, but not limited to, any costs and expenses incurred in enforcing the right of indemnification in this section) shall be paid by the Liquidation Trustee out of the Liquidation Trust Assets.  The Liquidation Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Liquidation Trust, and no Person shall look to the Liquidation Trustee personally for the payment of any such expense or liability.  The indemnification provided in this section shall survive the death, dissolution, incapacity, resignation or removal of the Liquidation Trustee, Indemnified Party or the termination of the Liquidation Trust, and shall inure to the benefit of each Indemnified Party's heirs and assigns.

114.    <u>Tax Treatment of the Liquidation Trust</u>. The Liquidation Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684, and thus, as a "grantor trust" within the meaning of Sections 671 through 679 of the Tax Code.  In conformity with Revenue Procedure 94-45, all parties (including the Debtors, the Liquidation Trust, holders of Allowed Class 5 General Unsecured Claims receiving Beneficial Trust Interests in the Liquidation Trust, and the Liquidation Trustee) will be required to treat the transfer of the Liquidation Trust Assets to the Liquidation Trust, for all purposes of the Code, as (1) a transfer of the Liquidation Trust Assets (subject to any obligations relating to those assets) directly to the Liquidation Trust beneficiaries (other than to the extent any Liquidation Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such beneficiaries to the Liquidation Trust of Liquidation Trust Assets in exchange for Beneficial Trust Interests.

115.    <u>Tax Reporting</u>.

i.    The Liquidation Trustee shall file tax returns for the Liquidation Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a) and in accordance with this section of the Plan.  The Liquidation Trust's items of taxable income, gain, loss, deduction, and/or credit (other than such items allocable to any assets allocable to, or retained on account of, Disputed Claims) will be allocated to each holder in accordance with their relative ownership of Beneficial Trust Interests.

60917/0001-21157183v4

ii.  As soon as possible after the Effective Date, the Liquidation Trustee shall make a good faith valuation of the Liquidation Trust Assets, and such valuation shall be used consistently by all parties for all federal income tax purposes.  The Liquidation Trust shall also file (or cause to be filed) any other statements, returns, or disclosures relating to the Liquidation Trust that are required by any Government Unit for taxing purposes.

iii.  The Liquidation Trust shall be responsible for payment, out of the Liquidation Trust Assets, of any taxes imposed on the Liquidation Trust (including any "disputed ownership fund") or the Liquidation Trust Assets.  In accordance therewith, any taxes imposed on any disputed ownership fund or its assets will be paid out of the assets of the disputed ownership fund and netted against any subsequent distribution in respect of the allowance or disallowance of such Claims.

iv.  The Liquidation Trustee (i) may timely elect to treat any Liquidation Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, and (ii) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes.  If a "disputed ownership fund" election is made, all parties (including the Liquidation Trustee and the holders of Beneficial Trust Interests) shall report for United States federal, state, and local income tax purposes consistently with the foregoing.  The Liquidation Trustee shall file all income tax returns with respect to any income attributable to a "disputed ownership fund" and shall pay the federal, state, and local income taxes attributable to such disputed ownership fund based on the items of income, deduction, credit, or loss allocable thereto.

116.  <u>Retained Causes of Action</u>.  The Liquidation Trustee shall have the sole and exclusive right to pursue any existing or potential Retained Causes of Action, by informal demand and/or commencement or continuation of litigation.  The Liquidation Trustee shall have the sole and exclusive right to not pursue or to release any existing or potential Retained Cause of Action .

117.  <u>Costs and Expenses of the Liquidation Trust</u>.  The costs and expenses of the Liquidation Trust, including the fees and expenses of the Liquidation Trustee and other professionals retained on behalf of the Liquidation Trust, shall be paid out of the Liquidation Trust Expense Reserve, subject to the terms of the Liquidation Trust Agreement, and if inadequate, from the Liquidation Trust Assets.

118.  <u>Effective Date</u>.  On the Effective Date, the Liquidation Trustee shall have the rights and powers set forth herein, in the Confirmation Order and in the Liquidation Trust Agreement to carry out and implement the purposes and intent of the Plan.

D.    *Dissolution of Liquidation Trust.*

The Liquidation Trust shall be dissolved no later than five (5) years from the Effective Date, unless the Bankruptcy Court, upon motion made prior to the fifth (5th) anniversary without the need for a favorable letter ruling from the IRS that any further extension would not adversely affect the status of either as a Liquidation Trust for federal income tax purposes, determines that a fixed period extension, not to exceed five (5) years, is necessary to facilitate or complete the recovery on and liquidation of the Liquidation Trust Assets.  Upon the filing of any motion for an extension of the date of dissolution, such date shall be deemed automatically extended until an order of the Bankruptcy Court is entered with respect to such or motion or such motion is withdrawn.

E.    *Liquidation Trust Security Matters.*

To the extent that the Beneficial Trust Interests are deemed to be "securities," the issuance of such interests under this Plan are exempt pursuant to section 1145 of the Bankruptcy Code, and from registration under the Securities Act of 1933, as amended, and any applicable U.S. federal, state, and local laws requiring registration of securities.  It is currently anticipated that the Beneficial Trust Interests will be uncertificated and non-transferable except to the extent expressly provided otherwise in the Liquidation Trust Agreement.

F.    *Tax Returns.*

After the Effective Date, the Liquidation Trustee shall complete and file all final or otherwise required federal, state, and local tax returns for the Debtors, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of the Debtors or their Estates for any tax incurred during the administration of such Debtors' Chapter 11 Cases, as determined under applicable tax laws.

G.    *Cancellation of Existing Securities.*

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, the obligations of the Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, and purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtors related thereto shall be cancelled and deemed null and void.

H.    *Indemnification Obligations.*

Except as otherwise provided in the Plan, the Confirmation Order, any and all indemnification obligations of the Debtors, whether pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document, or other document or applicable law, shall be rejected as of the Effective Date of the Plan.

27

I.      *Effectuating Documents; Further Transactions.*

Prior to the Effective Date, the Debtors and their respective directors, members, trustees, officers, and managers are and, after the Effective Date, the post-Effective Date Debtors and the Liquidation Trustee are authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan in the name of and on behalf of the Debtors, without the need for any approvals, authorizations, or consents, except for those expressly required pursuant to the Plan, or any further notice to or action, order, or approval of the Bankruptcy Court.

J.      *Exemption from Certain Taxes and Fees.*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

K.      *Treatment of Causes of Action.*

Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, sold, or settled in the Plan or pursuant to a Bankruptcy Court order, the Debtors hereby expressly reserve and assign to the Liquidation Trust, any and all Retained Causes of Action, whether arising before or after the Petition Date, and preserve the right to commence, continue, prosecute, or settle such Retained Causes of Action, notwithstanding the occurrence of the Effective Date.  The Liquidation Trustee, on behalf of the Liquidation Trust, may pursue such Retained Causes of Action, in its sole discretion.  No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Retained Cause of Action against them as any indication that the Liquidation Trust will not pursue any and all available Retained Causes of Action against them. No preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action as a consequence of Confirmation or Consummation.

L.      *Ability to Seek and Obtain Discovery.*

From and after the Effective Date, the Liquidation Trustee shall have the ability to seek and obtain examination (including document discovery and depositions) under Bankruptcy Rule 2004 against any Person or Entity, and the Bankruptcy Court shall retain jurisdiction to order examinations (including examinations under Bankruptcy Rule 2004) against any Person or Entity, and to hear all matters with respect to the same.

M.    *Debtors' Directors, Officers, and Managers.*

On the Effective Date, all officers, directors, and managers of the Debtors shall be deemed to have resigned and shall be discharged from any further duties and responsibilities in such capacity.  On and after the Effective Date, the Liquidation Trustee shall have the authority to and power to act on behalf of the Debtors as if it were the sole officer, director, or manager of the Debtors to the extent required to act on behalf of the Debtors after the Effective Date for the purposes set forth in this Plan.  The Liquidation Trustee shall retain and enforce Retained Causes of Action as the representative of the Estates in his, her or its capacity as the Liquidation Trustee under the Plan pursuant to section 1123(b) of the Bankruptcy Code and not as an officer, director, or manager of the Debtors.  Any and all operating agreements, certificates of organization, and related corporate documents are deemed amended by the Plan to permit and authorize such sole appointment.

N.    *Debtors' Existence.*

Upon the filing of a Notice of Dissolution in the Bankruptcy Court by the Liquidation Trust, the Debtors shall be deemed to be dissolved without any further action by the Debtors or the Liquidation Trustee, including the filing of any documents in any office in any jurisdiction where the Debtors are organized.  From and after the Effective Date, the Debtors shall not be required to file any document or take action to withdraw its business operations from any states in which the Debtors were previously conducting business.  Upon the Effective Date, all transactions and applicable matters provided under the Plan shall be deemed to be authorized by the Debtors without any requirement of further action by any Debtor.  On and after the Effective Date, the Debtors' remaining affairs shall be administered and managed by the Liquidation Trustee in accordance with the Plan solely for the purpose of winding them up to the extent deemed necessary by the Liquidation Trustee.  Upon the Effective Date, the Debtors shall turn over their books and records to the Liquidation Trustee.

Upon certification to be filed with the Court of the Final Distribution and completion of all duties under this Plan and entry of a Final Decree closing the Chapter 11 Cases, the Debtors shall be deemed to be dissolved without any further action by the Debtors or the Liquidation Trustee, including the filing of any documents in any office in any jurisdiction where the Debtors are organized.  However, the Liquidation Trustee shall have the authority to take all necessary action to dissolve any Debtor.  Further, upon the aforementioned certification and entry of Final Decree, the Liquidation Trustee shall be authorized, in his or her sole discretion, to discard or destroy any and all of the Debtors' books and records.  Upon the Effective Date, the Debtors shall turn over their books and records to the Liquidation Trustee.

O.    *Dissolution of Creditors' Committee.*

On the Effective Date, (a) the Creditors' Committee shall dissolve and its members shall be released of their respective duties, responsibilities, and obligations in connection with the Chapter 11 Cases or the Plan; and (b) the retention or employment of the Creditors' Committee's respective professionals and agents shall be terminated, other than with respect to the filing and prosecution of applicable fee applications.

60917/0001-21157183v4

P.    *Corporate Authority.*

The Confirmation Order shall constitute full and complete authority for the Debtors and Liquidation Trust to take all other actions that may be necessary, useful, or appropriate to consummate the Plan without any further judicial or corporate authority.

## ARTICLE V
## FUNDING AND DISBURSEMENTS

A.    *Distribution Agent.*

The Distribution Agent, on behalf of the Debtors and/or Liquidation Trustee, shall make all distributions under the Plan on account of Allowed Claims against the Debtors pursuant to the terms of the Plan, Confirmation Order and the Liquidation Trust Agreement, *provided*, *however*, that all Allowed Professional Fee Claims shall be paid out of the Professional Fee Reserve.  All distributions to holders of Beneficial Trust Interests shall be made by the Distribution Agent. The Distribution Agent shall act at the direction of the Liquidation Trustee.

B.    *Cash Payments.*

Cash payments made pursuant to the Plan shall be in U.S. funds, by the means agreed to by payor and payee, including by check or wire transfer or, in the absence of an agreement, such commercially reasonable manner as the Liquidation Trustee shall determine in his or her sole discretion.

C.    *Distribution for Allowed Claims.*

Except as otherwise provided in the Plan or the Confirmation Order, or as otherwise ordered by the Bankruptcy Court, distributions to holders of Allowed Claims shall be made on the Distribution Date.

No holder of a Disputed Claim shall be entitled to a distribution from the Liquidation Trustee, the Liquidation Trust, the Debtors, or the Estates with respect to such Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on such Disputed Claim except as provided in the Plan. The Liquidation Trustee shall establish a reserve in Cash in the full amount of any distributions that would otherwise be payable upon any Disputed Claims if they were Allowed Claims until such time as such Disputed Claims are determined by Final Order to be Allowed or not Allowed.

D.    *Interest and Charges.*

No interest shall accrue or be paid on Allowed Claims.

E.    *Compliance with Tax Requirements.*

In connection with the Plan, to the extent applicable, the Liquidation Trust shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting

requirements.  Notwithstanding any provision in the Plan to the contrary, the Liquidation Trust shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, including, without limitation, requiring that the holder of an Allowed Claim complete the appropriate IRS Form W-8 or IRS Form W-9, as applicable to each holder or establishing any other mechanisms they believe are reasonable and appropriate.  The Liquidation Trust reserves the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

The Liquidation Trust shall not be required to make distributions on any Allowed Claim if the holder thereof has not provided all documentation, that in the Liquidation Trustee's reasonable business judgment, is necessary to determine that all tax withholding and reporting requirements for such Allowed Claim.  To the extent such documentation is not provided within forty-five (45) days of written request, the distribution on such Allowed Claim shall be deemed disallowed and expunged in their entirety and the funds shall become Liquidation Trust Assets and redistributed to the other holders of Allowed Claims in accordance with the terms of this Plan.

F.    *Fractional Dollars: De Minimis Distributions.*

Notwithstanding any other provision of the Plan, the Liquidation Trust shall not be required to make distributions or payments of fractions of dollars, and whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made shall reflect a rounding down of such fraction to the nearest whole dollar.  In addition, the Liquidation Trustee shall not be required to make any distribution in an amount less than $50.00.  To the extent that such a distribution shall be called for as part of any interim distribution, the Liquidation Trust shall establish a reserve for all distributions in the amount of less than $50.00 and shall, when and if the holder of an Allowed Claim is entitled to a distribution of $50.00 or more, make such distribution at such time.  The Liquidation Trust shall not be required to make any Final Distribution of less than $50.00 and all monies otherwise payable in such amount shall be paid to the other holders of Allowed Claims, in accordance with the terms of the Plan, the Confirmation Order and the Liquidation Trust Agreement.

G.    *Delivery of Distributions to Holders of Allowed Claims.*

Distributions to holders of Allowed Claims shall be made at the address set forth in the Schedules unless such addresses are superseded by proofs of claim or transfers of claims filed pursuant to Bankruptcy Rule 3001 or at the last known address of such holders if the Liquidation Trustee has been notified in writing of a change of address.  If the distribution to any holder of an Allowed Claim is returned to the Liquidation Trustee as undeliverable or otherwise unclaimed, such Unclaimed Property shall be held in a reserve as set forth in Section V.H of the Plan.

60917/0001-21157183v4

H.    *Unclaimed Distributions.*

If any distribution to holders of an Allowed Claim or Beneficial Trust Interest is unclaimed or returned as undeliverable, such Unclaimed Property shall be held by the Liquidation Trustee in the Unclaimed Property Reserve for a period of sixty (60) days and may be released by the Liquidation Trustee prior to the expiration of the sixty days if presentation of proper proof by such holder of its entitlement thereto is presented to the Liquidation Trustee. After the expiration of the sixty (60) days, the holders of Allowed Claims or Beneficial Trust Interests entitled to such Unclaimed Property shall cease to be entitled thereto and shall be entitled to no further distributions under the Plan, and such Allowed Claims shall be deemed disallowed and expunged in their entirety and the funds shall become Liquidation Trust Assets and redistributed to the other holders of Allowed Claims in accordance with the terms of this Plan, Confirmation Order and Liquidation Trust Agreement. Such funds shall not be subject to the escheat laws of any state.

If there is any residual Unclaimed Property at the time of dissolution of the Liquidation Trust, such residual Unclaimed Property shall be available for a subsequent distribution on a pro rata basis to holders of Beneficial Trust Interests or donated to a charitable organization at the sole discretion of the Liquidation Trust.

Nothing contained in the Liquidation Trust Agreement, this Plan, or the Confirmation Order shall require the Debtors, the Liquidation Trustee, the Liquidation Trust, or the Distribution Agent to attempt to locate any holder of an Allowed Claim or Beneficial Trust Interest.

I.    *No Penalty Claims.*

Unless otherwise specifically provided for in the Plan or the Confirmation Order, no holder of any Claim will be entitled to allowance of, or to receive any payment on account of, any penalty arising with respect to or in connection with such Claim and any such penalty shall be deemed disallowed and expunged.

J.    *Setoffs and Recoupment.*

The Liquidation Trust may, but shall not be required to, setoff against or recoup from any Claims of any nature whatsoever that the Debtors may have against the claimant pursuant to section 558 of the Bankruptcy Code or otherwise, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Liquidation Trust of any such Claim it may have against the holder of such Claim.

K.    *Distributions by Liquidation Trust.*

The Liquidation Trust shall not be obligated to make a distribution on account of the Beneficial Interests that would impair the ability of the Liquidation Trust to pay the expenses incurred by the Liquidation Trust.

L.    *Claims Paid or Payable by Third Parties.*

1.    <u>Claims Paid by Third Parties</u>. The Liquidation Trustee shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the holder of such Claim receives payment in full on account of such Claim from a party that is not the Debtors or Liquidation Trust.  To the extent a holder of such Claim receives a distribution on account of such Claim and receives payment from a party that is not the Debtors or the Liquidation Trust on account of such Claim, such holder shall repay, return, or deliver any distribution to the Liquidation Trust, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The Liquidation Trust and the Debtors' Estates reserve all of their rights, remedies, claims, and actions against any such holders who fail to repay or return any such distribution.

2.    <u>Claims Payable by Third Parties</u>. No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant the Debtors' insurance policies until the holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim, then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    <u>Applicability of Insurance Policies</u>. Except as otherwise provided in the Plan, distributions to holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.

**ARTICLE VI**
**SUBSTANTIVE CONSOLIDATION**

The Plan shall serve as a motion by the Debtors seeking entry of an Order substantively consolidating all the Estates of all of the Debtors into a single consolidated estate for all purposes associated with Confirmation and Consummation of the Plan.

The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court of the substantive consolidation of the Debtors and their respective Estates for all purposes relating to the Plan, including for purposes of voting, confirmation and distributions.  If this substantive consolidation is approved, then for all purposes associated with the Confirmation and Consummation of the Plan, all assets and liabilities of the Debtors shall be treated as though they were merged into a single economic unit, and all guarantees by any Debtor of the obligations of any other Debtor, to the extent such exist, shall be considered eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be treated as one collective obligation of the Debtors.  Moreover, (a) no distribution shall be made under the Plan on account of any Intercompany Claim or Interest held by any one of the Debtors in any of the other Debtors except to the extent necessary to effect the substantive consolidation provided for herein, (b) all guaranties of any one of the Debtors of the obligations of any of the other Debtors, to the extent

33

such exist, shall be eliminated so that any Claim against any one of the Debtors, and any guaranty thereof executed by any of the other Debtors, shall be one obligation of the consolidated Debtors' Estates, and (c) every Claim that is timely Filed or to be Filed in the Chapter 11 Cases of any of the Debtors shall be deemed Filed against the consolidated Estates and shall be one Claim against, and one obligation of, the Estates.

Notwithstanding any provision of the Plan to the contrary, any holder of multiple Allowed Claims against more than one Debtor that arise from the contractual, joint, joint and several, or several liability of such Debtors, the guaranty by one Debtor of another Debtor's obligation or other similar circumstances, shall be entitled to one Allowed Claim that, in the aggregate, does not exceed the amount of the underlying Claim giving rise to such multiple Claims.  Claims against more than one of the Debtors arising from the same injury, damage, cause of action or common facts shall be Allowed only once as if such Claim were against a single Debtor.

Any alleged defaults under any applicable agreement, including executory contracts and unexpired leases, with the Debtors arising from substantive consolidation under the Plan shall be deemed cured as of the Effective Date.

As soon as practicable after the Effective Date, the Liquidation Trustee is authorized to and shall submit an order to the Bankruptcy Court under certification of counsel that is in form and substance acceptable to the U.S. Trustee that closes each of the Chapter 11 Cases except the Chapter 11 Case of RTW Retailwinds, Inc.  The Debtors' consolidated estate shall be administered through RTW Retailwinds Inc.'s Chapter 11 Case.  Once the Plan has been fully administered, the Liquidation Trustee shall file a final report and a motion seeking a final decree in accordance with Local Rule 3022-1.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Rejection of Executory Contracts and Unexpired Leases.*

On the Effective Date, all Executory Contracts and Unexpired Leases shall be deemed rejected as of the Effective Date, unless such Executory Contract or Unexpired Lease: (i) was assumed or rejected previously by the Debtors; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to assume Filed on or before the Effective Date; or (iv) has been assumed and assigned to a purchaser of the Debtors' assets.  Notwithstanding the foregoing sentence, any executory contracts that relate to employee benefits shall be deemed to be automatically rejected as of December 31, 2020.

Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the rejection of such Executory Contracts or Unexpired Leases pursuant to sections 365(a) and 1123 of the Bankruptcy Code with such rejection to be effective as of the times set forth above. Unless otherwise indicated, rejection of Executory Contracts and Unexpired Leases pursuant to the Plan shall be effective as of the Effective Date.

34

B.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases.*

Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within twenty-one (21) days after (a) service of Notice of the Effective Date for all executory contracts other than executory contracts that relate to employee benefits, (b) January 21, 2020 with respect to executory contracts that relate to employee benefits and (c) service of notice of entry of an order of the Bankruptcy Court (other than the Confirmation Order) approving the rejection of a particular Executory Contract or Unexpired Lease on the counterparty thereto.  The Notice of the Effective Date shall indicate that all Executory Contracts and Unexpired Leases that do not fall into one of the four clauses set forth in Article VII.A hereof are deemed rejected as of the Effective Date.  The Notice of Effective Date also shall set forth the deadline for filing Proofs of Claim with respect to the same.  Absent order of the Court to the contrary, any Claims arising from the rejection of an Executory Contract or Unexpired Lease not filed by the applicable deadline will not be considered Allowed and such person or entity shall not be treated as a creditor for purposes of distributions under the Plan.  Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Class 5 of the Plan, which information shall be included in the Notice of the Effective Date.

## ARTICLE VIII
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Settlement, Compromise, and Release of Claims and Interests.*

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, or in any contract, instrument, or other agreement or document created pursuant to or in connection with the Plan, the distributions, rights, and treatment that are provided in the Plan shall, except as expressly provided in the Plan, be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors before the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim or Proof of Interest based upon such debt, right, or Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Subject to the occurrence of the Effective Date,

the Confirmation Order shall be a judicial determination of the settlement, compromise, and release of all Claims and Interests against and in the Debtors.

B.    *Liabilities to, and Rights of, Governmental Units.*

Notwithstanding anything to the contrary in the Plan or the Confirmation Order, nothing in the Confirmation Order or the Plan discharges, releases, precludes, or enjoins: (1) any liability to any Governmental Unit that is not a Claim; (2) any Claim of a Governmental Unit arising after the Effective Date; (3) any police power or regulatory liability to a Governmental Unit that any Entity would be subject to as the owner or operator of any property after the Effective Date; (4) the rights of any Governmental Unit with respect to the transfer or assignment of any license, permit, registration, authorization, or approval, in each case, to the extent provided under applicable law; and/or (5) any liability to a Governmental Unit on the part of any Entity.

C.    *Exculpation.*

**Effective as of the Effective Date, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from, any Exculpated Claim or any obligation, Cause of Action, or liability for any Exculpated Claim; *provided*, *however*, that the foregoing exculpation shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.**

D.    *Release*

1.    **Releases by the Debtors**

**Pursuant to section 1123(b) of the Bankruptcy Code and to the fullest extent authorized by applicable law, and except as otherwise specifically provided in the Plan, including, without limitation the Retained Causes of Action, for good and valuable consideration, the adequacy of which is hereby confirmed, on and after the Effective Date, each Released Party is expressly, unconditionally, generally, and individually and collectively released, acquitted, and discharged by the Debtors and their Estates from any and all actions, claims, obligations, rights, suits, judgments, damages, demands, debts, rights, remedies, Causes of Action, and liabilities of any nature whatsoever, or any other claim against any Released Party, asserted on behalf of the Debtors, whether known or unknown, foreseen or unforeseen, matured or unmatured, fixed or contingent, liquidated or unliquidated, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, that the Debtors or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the purchase, sale or rescission of the purchase or sale of, or any other transaction relating to any Security of the Debtors, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the negotiation and consummation of any sale**

36

of the Debtors' assets during the Chapter 11 Cases, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided*, *however*, that the foregoing releases shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.

2.    **Consensual Third-Party Releases**

**Unless a holder of a Claim or Interest (i) opts out of the Consensual Third-Party Releases, or (ii) files an objection to the Consensual Third-Party Releases in connection with Plan confirmation that is not resolved before confirmation, for good and valuable consideration, the adequacy of which is hereby confirmed, each holder of a Claim or Interest shall be deemed to forever release, waive, and discharge the Released Parties of all claims, obligations suits, judgments, damages, demands, debts, rights, remedies, Causes of Action, and liabilities of any nature whatsoever, whether direct or derivative, known, or unknown, foreseen or unforeseen, matured or unmatured, fixed or contingent, liquidated or unliquidated, existing or hereinafter arising, in law, equity, or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, including, without limitation, any of the foregoing based on or relating to, or in any manner arising from, in whole or in part, the purchase, sale or rescission of the purchase, sale, or any other transaction relating to any Security of the Debtors, the Debtors, the Debtors' restructuring efforts, the Chapter 11 Cases, the Plan, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the negotiation and consummation of any sale of the Debtors' assets during the Chapter 11 Cases, the restructuring of Claims and Interests before or in the Chapter 11 Cases, the negotiation, formulation, or preparation of the Plan or related agreements, instruments or other documents (including, for the avoidance of doubt, providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion), upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided*, *however*, that the foregoing releases shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.**

E.    *Injunction.*

**Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all Entities that have held, hold or may hold any Interest in the Debtors or a Claim, Cause of Action, or other debt or liability against the Debtors or against any**

37

**Released Party that have been released and/or exculpated under the this Plan (the "Released Claims and Interests") are permanently enjoined from taking any of the following actions against the Debtors, the Estates, the Liquidation Trust, the Liquidation Trustee, the Liquidation Trust Assets, or the Released Parties or their respective predecessors, successors and assigns, subsidiaries, Affiliates, current (as of the Effective Date) directors, officers, principals, shareholders, members, partners, employees, agents, members, financial advisors, attorneys, accounts, investment bankers, consultants, representatives, and other Professionals solely in their respective capacities as such or any property of the same, on account of such Released Claims and Interests: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting any right of setoff (other than setoffs exercised prior to the Petition Date or agreed upon in writing by the Liquidation Trustee), or subrogation of any kind against any debt, liability or obligation on account of or in connection with or with respect to any Released Claims or Interests; and (c) commencing or continuing in any manner or in any place, any action that does not comply with or is inconsistent with this provision; *provided*, *however*, that the foregoing injunction shall have no effect on the liability of any person or Entity that results from any act or omission based on or arising out of gross negligence, fraud or willful misconduct.**

     F.     *Term of Injunctions or Stays.*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to section 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and existent on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date. All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**ARTICLE IX
CONDITIONS PRECEDENT TO
CONSUMMATION OF THE PLAN**

     A.     *Conditions Precedent to the Effective Date.*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived:

     1.     the Bankruptcy Court shall have entered the Confirmation Order; *provided* that in accordance with Bankruptcy Rules 3020(e), 6004(h), and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), the Confirmation Order shall not be stayed and shall be effective immediately upon its entry;

     119.     all documents and agreements necessary to implement the Plan, shall have (a) all conditions precedent to the effectiveness of such documents and agreements satisfied or waived

pursuant to the terms of such documents or agreements, (b) been tendered for delivery, and (c) been effected or executed;

120.    the Liquidation Trust Claims Reserve and the Professional Fee Claim Reserve shall have been funded consistent with the terms of the Plan;

121.    the Liquidation Trust Agreement shall have been executed and the Liquidation Trust shall have been funded with the Liquidation Trust Assets; and

122.    all actions, documents, certificates, and agreements necessary to implement this Plan shall have been effected or executed and delivered to the required parties and, to the extent required, Filed with the applicable Governmental Units in accordance with applicable laws.

B.    *Waiver of Conditions.*

The conditions to Consummation set forth in Article IX of the Plan may be waived only by prior written consent of the Debtors upon consultation with the Creditors' Committee, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.  Upon the occurrence of all the conditions to Confirmation and Consummation set forth in Article IX of the Plan, the Debtors shall immediately declare the Effective Date and file the Notice of Effective Date.

C.    *Effect of Failure of Conditions.*

Unless expressly set forth herein, if the Consummation of the Plan does not occur on or before the date that is one hundred and eighty (180) days following the Confirmation Date, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtors, any holders or any other Entity; (2) prejudice in any manner the rights of the Debtors, any holders or any other Entity or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtors, any holder of any Claim or any other Entity in any respect.

## ARTICLE X
## MODIFICATION, REVOCATION OR WITHDRAWAL OF THE PLAN

A.    *Modification and Amendments.*

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan upon consultation with the Committee, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code.  Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their rights, to revoke or withdraw, to alter, amend, or modify the Plan, one or more times, after Confirmation with the consent of the Creditors' Committee, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan, with the consent of the Creditors' Committee.

B.     *Effect of Confirmation on Modifications.*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.     *Revocation or Withdrawal of Plan.*

The Debtors reserve the right, to revoke or withdraw the Plan before the Confirmation Date with the consultation of the Creditors' Committee and to file a subsequent plan.  If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (l) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claim or Interest; (b) prejudice in any manner the rights of the Debtors, any holder of a Claim or Interest, or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors, any holder or any other Entity.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases pursuant to sections 105(a) and 1142 of the Bankruptcy Code; *provided, however*, that nothing herein shall grant the Bankruptcy Court any jurisdiction which it lacked prior to the Effective Date.  The Bankruptcy Court shall retain non-exclusive jurisdiction to hear any other matter not inconsistent with the Bankruptcy Code, including the Causes of Action.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

A.     *Immediate Binding Effect.*

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors and any and all present and former holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors each of respective successors and assigns of the foregoing persons and Entities.

60917/0001-21157183v4

B.      *Additional Documents.*

On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors and all holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Reservation of Rights.*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtors, with respect to the Plan, the Disclosure Statement, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any of their respective rights with respect to the holders of Claims and Interests or each other before the Effective Date.

D.      *Successors and Assigns.*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor, or assign, if any, of such Entity.

E.      *Notices.*

To be effective, all notices, requests, and demands to or upon the Debtors shall be in writing.  Unless otherwise expressly provided herein, notice shall be deemed to have been duly given or made when actually delivered or when received and telephonically confirmed, addressed to the following:

1.      The Debtors:

RTW Retailwinds, Inc,
Attention: Marc Schuback, Sr. Vice President, General Counsel and
              Secretary
Email: MSchuback@retailwinds.com ]

with a mandated copy (which shall not constitute notice) to:

Counsel to Debtors and Debtors in Possession
Cole Schotz P.C.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Attention: Michael D. Sirota, Esq. and Ryan T. Jareck, Esq.

41

Telephone: (201) 489-3000
Facsimile: (201) 489-1536
Email:   msirota@coleschotz.com; rjareck@coleschotz.com

2.    The Liquidation Trustee:

[•]
Attention: [•]
Email: [•]

with a mandated copy (which shall not constitute notice) to:

Counsel to the Liquidation Trustee
[•]
Attention: [•]
Email: [•]

F.    *Entire Agreement.*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

G.    *Exhibits.*

All exhibits and documents included in the Plan are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above, from the Notice, Claims and Balloting Agent's website at https://cases.primeclerk.com/rtwretailwinds, or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.njb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

H.    *Severability of Plan Provisions.*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holdings, alterations or interpretations, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holdings, alterations or interpretations.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid

42

and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtors' consent; and (3) non-severable and mutually dependent.

I.    *Closing of Chapter 11 Cases.*

The Liquidation Trust shall promptly, after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and Local Rule 3022-1 and any applicable order necessary to close the Chapter 11 Cases that have been fully administered.

J.    *No Admission Against Interest.*

Neither the filing of the Plan, the Disclosure Statement, nor any statement contained therein, is or shall be deemed an admission against interest. In the event that this Plan is not consummated, neither this Plan, the Disclosure Statement nor any statement contained therein may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or outside the Bankruptcy Court involving the Debtors.

K.    *No Waiver.*

Except as otherwise specifically provided herein, nothing set forth in this Plan or the Disclosure Statement shall be deemed a waiver or release of any claims, rights or Causes of Action against any Person other than the Debtors.

L.    *Headings.*

The article and section headings used in the Plan are inserted for convenience and reference only and neither constitutes a part of the Plan nor any matter affects the terms, provisions or interpretation of the Plan.

M.    *Conflicts.*

Except as set forth in the Plan, to the extent that any provision of any other document or any exhibits, schedules, appendices, supplements, or amendments of any document referenced in the Plan (the "**Plan Related Documents**") conflict with or are in any way inconsistent with any provision of the Plan, the Plan shall govern and control; *provided* that, with respect to any conflict or inconsistency between the Plan or the Plan Related Documents on the one hand, and the Confirmation Order on the other, the Confirmation Order shall govern.

Dated: September 30, 2020                Respectfully submitted,

                                RTW RETAILWINDS, INC., *et al.*


                                By:  */s/ Robert Shapiro*_____
                                Robert Shapiro, Chief Restructuring Officer

60917/0001-21157183v4