UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**INVESTMENT BANKER FINAL FEE APPLICATION COVER SHEET
FOR THE PERIOD JULY 13, 2020 THROUGH OCTOBER 1, 2020**

In re RTW Retailwinds, Inc., *et al.*,[1]          Applicant: B. RILEY FBR, Inc.

Case No. 20-18445 (JKS)                Client:  Debtors and Debtors in Possession

Chapter 11                                   Cases Filed: July 13, 2020

COMPLETION AND SIGNING OF THIS FORM CONSTITUTES A CERTIFICATION
UNDER PENALTY OF PERJURY PURSUANT TO 28 U.S.C. § 1746.

RETENTION ORDER ATTACHED.

_/s/ Perry Mandarino_          10/9/2020
PERRY MANDARINO                Date

| SECTION I
FEE SUMMARY |
| :---: |

Final Fee Application Covering the Period July 13,
2020 through and including October 1, 2020:[2]

| | |
| :--- | ---: |
| FEE TOTALS | $1,332,203.73 |
| DISBURSEMENTS TOTALS | $400.00 |
| TOTAL FEE APPLICATION | $1,352,603.73 |

| | FEES | EXPENSES |
| :--- | ---: | ---: |
| TOTAL PREVIOUS FEES REQUESTED: | $100,000.00 | $0.00 |
| TOTAL FEES ALLOWED TO DATE: | $0.00 | $0.00 |
| TOTAL RETAINER REMAINING: | $280,000.00 | N/A |
| TOTAL HOLDBACK (IF APPLICABLE): | $20,000.00 | N/A |
| TOTAL RECEIVED BY APPLICANT: | $80,000.00 | $0.00 |

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc. (4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095); Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341); Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936). The Debtors' principal place of business is 330 W. 34th St., 9th Floor, New York, New York 10001.

[2] While the interim period ends on September 30, 2020, the closing on the sale discussed in the final fee application occurred on October 1, 2020.

---

**SECTION II**
**CASE HISTORY**

---

(1)   Date case filed:  July 13, 2020

(2)   Chapter under which case commenced:  Chapter 11

(3)   Date of retention:  August 5, 2020, *nunc pro tunc* to July 13, 2020.  <u>See</u> **Exhibit A**.

   If limit on number of hours or other limitations to retention, set forth: n/a

(4)   Summarize in brief the benefits to the estate and attach supplements as needed:  <u>See</u> narrative portion of fee application.

(5)   Anticipated distribution to creditors:

   (a)   Administration expense: Unknown at this time.

   (b)   Secured creditors: Unknown at this time.

   (c)   Priority creditors: Unknown at this time.

   (d)   General unsecured creditors: Unknown at this time.

(6)   Final disposition of case and percentage of dividend paid to creditors (if applicable): Final dividend percentages are unknown at this time.

55008/0002-21113052v2
60917/0001-21437382v2

**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Stuart Komrower, Esq.
Ryan T. Jareck, Esq.
Matteo Percontino, Esq.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile:  (201) 489-1536
Email: msirota@coleschotz.com
        skomrower@coleschotz.com
        rjareck@coleschotz.com
        mpercontino@coleschotz.com

*Attorneys for Debtors and*
*Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re | Chapter 11 |
| RTW RETAILWINDS, INC., *et al.*, | Case No. 20-18445 (JKS) |
| Debtors.[1] | (Jointly Administered) |

## FIRST INTERIM AND FINAL APPLICATION OF B. RILEY FBR, INC. FOR COMPENSATION OF PROFESSIONAL SERVICES RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES AS INVESTEMENT BANKER TO THE DEBTORS FOR THE PERIOD OF JULY 13, 2020 THROUGH AND <u>INCLUDING OCTOBER 1, 2020</u>

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc. (4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095); Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341); Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936). The Debtors' principal place of business is 330 W. 34th St., 9th Floor, New York, New York 10001.

B. Riley FBR, Inc. ("**B. Riley**"), as investment banker to RTW Retailwinds, Inc. and its subsidiaries as debtors and debtors in possession (the "**Debtors**"), hereby submits this first interim and final application for compensation of professional services rendered and reimbursement of actual and necessary expenses (the "**Application**") pursuant to (i) sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-1 of the Local Rules of the United States Bankruptcy Court District of New Jersey (the "**Local Rules**"), (ii) the Appendix A Guidelines for Reviewing Applications for Compensation Filed Under 11 U.S.C. § 330 in (1) Larger Chapter 11 Cases by Those Seeking Compensation Who Are Not Attorneys, (2) All Chapter 11 Cases Below the Larger Case Thresholds, and (3) Cases Under Other Chapters of the Bankruptcy Code (the "**Guidelines**"), and (iii) this Court's *Administrative Fee Order Establishing Procedures for the Allowance and Payment of Interim Compensation and Reimbursement of Expenses of Professionals Retained by Order of This Court*, dated August 10, 2020 (the "**Interim Compensation Procedures Order**"), for professional services rendered by B. Riley for the period commencing July 13, 2020 through and including October 1, 2020[2] (the "**Compensation Period**"), and for reimbursement of its actual and necessary expenses incurred during the Compensation Period.

By this Application, B. Riley requests for the Compensation Period approval on a final basis of: (a) a gross sale transaction fee of $1,332,203.73, and (b) expenses totaling $400.00 for total fees and expenses in the amount of $1,332,603.73.  In support of this Application, B. Riley respectfully represents as follows:

---

[2] While the interim period ended on September 30, 2020, the closing on the sale discussed below occurred on October 1, 2020.

## BACKGROUND

1.      On July 13, 2020 (the "**Petition Date**"), each of the Debtors commenced with this Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Chapter 11 Cases.  The Debtors' cases are being jointly administered under lead Case No. 20-18445 (JKS) pursuant to Bankruptcy Rule 1015 [Docket No. 65].  On July 24, 2020, the Office of the United States Trustee for the District of New Jersey appointed an Official Committee of Unsecured Creditors (the "**Committee**").  Information regarding the Debtors' business, capital structure, and the circumstances leading to the commencement of these Chapter 11 Cases is set forth in the *Declaration of Robert Shapiro in Support of Debtors' Chapter 11 Petitions and First Day Motions* [Docket No. 25] (the "**First Day Declaration**").

2.      On July 17, 2020, the Debtors filed an application in the United States Bankruptcy Court for the District of New Jersey (the "**Bankruptcy Court**") to retain B. Riley as their investment banker effective as of the Petition Date [Docket No. 78] (the "**B. Riley Retention Application**").  The B. Riley Retention Application attached as Exhibit B the Declaration of Perry Mandarino, which declaration attached as Exhibit 2 the Engagement Letter between the Debtors and B. Riley (the "**Engagement Letter**").  The Engagement Letter sets forth the terms of the compensation structure in connection with a sale of the Debtors' assets.

3.      On August 5, 2020, the Bankruptcy Court entered an Order approving the B. Riley Retention Application [Docket No. 164] (the "**Retention Order**"). A copy of the Retention Order is attached hereto as **Exhibit A**.  B. Riley was retained to assist with the sale of the Debtors' eCommerce assets under Section 363 of the Bankruptcy Code (the "**Sale**") and as

3

more fully described in the Engagement Letter, B Riley is entitled to receive a "Transaction Fee"

upon the successful closing of a sale transaction.

4.        On September 4, 2020, the Bankruptcy Court entered an Order approving the Sale

to Saadia Group, LLC.  *See* Docket No. 319.  On October 1, 2020, the Debtors closed on the Sale

transaction.

5.        The terms and conditions of B. Riley's engagement in these Chapter 11 Cases,

which are further embodied in the B. Riley Retention Application and approved by the

Bankruptcy Court in the Retention Order, are based upon the Engagement Letter, which is

attached hereto as **Exhibit B**.

6.        Pursuant to the terms of the Engagement Letter, B. Riley is entitled to the

following consideration for its services:

(a)        A monthly retainer of $50,000 due and payable on the 17th of each month starting
on April 17, 2020 (the "**Monthly Retainer**");

(b)        A fee calculated in conjunction with a Sale Transaction (the "**Transaction Fee**")
due immediately upon the closing of such Transaction which shall be equal to (i)
if the Sale Transaction Value is less than $20,000,000, 2.0% of the Sale
Transaction Value[3]; or (ii) if the Sale Transaction Value is equal to or greater than
$20,000,001, (a) the greater of (x) 2.0% of the Sale Transaction Value, as the case
may be, and (y) $850,000; or (b) if the Company retains Great American Group as
its sole asset disposition provider, the Transaction Fee becomes the greater of (x)
1.5% of the Sale Transaction Value and (y) $600,000; provided however, that
100% of the Monthly Retainer payments shall be credited against the Transaction
Fee.

7.        In addition, the Engagement Letter entitles B. Riley to receive reimbursement for

actual and reasonable out of pocket expenses.

---

[3] Sale Transaction Value means the total consideration paid to the Company by a buyer which shall include, but shall
not be limited to, the assumption of any liabilities or obligations and the value of any non-cash contributions by the
buyer in the form of reductions in existing service contracts or otherwise.

4

8.      As of the date of this Application, B. Riley has filed monthly fee statements for July 2020 [Docket No. 227] and August 2020 [Docket No. 344] (the "**Monthly Fee Statements**") seeking approval of monthly retainer amounts of $50,000, respectively.  B. Riley did not receive any objections to the Monthly Fee Statements.

9.      By this Application, B. Riley requests final approval of: (a) the Monthly Fee Statements, which fees total $100,000 and are included in the Transaction Fee calculation; (b) the Transaction Fee in the amount of $1,332,203.73;[4] and (c) reimbursement of expenses totaling $400.00 for a total amount of $1,332,603.73.  For the convenience of the Bankruptcy Court and all parties in interest, attached as **Exhibit C** is a summary of categorized expenses, and as **Exhibit D** is a summary of the Transaction Fee calculation.

## INFORMATION REQUIRED BY THE GUIDELINES

### A.      The Scope of the Application

10.      Consistent with the Guidelines, B. Riley discloses the following concerning the scope of the Application:

| | |
|---|---|
| Name of Applicant | B. Riley FBR, Inc. |
| Name of Client | Debtors in Possession |
| Petition Date | July 13, 2020 |
| Retention Date | July 13, 2020; *See* Retention Order |
| Date of Order Approving Employment | August 5, 2020; *See* Retention Order |
| Time Period Covered by Application | July 13, 2020 – October 1, 2020 |
| Terms and Conditions of Employment | *See* B. Riley Retention Application and Engagement Letter at Docket No. 78 which was approved by the Retention Order |

---

[4] B. Riley is in possession of a retainer in the amount of $280,000.  After application of this retainer, a balance of $1,052,203.73 remains for fees, in addition to $400.00 for expenses.

60917/0001-21437382v2

| | |
|---|---|
| Interim / Final | Final application under 11 U.S.C. § 331 |
| Date and Terms of Administrative Fee Order | On August 10, 2020, this Court entered the Interim Compensation Procedures Order.  Pursuant to the Interim Compensation Procedures Order, Professionals, as defined therein, can file monthly fee statements with the Court.  If there are no objections to a monthly fee statement, Professionals are entitled to payment of eighty (80%) percent of the fees and one hundred (100%) percent of the expenses requested in their monthly fee statement.  The Interim Compensation Procedures Order further provides that Professionals may file interim fee applications for allowance of compensation and reimbursement of expenses of the amount sought in their monthly fee statements, including the twenty percent (20%) holdback pursuant to Section 331 of the Bankruptcy Code at four month intervals or such other intervals directed by the Court. |
| 11 U.S.C. § 330 | B. Riley seeks compensation under 11 U.S.C. § 328 and 330. |
| Total Compensation (Fees) Sought this Period | $1,332,203.73 |
| Total Expenses Sought this Period | $400.00 |
| Total compensation approved by interim order to date | $0.00 |
| Total expenses approved by interim order to date | $0.00 |
| Compensation sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $80,000.00 |
| Expenses sought in this application already paid pursuant to a monthly compensation order but not yet allowed | $0.00 |
| If applicable, difference between fees budgeted and compensation sought for this period | N/A |
| Are any rates higher than those approved or disclosed at retention?  If yes, calculate and disclose the total compensation sought in this application using the rates originally disclosed in the retention application | [] Yes                         [] No |
| | N/A |

6

**B.      Summary of Time Keepers and Rate Increases**

11.      Not applicable. B. Riley's fees are calculated on a contingency and/or

commission basis pursuant to the Engagement Letter approved by the Court by the Retention

Order.

**C.      Customary and Comparable Compensation**

12.      B. Riley submits its compensation is customary in the industry.  More

specifically, B. Riley asserts that the fee structure approved by the Bankruptcy Court is market-

based, fair, and reasonable under the standards ser forth in Section 328(a) of the Bankruptcy

Code.  The fee structure reflects B. Riley's commitment to the variable level of time and effort

necessary to perform the services provided, its particular expertise, and the market prices for its

services for engagements of this nature both out of court and in the chapter 11 context.  The

ultimate benefit to the Debtors of B. Riley's services could not be measured merely by reference

to the number of hours expended by B. Riley's professionals in the performance of such services.

Moreover, the fee structure took into consideration B. Riley's anticipation that it would need to

provide substantial commitment in professional time and effort in order to perform its duties and

in light of the fact that such commitment could foreclose other opportunities for B. Riley.

Further, the commitment required of B. Riley to render services to the Debtors varied

substantially from week to week, creating "peak load" issues for the firm.

**D.      Statements from the Applicant**

13.      Consistent with the Guidelines, B. Riley answers the following questions:

| Question | Answer |
|---|---|
| Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? | No |

7

| | |
|---|---|
| If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client? | N/A |
| Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case? | No |
| Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? | No |
| Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? | No |
| Does the fee application includes any rate increases? | No. |

### E.    Budget and Staffing Plan

14.    Not applicable.  B. Riley's fees are calculated on a contingency and/or commission basis pursuant to the Engagement Letter approved by the Court by the Retention Order.

### SUMMARY OF PROFESSIONAL SERVICES RENDERED AND EXPENSES INCURRED

15.    B. Riley seeks allowance of compensation of professional services rendered to the Debtors during the Compensation Period in the amount of $1,332,203.73.  In addition, B. Riley seeks approval for reimbursement of expenses incurred in connection with the rendition of its services in the aggregate amount of $400.00.

16.    As described in more detail below, during the Compensation Period, B. Riley advised the Debtors on a broad range of issues, expended significant time responding to the operational and valuation issues, was intimately involved in all aspects of the ongoing sales of the Debtors' assets, and worked with the Debtors and all interested parties to maximize the value

of the Debtors' estates for the benefit of creditors. In particular, B. Riley expended significant time on the following tasks:

- Assisted in the creation of the management presentation and financial forecast

- Populated the virtual data room

- Conducted widespread marketing efforts of the Debtor's e-commerce and omni-channel operations

- Contacted 168 potential buyers

- Executed 66 NDAs

- Assisted in obtaining an Executed Stalking Horse APA

- Assisted in obtaining an additional qualifying bid

- Facilitated in multiple management presentations and fulfilling diligence requests for interested buyers

- Negotiated indications of interest, enterprise valuation, and bids with prospective buyers

- Held auction for substantially all the assets of the e-commerce business

- Assisted with the closing, including any customary due diligence, and negotiating of closing documents

- Assisted in transition service agreement negotiations

- Provided declarations and expert testimony

- Participated in multiple board meetings

## **RELIEF REQUESTED AND BASIS THEREFOR**

17.      Section 328(a) of the Bankruptcy Code provides that a debtor may employ a professional person under Section 327 of the Bankruptcy Code "on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." *See* 11 U.S.C. § 328.

9

18.     Section 330 of the Bankruptcy Code provides that a court may award a professional employed under Section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual necessary expenses." 11 U.S.C. § 330(a)(1).

19.     The professional services and related expenses that are the subject of this Application were rendered and incurred in connection with these Chapter 11 Cases, and in discharge of B. Riley's professional responsibilities as investment banker for the Debtors.  B. Riley's services have been substantial, necessary, and beneficial to the Debtors' in these Chapter 11 Cases.  B. Riley believes that he fees and expenses requested in the Application are reasonable and necessary and are contemplated by the Bankruptcy Code and the Retention Order. More specifically, B. Riley's services resulted in the going concern sale of the Debtors' E-Commerce business bringing in a total value to the Debtors' estates of approximately $89 million (including assumed liabilities).

20.     Because B. Riley's services benefitted the bankruptcy estates, B. Riley respectfully submits that it performed "actual and necessary" services compensable under Section 330 of the Bankruptcy Code.

21.     Based on the above, B. Riley seeks approval of fees totaling $1,332,203.73 and expenses totaling $400.00 and payment on account of such fees and expenses in the amount of $1,052,603.73, after application of a retainer in the amount of $280,000.00.

60917/0001-21437382v2

WHEREFORE, B. Riley respectfully requests a first interim and final fee allowance as investment banker for the Debtors in the amount of $1,332,203.73, together with reimbursement of expenses in the amount of $400.00, for a total first interim and final fee award of $1,332,603.73.

DATED: October 9, 2020                    Respectfully submitted,

**B. RILEY FBR, INC.**
*Investment Bankers for Debtors*
*and Debtors in Possession*

By:    */s/ Perry Mandarino*
          Perry Mandarino
          Gideon Rosenbaum
          Dominic Riley
          299 Park Avenue
          New York, NY 10171
          Telephone:  (646) 367-2402
          Facsimile:  (310) 966-1448
          Email:  pmandarino@brileyfin.com
                      grosenbaum@brileyfin.com
                      driley@brileyfin.com

**EXHIBIT A**

**(Retention Order)**

60917/0001-21437382v2

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**
**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
Michael D. Sirota, Esq.
msirota@coleschotz.com
Ryan T. Jareck, Esq.
rjareck@coleschotz.com
(201) 489-3000
(201) 489-1536 Facsimile

*Proposed Attorneys for Debtors*
*and Debtors in Possession*

Order Filed on August 5, 2020
by Clerk
U.S. Bankruptcy Court
District of New Jersey

In re:

RTW RETAILWINDS, INC., *et al.,*

Debtors.[1]

Chapter 11

Case No. 20-18445 (JKS)

(Jointly Administered)

## ORDER APPROVING DEBTORS' APPLICATION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 327(a) AND 328 AUTHORIZING THE EMPLOYMENT AND RETENTION OF B. RILEY FBR, INC. AS INVESTMENT BANKER

The relief set forth on the following pages, numbered two (2) through four (4), is hereby

**ORDERED**.

**DATED: August 5, 2020**

_____

Honorable John K. Sherwood
United States Bankruptcy Court

(Page 2)

| | |
|---|---|
| Debtors: | RTW RETAILWINDS, INC., *et al.* |
| Case No. | 20-18445 (JKS) |
| Caption of Order: | ORDER APPROVING DEBTORS' APPLICATION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 327(a) AND 328 AUTHORIZING THE EMPLOYMENT AND RETENTION OF R. RILEY FBR, INC. AS INVESTMENT BANKER |

Upon the application (the "**Application**")[2] of the Debtors for entry of an order, pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, authorizing the Debtors to employ and retain BRFBR as investment banker, effective as of the Petition Date, as more fully set forth in the Application, approving the terms of the Engagement Letter, and waiving certain timekeeping requirements; and upon consideration of the declaration of Perry M. Mandarino (the "**Mandarino Declaration**") and the First Day Declaration; and this Court having jurisdiction to consider the Application pursuant to 28 U.S.C. §§ 157 and 1334; and venue of these Chapter 11 cases and the Application in this district being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this matter being a core proceeding pursuant to 28 U.S.C. § 157(b); and it appearing that this Court may enter a final order consistent with Article III of the United States Constitution; and proper and adequate notice of the Application, the Engagement Letter, the hearing thereon, and opportunity for objection having been given; and this Court being satisfied based on the representations made in the Application and in the Mandarino Declaration that the terms and conditions of BRFBR's employment, including, but not limited to, the fee structure set forth in the Engagement Letter and summarized in the Application and Mandarino Declaration, are reasonable as required by Section 328(a) of the Bankruptcy Code; and this Court finding that BRFBR does not hold or represent interests adverse to the Debtors' estates and is a "disinterested person," as defined in Section 101(14) of the Bankruptcy Code; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and the relief requested

---

[2]     Capitalized terms used, but not otherwise defined, herein have the meaning given to them in the Application.

(Page 3)

| | |
|---|---|
| Debtors: | RTW RETAILWINDS, INC., *et al.* |
| Case No. | 20-18445 (JKS) |
| Caption of Order: | ORDER APPROVING DEBTORS' APPLICATION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 327(a) AND 328 AUTHORIZING THE EMPLOYMENT AND RETENTION OF R. RILEY FBR, INC. AS INVESTMENT BANKER |

in the Application being in the best interests of the Debtors and their estates and creditors; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      The Application is GRANTED as set forth herein.

2.      The Debtors are authorized, pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code, effective as of the Petition Date, to employ and retain BRFBR as their investment banker, and the terms and conditions set forth in the Application and the Engagement Letter are approved.

3.      BRFBR shall be compensated and reimbursed pursuant to Section 328(a) of the Bankruptcy Code in accordance with the terms of the Engagement Letter and this Order.  BRFBR shall file fee applications, as applicable, seeking approval of the payment of its fees and expenses, pursuant to the procedures set forth in the Bankruptcy Code, the Bankruptcy Rules, the local rules, and any other interim compensation order of this Court.  Notwithstanding anything else in this Order, upon the closing of any transaction, any applicable fee due to BRFBR shall be paid.

4.      BRFBR shall be excused from the requirement to maintain or provide time records for services rendered, and providing or conforming to any time cards or schedule of hourly rates.

5.      To the extent that there may be any inconsistency between the terms of the Application, the Mandarino Declaration, the Engagement Letter, and this Order, the terms of this Order shall govern.

6.      The terms and conditions of this Order are immediately effective and enforceable upon its entry.

(Page 4)

| | |
|---|---|
| Debtors: | RTW RETAILWINDS, INC., *et al.* |
| Case No. | 20-18445 (JKS) |
| Caption of Order: | ORDER APPROVING DEBTORS' APPLICATION FOR ENTRY OF AN ORDER UNDER 11 U.S.C. §§ 327(a) AND 328 AUTHORIZING THE EMPLOYMENT AND RETENTION OF R. RILEY FBR, INC. AS INVESTMENT BANKER |

7.      The relief granted herein shall be binding upon any trustee or other successor of the

Debtors.  The relief granted herein shall also be binding in the event the bankruptcy proceeding is

dismissed.

8.      The Debtors are authorized to take all actions necessary to effectuate the relief

granted in this Order.

# EXHIBIT B

## (Engagement Letter)



11100 Santa Monica Blvd., Ste. 800
Los Angeles, CA 90025
Tel: (310) 966-1444  |  Fax: (310) 966-1448
www.brileyfbr.com

Member FINRA/SIPC  |  a B. Riley Financial company

April 16, 2020

_CONFIDENTIAL_

Mr. Sheamus Toal
RTW Retailwinds, Inc.
Executive Vice President, Chief Operating Officer and Chief Financial Officer
330 West 34th Street
New York, NY 10001

Re: Engagement of B. Riley FBR

Dear Mr. Toal:

This will confirm the understanding and agreement (the "Agreement") between **B. Riley FBR, Inc.** ("B. Riley") and **RTW Retailwinds, Inc.** (collectively, the "Company"), as follows:

1)   The Company hereby engages B. Riley on an exclusive basis to provide investment banking services to the Company. B. Riley understands that the Company is considering filing for protection under Chapter 11 of U.S. Bankruptcy Code ("Chapter 11"). B. Riley accepts the engagement and, in that connection, agrees to provide the following services to the extent requested by the Company and appropriate:

a) assist the Company with a Restructuring Transaction (defined herein) and/or Sale Transaction (defined herein), including the preparation of a Confidential Descriptive Memorandum (the "Memorandum") describing the Company and/or the Transaction (defined herein);

b) evaluate from a capital markets and financial perspective alternative structures and strategies for implementing a Restructuring Transaction and/or Sale Transaction;

c) solicit interest for a Restructuring Transaction and/or Sale Transaction with potential strategic and financial buyers and conduct a sale process consistent with market business practices;

d) assist the Company, as requested, with other schedules, analyses, communications, offerings, marketing or other transaction materials relating to a Restructuring Transaction and/or Sale Transaction and the Chapter 11, including interaction with its secured lenders and the official committee of unsecured creditors;

e)  participate in negotiations regarding a Restructuring Transaction and/or Sale Transaction with prospective interested parties;

f)  provide testimony to support the Company's objectives during the Chapter 11 case; and

g)  such other matters as may be agreed to by B. Riley and the Company during the terms of the engagement.

Should the Company file for Chapter 11, it shall file the appropriate pleadings with the Bankruptcy Court to retain B. Riley as its Exclusive Investment Banker no later than ten (10) days after such filing.

2) In connection with B. Riley's engagement, the Company will use commercially reasonable efforts to furnish B. Riley with any information concerning the Company, as reasonably requested by B. Riley, and will use commercially reasonable efforts to provide B. Riley with access to the Company's officers, directors, accountants, counsel and other advisors. The Company agrees and acknowledges that B. Riley may provide certain of its services hereunder through one or more of its affiliates or agents. The Company represents and warrants to B. Riley to the Company's best knowledge that all such information concerning the Company will be true and accurate in all material respects and will not contain any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements therein not misleading in light of the circumstances under which such statements are made. The Company will also represent to B. Riley to the Company's best knowledge that the Memorandum and any other documents related to the Company do not contain, and that the Company has not otherwise made in connection with the offering of the Company, any untrue statement or alleged untrue statement of a material fact or omit to state a material fact required to be stated or necessary to make any statement not misleading. The Company acknowledges and agrees that B. Riley will be using and relying upon such information supplied by the Company and its officers, agents and others and any other available information concerning the Company without any independent investigation or verification thereof or independent appraisal by B. Riley of the Company or its business or assets. B. Riley does not assume responsibility for the accuracy, completeness or reasonableness of any such information. B. Riley shall have the benefit of, and shall be an intended third party beneficiary of, the representations and warranties provided by the Company to a Purchaser(s) in a securities purchase agreement or other definitive agreement entered into in connection with a Transaction (as hereinafter defined).

3)   As compensation for the investment banking services to be rendered by B. Riley hereunder, the Company shall pay B. Riley in cash (all quoted in U.S. Dollars):

a) A monthly retainer of $50,000 due and payable on the 17th of each month starting on April 17, 2020 ("Monthly Retainer");

b)  A fee calculated in conjunction with a Sale Transaction or Restructuring Transaction (the "Transaction Fee") due immediately upon the closing of such Transaction (regardless of whether the party to such Transaction was identified by B. Riley), which shall be equal to: (I) if the Sale Transaction Value or Restructuring Transaction Value is less than $20,000,000, 2.0% of the Sale Transaction Value or Restructuring Transaction Value; or (II) if the Sale Transaction Value or Restructuring Transaction Value is equal to or greater than $20,000,001, (a) the greater of (x) 2.0% of the Sale Transaction Value or Restructuring Transaction Value, as the case may be, and (y) $850,000; or (b) if the Company retains Great American Group as its sole asset disposition provider, the Transaction Fee becomes the greater of (x) 1.5% of the Sale Transaction Value or Restructuring Transaction Value, as the case may be, and (y) $600,000; provided, however, that 100% of the Monthly Retainer payments shall be creditable against the Transaction Fee; provided, further, however, it being understood among the parties that under no circumstances is B. Riley entitled to a Transaction Fee for both a Sale Transaction and Restructuring Transaction; provided, further, however, that if the Company pursues a complete liquidation of its assets (e.g., inventory and eCommerce business), then B. Riley is only entitled to the Monthly Retainers and shall not be entitled to a Transaction Fee;

c) If a Transaction closes any time during the period of 12 months following the effective date of termination of B. Riley's engagement hereunder (the "Tail Period"), then the Company shall pay to B. Riley the Transaction Fee at the closing of the Transaction in an amount equal to the Transaction Fee that would otherwise have been paid to B. Riley with respect to such Transaction, irrespective of whether B. Riley closes such Transaction; and

d) The Company shall reimburse B. Riley for its reasonable and documented out-of-pocket and incidental expenses incurred during the Term, including without limitation reasonable and documented fees of outside legal counsel, provided that such expenses shall not exceed $2,500 per

occurrence without the Company's prior consent.  All fees and retainers due or payable are not refundable.

4) The following definitions shall apply:

"Transaction" shall mean a Restructuring Transaction or Sale Transaction.

"Restructuring Transaction" shall mean and include any transaction or series of related transactions whereby, directly or indirectly and whether acting alone or with one or more other parties the Company effects any restructuring, reorganization, rescheduling, assumption, recapitalization, reduction, cancellation, elimination, retirement, purchase, repurchase and/or modification or amendment of a significant portion of the Company's debt securities and/or other indebtedness, obligations, or liabilities (including, without limitation, unfunded pension and retiree medical liabilities, lease obligations, trade credit facilities, contract or tort obligations, joint venture interests and/or partnership interests), preferred stock, common stock and/or hybrid securities, hover such result is achieved, including without limitation through any one or a combination of the following: (i) a Plan confirmed in connection with a Bankruptcy Case and/or (ii) an exchange or tender offer, a consent solicitation, a solicitation of waivers, acceptances or authorizations, covenant relief, the rescheduling of debt maturities, a change in interest rates, the settlement or forgiveness of debt, the conversion of debt into equity, other amendments to the terms, conditions or covenants of the Company's debt instruments; provided, that a stand-alone forbearance, amendment, waiver or other relief that lasts for a period of six months or less shall not qualify under this paragraph.

"Restructuring Transaction Value" shall mean, with respect to a Restructuring Transaction, the gross amount of the Company's debt securities and/or other indebtedness, obligations, or liabilities being affected or assumed.

"Sale Transaction" means a transaction whereby, directly or indirectly, control of or a material interest in the Company or any of its businesses, or a material amount of any of their respective assets, is transferred, exchanged, sold or licensed, including without limitation, in connection with a merger or consolidation, business combination, a tender or exchange offer, option, recapitalization, a leveraged or management buy-out, joint venture or partnership. For the avoidance of doubt, a Sale Transaction does not include a Restructuring Transaction. Further, for the avoidance of doubt, a Sale Transaction does not include a complete liquidation of the Company's assets.

"Sale Transaction Value" shall mean, with respect to a Sale Transaction, the total consideration paid to the Company (and/or its shareholders) by a buyer which shall include, but not be limited to, the assumption of any liabilities or obligations and the value of any non-cash contributions by the buyer in the form of reductions in existing service contracts or otherwise.

5) B. Riley is acting as an independent contractor under this Agreement, and not in any other capacity including, without limitation, as a fiduciary, and any duties arising out of its engagement shall be owed solely to the Company.  Except as set forth in Schedule 1, nothing in this Agreement is intended to confer on any other person (including, without limitation, stockholders, employees or creditors of the Company) any rights or remedies hereunder or by reason hereof. The Company agrees that any information or documentation provided to Company by B. Riley, and any analyses based upon such information and documentation, is owned exclusively by B. Riley. This Agreement shall not be deemed to transfer any ownership rights in such information and/or documentation to the Company, including but not limited to intellectual property rights, nor shall any license, express or implied, be granted to the Company under this Agreement.

6) The Company agrees to the indemnification and other agreements set forth on Schedule 1 hereto, which is hereby incorporated by reference.

7) The Company agrees that during the Term, it will not contact or solicit acquirors, institutions or other entities with respect to a potential Transaction without B. Riley's knowledge.  The Company will also use commercially reasonable efforts to promptly inform B. Riley of any discussions it has or of any inquiry it may receive concerning a potential Transaction.

8) During the Term and the Tail Period, neither the Company nor any of its affiliates shall circumvent B. Riley to avoid paying the Transaction Fee due hereunder.

9) The term (the "Term") of B. Riley's engagement hereunder shall extend from the date hereof until April 30, 2021; provided, however, this Agreement may be terminated at any time by either party during the Term upon 10 days' prior written notice of termination to the other party; provided that once the Company has entered into definitive agreements with respect to any Transaction, the Term shall extend until the earlier of (a) the closing or (b) the termination of such Transaction. Notwithstanding the foregoing, B. Riley shall be entitled to payment of the fees and expenses payable pursuant to Section 3 (in accordance with the terms thereof) and all of the provisions of this Agreement (including, without limitation, Schedule 1 hereto) other than Sections 1 and 2 shall survive any expiration or termination of the Term.

10) The Company acknowledges that B. Riley is a full service securities firm engaged, either directly or through its affiliates, in various activities, including securities trading, corporate finance, investment management and brokerage activities.  In the ordinary course of these activities, B. Riley and its affiliates may actively trade in the debt and equity securities (or related derivative securities) of other companies which may be the subject of the engagement contemplated by this Agreement for their own account and for the accounts of their customers and may at any time hold long and short positions in such securities, subject to any restrictions under applicable securities laws when B. Riley or any of its affiliates are in possession of material nonpublic information involving the Company. B. Riley and its affiliates may have and may continue to have investment banking, broker-dealer and other relationships with parties outside of this engagement pursuant to which B. Riley may acquire information of interest to the Company.  B. Riley shall have no obligation to disclose such information to the Company or to use such information in connection with its efforts hereunder.

11) The Company agrees that B. Riley will have the right to use the Company's name, trademark and logo for the purposes of announcements, press releases and advertisements related to the completion of the transactions contemplated herein.

12)  The Company represents and warrants to B. Riley that there are no brokers, representatives or other persons which have an interest in compensation due to B. Riley from any transaction contemplated herein or that any other agreements of like nature are in force or conflict with this Agreement. Each party to this Agreement acknowledges that no representations, inducements, or agreements, orally or otherwise, have been made by any party, or anyone acting on behalf of any party, which are not embodied herein, and that this Agreement (including the schedules and attachments hereto) embodies the entire agreement and understanding between the parties hereto and supersedes all prior agreements and understandings relating to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, that provision will be deemed modified or, if necessary, rescinded in order to be valid and enforceable.  All other provisions of this Agreement will continue and remain in full force and effect.

13) The benefits of this Agreement shall, together with Schedule 1 hereto, inure to the benefit of respective successors and assigns of the parties hereto and of the Indemnified Persons (as defined in Schedule 1) hereunder and their successors and assigns and representatives, and the obligations and liabilities assumed in this Agreement by the parties hereto shall be binding upon their respective successors and assigns; provided that the Company may not assign this Agreement without the prior written consent of B. Riley.

14)  The Company represents to B. Riley that it has not taken, and agrees that it will not take, any action, directly or indirectly, so as to cause the Transaction to fail to be entitled to any applicable exemption from registration afforded by the Securities Act of 1933, as amended (the "Act") and the rules and regulations promulgated thereunder. In effecting the Transactions, the Company agrees to comply in all material respects with applicable provisions of the Act, the rules and regulations promulgated thereunder and any applicable state laws and requirements, as well as any federal, state or foreign judicial decisions or opinions related thereto.

15) IN NO EVENT SHALL B. RILEY, OR ANY OTHER AGENT, AFFILIATE, OR CONTRACTOR OF B. RILEY, BE LIABLE TO THE COMPANY FOR ANY INCIDENTAL, INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES (I.E., LOST PROFITS) ARISING OUT OF, OR IN CONNECTION WITH, THIS AGREEMENT, WHETHER OR NOT SUCH PARTY WAS ADVISED OF THE POSSIBILITY OF SUCH DAMAGE, PROVIDED THAT SUCH DAMAGE DID NOT RESULT FROM THE ACTUAL FRAUD, WILLFUL MISCONDUCT OR GROSS NEGLIGENCE BY B. RILEY. THE COMPANY FURTHER AGREES THAT THE LIABILITY LIMIT OF B. RILEY AND ITS AFFILIATES, AGENTS, OR CONTRACTORS SHALL IN NO EVENT BE GREATER THAN THE AGGREGATE DOLLAR AMOUNT WHICH THE COMPANY PAID DURING THE TERM, INCLUDING ANY REASONABLE ATTORNEYS' FEES AND COURT COSTS.

16) This Agreement, all aspects of the relationship created by this engagement and any other agreements relating to the engagement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and to be performed therein and, in connection therewith, the parties hereto consent to the exclusive jurisdiction of the Supreme Court of the State of New York sitting in New York County or the United States District Court for the Southern District of New York sitting in New York County and agrees to venue in such courts.  Notwithstanding the foregoing, solely for purposes of enforcing the Company's obligations under Schedule I hereto, the Company consents to personal jurisdiction, service and venue in any court proceeding in which any claim relating to or arising out of this engagement is brought by or against any Indemnified Person.  B. RILEY AND THE COMPANY EACH HEREBY AGREES TO WAIVE ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM, COUNTERCLAIM OR ACTION ARISING OUT OF OR RELATING TO THIS ENGAGEMENT.

17) All notices, demand or other communications given hereunder shall be in writing and shall be deemed to have been duly given when delivered in person, upon oral or written acknowledgment of receipt thereof when transmitted by facsimile transmission, on the business day after being sent by nationally recognized overnight courier service,  or on the third calendar day after being mailed by United States registered or certified mail, return receipt requested, postage prepaid, to the addresses herein above first mentioned or to such other addresses as any party hereto shall designate to the other for such purpose. For the avoidance of doubt, e-mail shall not be an accepted means of providing any notice to the other party required hereunder.

18) B. Riley is not, in any manner, providing legal services or legal advice to the Company. Furthermore, the Company agrees and acknowledges that B. Riley is not an advisor as to tax, accounting or regulatory matters in any jurisdiction.

19) The Company represents that it is a sophisticated business enterprise that has retained B. Riley for the limited purposes set forth in this Agreement, and the parties acknowledge and agree that their respective rights and obligations are contractual in nature. Each party disclaims any intention to impose fiduciary obligations on the other by virtue of the engagement contemplated by this Agreement.

20) If necessary, the Company agrees to provide B. Riley with information and supporting documentation to enable B. Riley to comply with the requirements under Title III of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (the "USA Patriot Act") (Public Law 107-56).

21) The prevailing party in any dispute relating to or arising from this Agreement shall have the right to collect from the other party its reasonable costs and attorneys' fees.

22) This Agreement may be executed in counterparts, each of which shall be deemed an original, but which together shall be considered a single instrument.  Facsimile and .pdf signatures to this Agreement shall be acceptable and binding.

[Remainder of page intentionally left blank; signature page follows]

B. Riley is delighted to accept this engagement and looks forward to working with you. Please confirm that the foregoing correctly sets forth our agreement by signing this letter in the space provided, whereupon this letter shall be a binding agreement as of the date first above written.

**B. RILEY FBR, INC.**

By:_____

Name: Perry M. Mandarino
Title: Senior Managing Director

AGREED:

**RTW Retailwinds, Inc.**

By:_____
Name: Sheamus Toal
Title: Executive Vice President, Chief Operating Officer and Chief Financial Officer

60917/0001-20239566v3

**Schedule 1**

In connection with the Agreement, the Company hereby agrees to indemnify and hold harmless B. Riley, its affiliates, and B. Riley's and its affiliates' respective directors, officers, members, managers, controlling persons (within the meaning of Section 15 of the Securities Act of 1933, as amended, or Section 20(a) of the Securities Exchange Act of 1934, as amended), agents, employees, consultants, successors and assigns (collectively, "Indemnified Persons" and individually, an "Indemnified Person") from and against any and all claims, liabilities, losses, damages and expenses incurred by any Indemnified Person (including fees and disbursements of counsel) which: (A) are related to or arise out of (i) actions taken or omitted to be taken (including any untrue statements made or any statement omitted to be made) by the Company or (ii) actions taken or omitted to be taken by an Indemnified Person with the Company's consent or in conformity with the Company's instructions or the Company's actions or omissions or (B) are otherwise related to or arise out of B. Riley's engagement, and will reimburse B. Riley and any other Indemnified Person for all reasonable and documented costs and expenses, including the reasonable and documented fees of B. Riley or an Indemnified Person's counsel, as they are incurred, in connection with investigating, preparing for, or defending any action, formal or informal claim, investigation, inquiry or proceeding, whether or not in connection with pending or threatened litigation, whether or not caused by or arising out of or in connection with B. Riley acting pursuant to the engagement, whether or not B. Riley or any Indemnified Person is named as a party thereto and whether or not any liability results therefrom.  The Company will not, subject to the following paragraph, be responsible for any claims, liabilities, losses, damages, or expenses pursuant to the preceding sentence which are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily from B. Riley's and/or the applicable Indemnified Party's actual fraud, bad faith, gross negligence, or willful misconduct.  Notwithstanding anything in the Agreement to the contrary, an Indemnified Person may elect to non-exclusively assert an indemnification claim in a court of competent jurisdiction.

The Company also agrees that neither B. Riley nor any other Indemnified Person shall have any liability in connection with such engagement except for any such liability for claims, liabilities, losses, damages, or expenses incurred by the Company which are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted primarily from B. Riley's and/or the applicable Indemnified Party's actual fraud, bad faith, gross negligence, or willful misconduct, but in no event shall B. Riley nor any other Indemnified Person be liable, in the aggregate, to the Company or any other person for an amount greater than the fees actually received by B. Riley pursuant to the engagement.  The Company further agrees that the Company will not, without the prior written consent of B. Riley (which consent shall not be unreasonably withheld), settle or compromise or consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in respect to which indemnification may be sought hereunder (whether or not B. Riley or any Indemnified Person is an actual or potential party to such claim, action, suit or proceeding) unless such settlement, compromise or consent includes an unconditional release of B. Riley and each other Indemnified Person hereunder from all liability arising out of such claim, action, suit or proceeding.

In order to provide for just and equitable contribution, if a claim for indemnification is made pursuant to these provisions but is found in a final judgment by a court of competent jurisdiction (not subject to further appeal) that such indemnification is not available for any reason, even though the express provisions hereof provide for indemnification in such case, then the Company, on the one hand, and B. Riley, on the other hand, shall contribute to such claim, liability, loss, damage or expense for which such indemnification or reimbursement is held unavailable in such proportion as is appropriate to reflect the relative benefits of the Company, on the one hand, and B. Riley on the other hand, in connection with the transactions contemplated by the engagement, subject to the limitation that in any event B. Riley's aggregate contribution to all losses claims, damages, liabilities and expenses to which contribution is available hereunder shall not exceed the amount of fees actually received by B. Riley pursuant to the engagement.

If multiple claims are brought with respect to at least one of which indemnification is permitted under applicable law and provided for under this Agreement, the Company agrees that any judgment or arbitration award shall be conclusively deemed to be based on claims as to which indemnification is permitted and provided for, except to the extent the judgment or arbitration award expressly states that it, or any portion thereof, is based solely on a claim as to which indemnification is not available.

The foregoing right to indemnity and contribution shall be in addition to any rights that B. Riley and/or any other Indemnified Person may have at common law or otherwise and shall remain in full force and effect following the completion or any termination of B. Riley's engagement.

In the event that an Indemnified Person is requested or required to appear as a witness in any action brought by or on behalf of or against the Company in which such Indemnified Person is not named as a defendant, the Company agrees to promptly reimburse B. Riley on a monthly basis for all reasonable and documented expenses incurred by it in connection with such Indemnified Person's appearing and preparing to appear as such a witness, including, without limitation, the reasonable and documented fees and disbursements of its legal counsel.  In addition to any reimbursed fees, expenses or costs outlined hereunder, B. Riley shall also receive from the Company cash compensation of $1,000.00 per person, per day, plus reasonable and documented out-of-pocket expenses and costs should B. Riley be required to provide testimony in any formal or informal proceeding regarding the Company.

It is understood that, in connection with B. Riley's engagement, B. Riley may also be engaged to act for the Company in one or more additional capacities, and that the terms of this engagement or any such additional engagement may be embodied in one or separate written agreements.  This indemnification shall apply to said engagement, any such additional engagement(s) (whether written or oral) and any modification of said engagement or such additional engagement(s) and shall remain in full force and effect following the completion or termination of said engagement or such additional engagements.

**EXHIBIT C**

| Expense Reimbursement Summary |
|---|

| Expenses | Amount |
|---|---|
| Securedocs (Virtual Dataroom Provider ("VDR")) | $400.00 |
| **TOTALS** | **$400.00** |

## **EXHIBIT D**

**(Transaction Fee Calculation Summary)**

| Fee Calculation | $ |
|---|---|
| A | **Purchase Price** | **$41,251,749.56** |
| | | |
| B | **Expense Reimbursement** | **$15,244,268.57** |
| | | |
| A+B | **Total Equity Consideration** | **$56,496,018.13** |
| | | |
| C | **Total Assumed Liabilities** | **$32,317,563.92** |
| | | |
| A+B+C | **Total Consideration** | **$88,813,582.04** |

| III. | BRFBR Fee | |
|---|---|---|
| | Total Consideration | $88,813,582.04 |
| | BRFBR Success Fee % | 1.50% |
| | **BRFBR Fee** | **$1,332,203.73** |
| | (-) Accumulated Retainer | 280,000.00 |
| | **BRFBR Success Fee less Retainer** | **$1,052,203.73** |
| | Expenses | 400.00 |
| | **Total** | **$1,052,603.73** |