UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
Alan S. Maza
New York Regional Office
Brookfield Place, 200 Vesey St., Suite 400
New York, New York 10281
Phone: (212) 336-1100
Fax: (212) 336-1345
Email: Mazaa@sec.gov

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| In re | Chapter 11 Case No. 20-18445 (JKS) |
| RTW RETAILWINDS, INC., et al., | Jointly Administered |
| Debtors. | Objection Deadline: October 21, 2020<br>Hearing Date: October 28, 2020 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**LIMITED OBJECTION OF THE U. S. SECURITIES AND EXCHANGE
COMMISSION TO APPROVAL OF THE DISCLOSURE STATEMENT
AND CONFIRMATION OF THE DEBTORS'
<u>JOINT PLAN OF LIQUIDATION</u>**

The U.S. Securities and Exchange Commission ("SEC" or "Commission"), a statutory party to these proceedings,[1] and the federal agency responsible for enforcement of the federal securities laws, objects to approval of the Disclosure Statement ("Disclosure Statement") and confirmation of the Chapter 11 Joint Plan of Liquidation ("Plan") of RTW Retailwinds, Inc. and its affiliated debtors (collectively, "RTW" or the "Debtors"), filed September 30, 2020.  In support of its limited objection, the SEC respectfully states as follows:[2]

---

[1] As a statutory party in corporate reorganization proceedings, the Commission "may raise and may appear and be heard on any issue[.]"  11 U.S.C. § 1109(a).

[2] Unless separately defined herein, capitalized terms have the meanings ascribed to them in the Plan.

1

# **INTRODUCTION**

As a general matter, nondebtor third party releases contravene Section 524(e) of the Bankruptcy Code, which provides that only debts of the debtor are affected by the Chapter 11 discharge provisions. Such releases have special significance for public investors because they enable nondebtors to benefit from a debtor's bankruptcy by obtaining their own releases with respect to past misconduct, including violations of the federal securities laws or breaches of fiduciary duty under state law. This concern is implicated here, where the Debtors are seeking to bar public shareholders and holders of subordinated claims from asserting claims against the released parties.

While such releases may be allowed in the Third Circuit in "extraordinary cases," no extraordinary facts are present here. *Gillman v. Continental Airlines (In re Continental Airlines),* 203 F.3d 203, 212 (3d Cir. 2000). In the absence of such extraordinary circumstances, courts in this Circuit have held that third party releases of non-debtors may be allowed if they are consensual. *See In re Emerge Energy Servs. LP*, No. 19-11563 (KBO), 2019 Bankr. LEXIS 3717, at *53 (Bankr. D. Del. Dec. 5, 2019); *In re Washington Mutual, Inc.*, 442 B.R. 314, 352 (Bankr. D. Del. 2011); *In re Zenith Electronics Corp.*, 241 B.R. 92, 111 (Bankr. D. Del. 1999)); *see also In re Arrowmill Dev. Corp.*, 211 B.R. 497, 506-07 (Bankr. D.N.J. 1997) (court held that debtors must give creditors and interest holders an opportunity to individually consent to the release, apart from voting on the plan).

Although the Debtors may claim that the inclusion of an opt-out provision renders the releases consensual with respect to public shareholders and holders of

subordinated claims, their silence does not constitute "consent" to third party releases in our view. Here, the nonconsensual character of the releases is especially troubling because: (i) they apply to investors who are not receiving any consideration and are not entitled to vote on the Plan; and (ii) the Debtors are liquidating so there could be no assertion that the releases are necessary for an effective reorganization.

In addition, under the Supreme Court's ruling in *Stern v. Marshall,*[3] the Bankruptcy Court lacks jurisdiction to approve non-consensual third party releases that involve state law claims between non-debtors.

## BACKGROUND

The Debtors are a specialty women's retailer operating through retail stores and online sales platforms. (Discl. St. at 13) On July 13, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in this Court. Prior to RTW's bankruptcy filing, its stock traded on the NYSE until it was delisted on July 6, 2020. (Discl. St. at 14) Since July 7, 2020, the stock has been quoted on the OTC Pink marketplace under the ticker RTWI. (Id.)

As of the Petition Date, the Debtors had approximately $20 million in outstanding borrowings under their ABL facility and Letters of Credit and at least $200 million of unsecured trade debt. (Discl. St. at 16)

On September 30, 2020, the Debtors filed the Plan and Disclosure Statement. The Plan provides for the liquidation of the Debtors through the sale of assets, including its physical stores and ecommerce platforms, and distribution of sale proceeds to unsecured creditors on a pro rata basis through a liquidation trust. (Disc.

---

[3] *Stern v. Marshall,* 564 U.S. 462 (2011).

St. at 26) RTW's public shareholders (Class 8) and holders of Subordinated Claims[4] (Class 7) are deemed to reject the Plan and will not receive any distribution. (Id.)

The Third Party Releases (the "Releases") provide releases in favor of: (a) the Debtors; (b) the Creditors' Committee; (c) the members of the Creditors' Committee (but only in their capacity as such); (d) the Prepetition Credit Parties and (e) with respect to each of the foregoing in clauses (a) through (d) such Person's or Entity's predecessors, successors and assigns, current and former Affiliates, subsidiaries, beneficial owners, current or former officers, directors, managers, principals, shareholders, direct and indirect equity holders, general partners, limited partners, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, and other professionals, in their capacity as such. (Plan at 9-10). The Releases are for any and all claims and causes of action and a wide range of other obligations, but exclude claims arising from gross negligence, fraud, or willful misconduct. (Plan at 37)

The Releases appear to bind all holders of claims and interests, including public shareholders and holders of Subordinated Claims, who do not affirmatively opt out of, or fail to file a confirmation objection to, the Releases. (Id.)

---

[4] "Subordinated Claim" is defined in the Plan to mean "any Claim that is subordinated, pursuant to section 510(b) of the Bankruptcy Code or otherwise, including any Claims arising from rescission of a purchase or sale of a Security of any Debtor or an Affiliate of any Debtor, which Security is not an Interest, for damages arising from the purchase or sale of such a Security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such a Claim." (Plan at 10)

# DISCUSSION

### I. The Releases are not consensual and do not satisfy the standard to be approved as nonconsensual releases.

A. The Releases are not consensual.

The Releases here are not consensual because the Plan deems consent to the Releases to be established based on silence or a failure to opt out. In the SEC's view, all shareholders and holders of Subordinated Claims should be required to affirmatively *opt in* to the Releases in order to be bound by them. *See In re Emerge Energy Servs. LP*, No. 19-11563 (KBO), 2019 Bankr. LEXIS 3717, at *54 (Bankr. D. Del. Dec. 5, 2019) ("the Court cannot on the record before it find that the failure of a creditor or equity holder to return a ballot or Opt-Out Form manifested their intent to provide a release. **Carelessness, inattentiveness, or mistake are three reasonable alternative explanations**") (emphasis added); *Washington Mutual*, 442 B.R. at 355 ("[f]ailing to return a ballot is not a sufficient manifestation of consent to a third party release"); *In re Exide Techs.*, 303 B.R. 48, 74 (Bankr. D. Del. 2003) (court found nondebtor releases consensual and binding only on creditors and interest holders voting to accept the plan); *cf. In re Spansion, Inc.*, 426 B.R. 114, 144-45 (Bankr. D. Del. 2010) (court found releases consensual only with respect to parties voting to accept the Plan, and unimpaired creditors deemed to have accepted the Plan). Thus, simply failing to return an opt-out form or abstaining from voting or voting to reject a plan but failing to opt out of the releases does not constitute "consent." *But see In re Indianapolis Downs*, LLC, 486 B.R. 286, 306 (Bankr. D. Del. 2013) (in nonpublic company case that sets forth the minority view among published opinions in this district, nondebtor releases deemed consensual with respect to both impaired creditors

5

who abstained from voting on the Plan, and those who voted to reject the plan and did not otherwise opt out of the releases).

"Courts generally apply contract principles in deciding whether a creditor consents to a third party release." *In re SunEdison, Inc.,* 576 B.R. 453, 458 (Bankr. S.D.N.Y. 2017)*, citing Washington Mutual, Inc.*, 442 B.R. at 352; *Emerge Energy*, 2019 Bankr. LEXIS 3717 at *53-54.

The Court in *Emerge Energy* enumerated the basic contract principles under which consent to the Release may be implied from silence:

> For the Court to infer consent from the nonresponsive creditors and equity holders, the Debtors must show under basic contract principles that the Court may construe silence as acceptance because (1) the creditors and equity holders accepted a benefit knowing that the Debtors, as offerors, expected compensation; (2) the Debtors gave the creditors and equity holders reason to understand that assent may be manifested by silence or inaction, and the creditors and equity holders remained silent and inactive intending to accept the offer; or (3) acceptance by the creditors and equity holders can be presumed due to previous dealings between the parties.

*Emerge Energy*, 2019 Bankr. LEXIS at **53-54.

None of the situations enumerated above apply here. The Debtors cannot rely on the silence of RTW's public shareholders and holders of Subordinated Claims, who are receiving no consideration, as a manifestation of their acceptance of the Releases. Indeed, there can be no contractual consent by silence because the Debtors are not offering anything of benefit to these parties. Rather, they are extinguishing a right these investors may have against non-debtor third parties unless they affirmatively object by submitting an opt-out form or file a formal objection with the bankruptcy court. This is a particularly onerous requirement to place on public investors, many of whom must rely on broker-dealer intermediaries to deliver the

appropriate forms and instructions to them.[5] Instead, only those investors who demonstrate an intent to be bound by the Releases through an *opt-in* should be deemed to consent to the Releases.

> B. The Non-Debtor Releases do not satisfy the standard to be approved as nonconsensual because they are not: (i) fair to the releasing parties; (ii) necessary to the reorganization; and (iii) supported by the facts of this case.

The Debtors cannot show that the Releases are "consensual," nor can they justify the imposition of the Releases on a non-consensual basis. The Third Circuit has indicated that allowing non-consensual non-debtor releases is an "extraordinary remedy" that should be used only sparingly. *See In re Continental Airlines*, 203 F.3d 203, 217 (3rd Cir. 2000).[6] The hallmarks of permissible non-consensual non-debtor releases include: (i) fairness, particularly whether the release was given in exchange for fair consideration, beyond what the class was entitled to as creditors under the plan; (ii) necessity to the reorganization; and (iii) specific factual findings to support

---

[5] RTW's shares continue to trade and, as a result, a buyer who purchases shares after the notice of non-voting status was distributed would not automatically receive that notice. The buyer would have to contact the broker-dealer to request the relevant forms. But such shareholder could nonetheless be bound by the Releases, which apply to conduct up to the Effective Date of the Plan (which will occur after plan confirmation). *See In re Hexcel Corp.,* 239 B.R. 564, 566 (N.D. Cal. 1999) (potential claimants must be given notice that their interests may be affected by the bankruptcy proceeding).

6 In *Continental Airlines*, the Third Circuit rejected a plan provision that released and permanently enjoined shareholder lawsuits against present and former officers and directors who were not in bankruptcy. The court held that the release and injunctive provisions fell squarely into the Section 524(e) prohibition because they amounted to nothing more than a lockstep discharge of nondebtor liability. The Court held open the possibility that "there are circumstances under which [it] might validate a nonconsensual release that is both necessary and given in exchange for fair consideration," Id. at 214, n.11, but made this comment in light of releases and permanent injunctions issued in such extraordinary cases as *Robins, Manville, and Drexel*; *See Menard-Sanford v. Mabey* (In re A.H. Robins Co.), 880 F.2d 694 (4th Cir. 1989); *MacArthur Co. v. Johns-Manville Corp.* (In re Johns-Manville Corp.), 837 F.2d 89 (2d Cir.1988); *Drexel Burnham Lambert Trading Corp. v. Drexel Burnham Lambert Group, Inc.* (In re Drexel Burnham Lambert Group, Inc.), 960 F.2d 285 (2d Cir. 1992); *see also Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (In re Metromedia Fiber Network, Inc.), 416 F.3d 136, 143 (2d. Cir. 2005) (the Second Circuit held a "nondebtor release in a plan of reorganization should not be approved absent the finding that truly unusual circumstances render the release terms important to the success of the plan. . . .").

these conclusions. *Id.* at 214-15. Specifically, courts in this circuit have considered the following factors in determining whether a non-consensual release satisfies the "hallmarks" discussed in *Continental*: "(i) the non-consensual release is necessary to the success of the reorganization; (ii) the releasees have provided a critical financial contribution to the debtor's plan; (iii) the releasees' financial contribution is necessary to make the plan feasible; and (iv) the release is fair to the non-consenting creditors, i.e., whether the non-consenting creditors received reasonable compensation in exchange for the release." *In re Spansion, Inc.*, 426 B.R. 114, 144-145 (Bankr. D. Del. 2010).

Here, the Debtors have not argued that the Releases can be imposed without consent. In any event, such an argument would lack merit because there is no factual basis to support the necessity of the Releases to the reorganization, particularly here where the Plan proposes a liquidation. Specifically, when applying the *Continental* factors to the facts of this case, it is clear that the Releases contravene Bankruptcy Code Section 524(e) and applicable Third Circuit law. There is no evidence that fair consideration was provided specifically in exchange for the release of claims against nondebtors or that all of the nondebtor parties being released made contributions to the Plan. Indeed, the "Released Party" definition includes not only the enumerated parties, but also, among others, those parties' current and former officers and directors and entities, as well as former predecessors, successors, affiliates and others who may not have contributed anything to the Plan or the restructuring process. There has not been an adequate showing that all of the numerous parties being released have provided a critical financial contribution, or that the Releases are fair to

8

RTW's shareholders and subordinated claimants who, under any scenario, will receive nothing under the Plan.

### II. The Court lacks jurisdiction to approve the Releases.

Bankruptcy courts are courts of limited jurisdiction. While the Releases appear to be limited to claims relating to the Debtors, that nexus alone is insufficient to grant the court the constitutional authority to approve the Releases under the Supreme Court's holding in *Stern v. Marshall,* 564 U.S. 462 (2011).

In *Stern*, the Supreme Court held that Article III of the Constitution requires that bankruptcy courts enter final judgments only on claims that "stem from the bankruptcy itself or would necessarily be resolved in the claims allowance process"; otherwise, the bankruptcy court must submit proposed findings to the district court. *Stern*, 564 U.S. at 499. Therefore, to the extent that the jurisdictional statute permits a bankruptcy court to enter final judgment as to a claim that falls outside this boundary, the statute is unconstitutional as applied. *Id*. at 482. Here, the non-debtor claims purported to be released neither stem from the bankruptcy itself nor have any connection to the claims allowance process.

In applying *Stern* to nonconsensual third party releases, the Third Circuit recently held that such releases could be approved by a bankruptcy court where the releases were "integral to the restructuring of the debtor-creditor relationship." *In re Millennium Lab Holdings II, LLC*, 945 F.3d 126, 137 (3d Cir. 2019). The Third Circuit held that the releases in that case were integral because, without the releases, the released parties would not have made contributions under the plan that were necessary to the feasibility of the plan and without which the "Debtors would likely have shut down." *Id.* Here, there can be no argument that the Releases granted to numerous non-debtors with tenuous relationships to the

9

Debtors in a liquidation context are an integral part of the restructuring of the debtor-creditor relationship. Thus, the Court lacks the constitutional authority to approve them.

## CONCLUSION

For all of the foregoing reasons, the SEC requests that the Court deny approval of the Disclosure Statement and confirmation of the Plan unless the Plan is amended to provide that either (a) the Releases are deleted from the Plan or (b) that public shareholders and holders of Subordinated Claims be required to opt in to the Releases in order to be bound.

Dated: New York, New York
October 21, 2020

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION

By: /s/ Alan S. Maza
Alan S. Maza
Senior Counsel
New York Regional Office
200 Vesey St., Suite 400
New York, New York 10281
Phone: (212) 336-1100
Fax: (212) 336-1348
Mazaa@sec.gov

Of Counsel: Alistaire Bambach
Morgan Bradylyons