**COLE SCHOTZ P.C.**
Michael D. Sirota, Esq.
Stuart Komrower, Esq.
Ryan T. Jareck, Esq.
Matteo Percontino, Esq.
Court Plaza North
25 Main Street
Hackensack, New Jersey 07601
Telephone: (201) 489-3000
Facsimile:  (201) 489-1536
Email: msirota@coleschotz.com
          skomrower@coleschotz.com
          rjareck@coleschotz.com
          mpercontino@coleschotz.com

*Counsel for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| RTW RETAILWINDS, INC., *et al.*, | Case No. 20-18445 (JKS) |
| Debtors.[1] | (Jointly Administered) |

**DEBTORS' REPLY TO SAADIA GROUP, LLC'S OBJECTION TO DEBTORS'
MOTION COMPELLING FUNDS HELD IN ESCROW IN CONNECTION WITH SALE
<u>BE RELEASED TO THE DEBTORS</u>**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc. (4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095); Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341); Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936).  The Debtors' principal place of business is 330 W. 34th St., 9th Floor, New York, New York 10001.

60917/0001-21614473v1

RTW Retailwinds, Inc., *et al.*, the within Chapter 11 debtors and debtors-in-possession (the "**Debtors**"), by and through their undersigned counsel, hereby file this reply (the "**Reply**") to the objection [Docket No. 542] (the "**Saadia Objection**") filed by Saadia Group, LLC ("**Saadia**" or "**Buyer**") to the Debtors' motion [Docket No. 443] (the "**Motion**") directing that $6,100,000 currently being held in escrow with Wilmington Trust, National Association pursuant to a Post-Closing Agreement dated October 1, 2020 (the "**Post-Closing Agreement**") by and among the Debtors and Saadia, be released to the Debtors under the terms of the Asset Purchase Agreement dated August 28, 2020 by and among the Debtors and Saadia (the "**Saadia APA**"). In support of the Reply, the Debtors respectfully represent as follows:

## I. REPLY

1. Prior to closing on the sale of the Debtors' eCommerce business with Saadia, the parties entered into the Post-Closing Agreement to temporarily resolve an ongoing dispute among the parties concerning the interpretation of Section 5.9 of the Saadia APA. The Post-Closing Agreement simply acknowledged the ongoing dispute, set up a means to resolve the dispute (consensually or through litigation before this Court) and, most importantly, allowed the parties to timely close on the transaction.

2. Saadia now attempts to avoid its obligations under Section 5.9 by arguing there is an ambiguity in the provision. *See* Saadia Objection, ¶ 2.[2] Section 5.9 is clear and Saadia's attempts to manufacture "intention" based arguments should be viewed for what it is – a re-trade by Saadia on the $6,100,000 previously committed to satisfying these liabilities.

---

[2] Interestingly, counsel to Saadia that negotiated and documented the Saadia APA – the Robinson & Cole and Armstrong Teasdale firms – did not file the Saadia Objection. Rather, the Saadia Objection was prepared by counsel who took no part in the discussions that are the subject of the present dispute.

3. A simple reading of Section 5.9 supports the Debtors' interpretation. The first and second sentence of Section 5.9 of the Saadia APA are two independent obligations of Saadia as it relates to the Standby Letters of Credit (the "**LCs**"). More specifically, the first sentence requires Saadia to replace the LCs set forth in Schedule 5.9 of the Saadia APA with its own LCs.

4. The second sentence addresses the situation where the applicable LC is credit support for a Transferred Contract or Assumed Lease. That is, to the extent the LC supports a Transferred Contract or Assumed Lease, the Buyer acknowledges and agrees that it shall be solely responsible for ensuring that any credit support provided pursuant to Section 5.9 satisfies all of the credit support provisions of the applicable Transferred Contract or Assumed Lease. *See* Saadia APA, § 5.9 ("Buyer acknowledges and agrees that it shall be solely responsible for ensuring that any credit support provided pursuant to this Section 5.9 satisfies all of the credit support provisions of the applicable Transferred Contract or Assumed Lease to which it relates.").

5. The purpose of requiring the Buyer to comply with the credit support provisions was to ensure the Debtors could assume and assign such Transferred Contract or Assumed Lease to the Buyer. *See Bildisco & Bildisco*, 465 U.S. 513, 531-532 (1984) (when the debtor-in-possession "elect[s] to assume the executory contract, … it assumes the contract *cum onere*," i.e., in its entirety, with all its burdens and benefits); *Sharon Steel Corp. v. National Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989) (citing *Bildisco*). Said differently, the Debtors cannot unilaterally modify the credit support provisions in the Transferred Contract or Assumed Lease and assume and assign such Transferred Contract or Assumed Lease.

6. Saadia's contention that the second sentence limits Saadia's liability under Section 5.9 to *only* the credit support obligations of the Transferred Contracts and Assumed

3

Leases is misguided and reads the sentence with absolutely no context. *See* Saadia Objection, ¶ 3. As set forth in the Motion, Section 5.9 was a provision contained in the Sunrise Brands, LLC stalking horse agreement. Saadia submitted a competing offer and accepted the terms of Section 5.9 with **no** modifications whatsoever. In analyzing contractual text, a court should not turn a blind eye to context. Rather, "a court should accord [contractual] language its plain meaning giving due consideration to 'the surrounding circumstances [and] apparent purpose which the parties sought to accomplish.' " *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir.1990); *In re Coudert Bros.*, 487 B.R. 375 (S.D.N.Y. 2013) (said differently, a court may consider the factual circumstances surrounding the execution of a contract, because the court's primary purpose in interpreting the agreement is to determine the parties' intentions, and interpreting the contract's terms in a factual vacuum would undermine that goal). Saadia submitted a bid that was "apples to apples" with Sunrise Brands, LLC, including the assumption of this obligation under Section 5.9. Under these circumstances, the Court should accord the plain meaning of Section 5.9 with that context in mind. For these reasons, Saadia's argument should be rejected.

7. Saadia next argues that it has no liability because none of the LCs were listed on Schedule 2.6(b), which is the schedule of Transferred Contracts and Assumed Leases. *See* Saadia Objection, ¶ 4. That argument is flawed. LCs would never be listed on Schedule 2.6(b) because the LCs cannot be assumed and assigned to the Buyer. *See In re S-Tran Holdings, Inc.*, 414 B.R. 28, 33 (Bankr. D. Del. 2009) (letters of credit are not property of the estate); *In re Kaiser Grp. Int'l Inc.*, 399 F.3d 558, 566 (3d Cir. 2005) (same); *In re Oakwood Homes Corp.*, 342 B.R. 59, 67 (Bankr. D. Del. 2006); *In re Cent. Illinois Energy, L.L.C.*, 482 B.R. 772, 786 (Bankr. C.D. Ill. 2012), *aff'd sub nom. Rafool v. Evans*, 497 B.R. 312 (C.D. Ill. 2013) (as

4

"variously characterized, a letter of credit is a "unique commercial instrument," an engagement, and an "absolute undertaking." One thing it is not is a contract.").

8. Saadia's contention misconstrues the nature of letter of credit transactions because letters of credit are not contracts. A letter of credit does not oblige the seller/beneficiary to do anything as a bilateral contract would require. Rather, a letter of credit is a mode of payment, an "undertaking" by a lender, and can never be assumed and assigned to a buyer.

9. In the Saadia Objection, Saadia also argues that the Debtors' entry into the Post-Closing Escrow Agreement, as opposed to asserting a breach of contract claim against Saadia, somehow supports Saadia's position. *See* Saadia Objection, ¶¶ 6-7. This argument is difficult to comprehend. Pursuant to Section 2 of the Post-Closing Escrow Agreement, in lieu of asserting a breach claim, the parties mutually agreed to placing the funds in escrow, closing on the transaction, and engaging in post-closing litigation concerning the escrowed funds. In the event the Debtors are successful in obtaining the escrowed funds, the Debtors have agreed to cooperate with Saadia to assign the LCs and collateral supporting same to Saadia. *See* Post-Closing Escrow Agreement, § 2. Saadia's argument is belied by the very document it negotiated through experienced counsel. Parties frequently enter into post-closing arrangements to address obligations that survive the closing and here is no different.

10. Lastly, Saadia argues that neither the Post-Closing Escrow Agreement nor the Saadia APA set forth a specific time frame within which Saadia must act. *See* Saadia Objection, ¶ 12. "Therefore, it is impossible to be in breach of a term of a contract, when there is no timeframe required." *See id.* This argument is incorrect based on the plain terms of the applicable agreements. *See, e.g.,* Post-Closing Escrow Agreement, § 2 (Saadia shall cause

5

$6,100,000 to be placed into escrow "[a]t Closing"); Saadia APA, § 5.9 (Section 5.9 of the Saadia APA requires Saadia to replace the LCs "[a]t or prior to Closing").

11. Accordingly, the Saadia Objection should be overruled in its entirety.

## II. RESERVATION OF RIGHTS

12. The Debtors expressly reserve all of their rights, arguments, claims and defenses with respect to any objection to the Motion and further reserve their rights to supplement this Reply.

## III. NOTICE

13. Notice of this Reply has been provided to: (i) the Office of the United States Trustee; (ii) counsel to the Committee; (iii) counsel for the administrative agent under the Debtors' pre-petition revolving credit facility, Wells Fargo Bank, National Association, c/o Otterbourg P.C. (Attn: Daniel F. Fiorillo, Esq. and Chad B. Simon, Esq.), 230 Park Avenue, New York, NY 10169-0075; (iv) Wilmington Trust, National Association, (v) Saadia Group, LLC, c/o Silverman Law PLLC, 4 Terry Terrace, Livingston, New Jersey 07039 (Attn: Brett Silverman, Esq), and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light of the relief requested herein, the Debtors respectfully submit that no other or further notice is required.

## IV. CONCLUSION

The Debtors respectfully request that this Court overrule the Saadia Objection, enter the proposed form of Order submitted with the Motion and grant such other and further relief as may be just and proper.

Dated: November 9, 2020

Respectfully submitted,

**COLE SCHOTZ P.C.**

By: */s/ Ryan T. Jareck*
Michael D. Sirota, Esq.
Stuart Komrower, Esq.
Ryan T. Jareck, Esq.
Matteo W. Percontino, Esq.
Court Plaza North
25 Main Street
Hackensack, NJ 07601
Telephone: (201) 489-3000
Facsimile: (201) 489-1536
Email: msirota@coleschotz.com
skomrower@coleschotz.com
rjareck@coleschotz.com
mpercontino@coleschotz.com