**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Michael D. Sirota, Esq.
Stuart Komrower, Esq.
Ryan T. Jareck, Esq.
Matteo Percontino, Esq.

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re: | Chapter 11 |
| RTW RETAILWINDS, INC., *et al.,* | Case No. 20-18445 (JKS) |
| Debtors.[1] | (Jointly Administered) |
|  | **Related to Docket No. 523** |

**NOTICE OF FILING OF PLAN SUPPLEMENT**

**PLEASE TAKE NOTICE** that on September 30, 2020, the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") filed the *Joint Plan of Liquidation of RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 390] (as may be amended, supplemented, revised or modified, including all exhibits thereto, the "**Plan**").[2]

**PLEASE TAKE FURTHER NOTICE** that on October 29, 2020, the Debtors filed the solicitation version of the Plan [Docket No. 523].

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc. (4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095); Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341); Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936). The Debtors' principal place of business is 330 W. 34th St., 9th Floor, New York, New York 10001.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or the Disclosure Statement, as applicable.

**PLEASE TAKE FURTHER NOTICE** that in connection with the Plan, the Debtors hereby file the Plan Supplement, which is attached hereto as **Exhibit 1**.

Dated: November 25, 2020          **COLE SCHOTZ P.C.**

         By:____*/s/ Ryan T. Jareck*_____

            Michael D. Sirota, Esq.
            Stuart Komrower, Esq.
            Ryan T. Jareck, Esq.
            Matteo Percontino, Esq.
            Court Plaza North
            25 Main Street
            Hackensack, NJ 07601
            Telephone:  (201) 489-3000
            Facsimile:  (201) 489-1536
            Email: msirota@coleschotz.com
                   skomrower@coleschotz.com
                   rjareck@coleschotz.com
                   mpercontino@coleschotz.com

            *Attorneys for Debtors*
            *and Debtors in Possession*

## **EXHIBIT 1**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| RTW RETAILWINDS, INC., *et al.*, | Case No. 20-18445 (JKS) |
| Debtors.[1] | (Jointly Administered) |
| | **Related to Docket No. 523** |

## <u>PLAN SUPPLEMENT</u>

This Plan Supplement contains documents filed in connection with the *Joint Plan of Liquidation of RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 523] (as may be amended, supplemented, revised or modified, including all exhibits thereto, the "**Plan**").[2]  Included in this Plan Supplement is the following:

> **Exhibit A** – **Liquidation Trust Agreement**

> **Exhibit B** – **Liquidation Trust Expense Reserve**

> **Exhibit C** – **Identity of Liquidation Trustee**

*[Remainder of Page Intentionally Left Blank]*

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc. (4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095); Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341); Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936).  The Debtors' principal place of business is 330 W. 34th St., 9th Floor, New York, New York 10001.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan or the Disclosure Statement, as applicable.

The Debtors reserve the right to alter, amend, update, supplement, or modify the Plan Supplement.

Dated: November 25, 2020

**COLE SCHOTZ P.C.**

By:   */s/ Ryan T. Jareck*
    Michael D. Sirota, Esq.
    Stuart Komrower, Esq.
    Ryan T. Jareck, Esq.
    Matteo Percontino, Esq.
    Court Plaza North
    25 Main Street
    Hackensack, NJ 07601
    Telephone:  (201) 489-3000
    Facsimile:  (201) 489-1536
    Email:  msirota@coleschotz.com
          skomrower@coleschotz.com
          rjareck@coleschotz.com
          mpercontino@coleschotz.com

*Attorneys for Debtors*
*and Debtors in Possession*

# EXHIBIT A

## Liquidation Trust Agreement

## <u>LIQUIDATING TRUST AGREEMENT AND DECLARATION OF TRUST</u>

This liquidating trust agreement and declaration of trust (the "<u>Agreement</u>"), dated as of December [*], 2020, is made by and among RTW Retailwinds, Inc., Lerner New York Holding, Inc., Lernco, Inc., Lerner New York, Inc., New York & Company, Inc., Lerner New York GC, LLC, Lerner New York Outlet, LLC, New York & Company Stores, Inc., FTF GC, LLC, Lerner New York FTF, LLC, Fashion to Figure, LLC, and FTF IP Company, Inc. (collectively, the "<u>Debtors</u>"), debtors and debtors in possession, and [*] ("<u>Trustee</u>," and together with the Debtors, each, a "<u>Party</u>" and collectively, the "<u>Parties</u>").

## <u>RECITALS</u>

A.    On July 13, 2020, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "<u>Bankruptcy Court</u>"), and their chapter 11 cases are being jointly administered as *In re RTW Retailwinds, Inc., et al.*, Case No. 20-18445 (JKS).

B.    On or about July 24, 2020, the United States Trustee for Region 3 (the "<u>U.S. Trustee</u>") appointed the Official Committee of Unsecured Creditors (the "<u>Creditors' Committee</u>") consisting of: (i) Brookfield Properties Retail, Inc.; (ii) Easy Fashion Macao Commercial Offshore Limited; (iii) MGF Sourcing US, LLC; (iv) Simon Property Group, Inc.; (v) Susie Sanchez; (vi) Amoseastern Apparel, Inc.; and (vii) Local 1102 Pension Fund Lerner Employees (Docket No. 107).

C.    The Debtors filed the *Joint Plan of Liquidation of RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* on October 29, 2020 (as

confirmed, the "Plan")[1] as Exhibit A to the *Disclosure Statement for the Joint Plan of Liquidation Of RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 Of the Bankruptcy Code* (Docket No. 523).

D.      On December [*], 2020, the Bankruptcy Court entered an order ("Confirmation Order") (Docket No. [*]) confirming the Plan, which became effective on [*] ("Effective Date").

E.      The Plan provides for the creation of the Liquidation Trust ("Trust") on the Effective Date of the Plan.

F.      The Plan, this Agreement, and the Confirmation Order provide for the appointment of the Trustee as trustee of the Trust, and for the appointment as necessary of any successor Trustee of the Trust.

G.      The Trust is established for the benefit of holders of Allowed Class 5 General Unsecured Claims entitled to distributions under the Plan (collectively, "Beneficiaries").

H.      The Trust is established for the purpose of collecting, holding, administering, distributing, and liquidating the Liquidation Trust Assets ("Trust Assets") for the benefit of the Beneficiaries in accordance with the terms and conditions of this Agreement, the Plan, and the Confirmation Order and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Trust.

I.      Pursuant to the Plan, the Debtors, Trust, Trustee, and Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Trust Assets to the Trust as a transfer of the Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for the

---

[1]      As set forth in section 1.2 of this Agreement, capitalized terms used in this Agreement but not otherwise defined herein shall have the same meanings set forth in the Plan.

2

Beneficial Trust Interests herein, and to treat the Beneficiaries as the grantors and owners of the Trust for federal income tax purposes.

J.      Pursuant to the Plan, the Trust is intended for federal income tax purposes (i) to be treated as a grantor trust within the meaning of sections 671-677 of the Internal Revenue Code of 1986, as amended ("IRC"), and also (ii) to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d).

K.      In accordance with the Plan, the Trust is further intended to be exempt from the requirements of (i) pursuant to section 1145 of the Bankruptcy Code, the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

### DECLARATION OF TRUST

The Debtors and the Trustee enter into this Agreement to effectuate the distribution of the Trust Assets to the Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to section IV.A. of the Plan and section 2.3 of this Agreement, all the Debtors' Assets shall automatically be transferred to and vest in the Trust free and clear of all Claims, Liens, Interests, encumbrances, and contractually imposed restrictions except as otherwise provided in the Plan, and shall comprise Trust Assets for all purposes;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust; and

3

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Trust Assets and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon (collectively, "Trust Assets") are to be held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set forth herein, solely for the benefit of the Beneficiaries and for no other party.

## ARTICLE I

## RECITALS, PLAN DEFINITIONS, OTHER
## DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1     Recitals.  The Recitals are incorporated into and made terms of this Agreement.

1.2     Definitions.  All terms used in this Agreement but not defined herein shall have the meanings set forth in the Plan.

1.3     Interpretation; Headings.  All references herein to specific provisions of the Plan or Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan or Confirmation Order.  Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender.  The headings in this Agreement are for convenience of reference only and shall not limit or otherwise affect the provisions of this Agreement.

1.4     Construction of Agreement. This Agreement shall not be construed to impair or limit in any way the rights of any Person under the Plan.

1.5     Conflict Among Plan Documents.  In the event of any inconsistency between the Plan, the Confirmation Order and this Agreement, the Confirmation Order shall control.  In the event of an inconsistency between the Plan and this Agreement, this Agreement shall control.

4

## ARTICLE II

## ESTABLISHMENT OF TRUST

2.1     <u>Effectiveness of Agreement; Name of Trust</u>.  This Agreement shall become

effective on the Effective Date.  The Trust shall be officially known as the "RTW Liquidation

Trust."

2.2     <u>Purpose of Trust</u>.  The Debtors and the Trustee, pursuant to the Plan and in

accordance with Bankruptcy Code, hereby create the Trust for the primary purpose of collecting,

holding, administering, distributing and liquidating the Trust Assets for the benefit of the

Beneficiaries in accordance with the terms and conditions of this Agreement and the Plan, and

with no objective to continue or engage in the conduct of a trade or business, except to the extent

reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

2.3     <u>Transfer of Trust Assets</u>.

2.3.1     <u>Conveyance of Trust Assets</u>.  Pursuant to the Plan, the Debtors hereby

grant, release, assign, transfer, convey and deliver, on behalf of the Beneficiaries, the Debtors'

Assets to the Trust as of the Effective Date (including, for the avoidance of doubt, all Retained

Causes of Action) in trust for the benefit of the Beneficiaries, which shall comprise Trust Assets

for all purposes and shall be administered and applied as specified in this Agreement and the

Plan.  The Debtors shall, from time to time, as and when reasonably requested by the Trustee,

execute and deliver or cause to be executed and delivered all such documents (in recordable form

where necessary or appropriate) and the Debtors shall take or cause to be taken such further

action as the Trustee may reasonably deem necessary or appropriate, to vest or perfect in the

Trust or confirm to the Trustee title to and possession of the Trust Assets.  The Trustee shall

have no duty to arrange for any of the transfers contemplated under this Agreement or by the

5

Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order, and shall be conclusively entitled to rely on the legality and validity of such transfers.

      2.3.2    <u>Title to Trust Assets</u>.  Pursuant to the Plan, all of the Debtors' right, title and interest in and to the Debtors' Assets, including all such assets held or controlled by third parties, are automatically vested in the Trust on the Effective Date and shall comprise Trust Assets for all purposes, free and clear of all Liens, Claims, encumbrances, Interests, contractually imposed restrictions, and other interests, except as specifically provided in the Plan, and such transfer is on behalf of the Beneficiaries to establish the Trust.  The Trust shall be authorized to obtain possession or control of, liquidate, and collect all of the Trust Assets in the possession or control of third parties, pursue all Retained Causes of Action, whether arising before or after the Petition Date, and pursue, assert and/or and exercise all rights of setoffs and recoupment and defenses of the Debtors or their Estates to any counterclaims that may be asserted by any and all defendants as to any Retained Causes of Action or holders of Disputed Claims.  Without limiting the generality of the foregoing, the Trust shall have the right to invoke section 542 of the Bankruptcy Code to pursue turnover of Trust Assets.  On the Effective Date, the Trust shall be substituted for the Debtors for all purposes with respect to the Trust Assets and administration of Claims and Interests.  To the extent any law or regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtors to the Trust and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a lien upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes set forth in section 2.2, and this Agreement shall be deemed a security agreement granting such interest thereon without need to file financing statements or mortgages.  By executing this Agreement, the Trustee on behalf of

the Trust hereby accepts all of such property as Trust Assets, to be held in trust for the

Beneficiaries, subject to the terms of this Agreement and the Plan.

2.4    Capacity of Trust.  Notwithstanding any state or federal law to the contrary or

anything herein, the Trust shall itself have the capacity, in its own right and name, to act or

refrain from acting, including the capacity to sue and be sued and to enter into contracts.  The

Trust may alone be the named movant, respondent, party plaintiff or defendant, or the like in all

adversary proceedings, contested matters, and other state or federal proceedings brought by or

against it, and may settle and compromise all such matters in its own name.

2.5    Cooperation of Debtors.  The Debtors and their professionals shall use

commercially reasonable efforts to cooperate with the Trust and Trustee and their professionals

in effecting the transition from the Debtors to the Trust of administration of the Trust Assets and

of creditors' Claims.  Such cooperation shall include, but not be limited to, reasonably

attempting to identify and facilitate access to (i) any evidence and information the Trustee

reasonably requests in connection with the Trust's investigation, prosecution or other pursuit, or

defense (as applicable) of Retained Causes of Action and objections to Disputed Claims; and

(ii) former employees or Professionals of the Debtors with knowledge regarding any Retained

Causes of Action.  The Debtors shall arrange for the Trustee to receive an updated claims

register from the Notice and Claims Agent within thirty (30) days after the Effective Date.

2.6    No Retention of Excess Cash.  Notwithstanding anything in this Agreement to the

contrary, under no circumstances shall the Trust or Trustee retain cash or cash equivalents in

excess of a reasonable amount to meet Claims, expenses, and contingent liabilities or to maintain

the value of the Trust Assets during liquidation other than reserves established pursuant to

sections 3 and/or 4.1.2 of this Agreement, and shall distribute all amounts not required to be

retained for such purposes to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan and this Agreement.

2.7    <u>Acceptance by Trustee</u>.  The Trustee accepts its appointment as Liquidation Trustee of the Trust.

**ARTICLE III**

**ADMINISTRATION OF TRUST**

3.1    <u>Rights, Powers, and Privileges of Trustee Generally</u>.  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Debtors' Assets are transferred to the Trust and become Trust Assets, the Trustee on behalf of the Trust may control and exercise authority over the Trust Assets, over the acquisition, management and disposition thereof, and over the management and conduct of the affairs of the Trust.  In administering the Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.1.1    <u>Power to Contract</u>.  In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

3.1.2    <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to

8

take any action on behalf of the Trust that, based upon the advice of counsel or other

professionals, the Trustee determines it is obligated to take or to refrain from taking in the

performance of any duty that the Trustee may owe the Beneficiaries or any other Person under

the Plan, Confirmation Order, or this Agreement.

       3.2     <u>Powers of Trustee</u>.  Without limiting the generality of the above section 3.1, in

addition to the powers granted in the Plan, the Trustee shall have the power to take the following

actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in

its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust,

unless otherwise specifically limited or restricted by the Plan or this Agreement:

       3.2.1   hold legal title to the Trust Assets and to any and all rights of the Debtors

and the Beneficiaries in or arising from the Trust Assets;

       3.2.2   receive, maintain, conserve, supervise, prosecute, collect, settle, manage,

adjust, invest, protect, enforce and where appropriate, cause the Trust to abandon the Trust

Assets, including causing the Trust to invest any moneys held as Trust Assets in accordance with

the terms of section 3.7 hereof;

       3.2.3   open and maintain bank accounts on behalf of or in the name of the Trust;

       3.2.4   cause the Trust to enter into any agreement or execute any document or

instrument required by or consistent with the Plan, the Confirmation Order or this Agreement,

and to perform all obligations thereunder;

       3.2.5   collect and liquidate all Trust Assets, including the sale of any Trust

Assets;

3.2.6    protect and enforce the rights to the Trust Assets (including any Retained

Causes of Action) vested in the Trust and Trustee by this Agreement by any method deemed

appropriate, including, without limitation, by judicial proceedings or otherwise;

3.2.7    investigate any Trust Assets including, but not limited to, Retained Causes

of Action, review, reconcile, compromise, settle, or object to Claims of any kind, and cause the

Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure

2004;

3.2.8    cause the Trust to employ or retain professionals, a Distribution Agent,

and other agents, independent contractors and third parties pursuant to this Agreement and pay

the reasonable compensation thereof;

3.2.9    cause the Trust to pay all of its lawful expenses, debts, charges, taxes and

other liabilities, and make all other payments relating to the Trust Assets, solely out of Plan Trust

Assets;

3.2.10   cause the Trust to review, reconcile, prosecute, enforce, collect,

compromise, settle, abandon or elect not to pursue all Retained Causes of Action, including, but

not limited to, all Avoidance Actions;

3.2.11   calculate, authorize and make all distributions to the holders of Allowed

Claims as provided for in, or contemplated by, the Plan and this Agreement;

3.2.12   establish, adjust, and maintain a reserve for Disputed Claims ("Disputed

Claims Reserve");

3.2.13   cause the Trust to withhold from the amount distributable to any Person

the maximum amount needed to pay any tax or other charge that the Trustee has determined,

based upon the advice of its agents and/or professionals, may be required to be withheld from

10

such distribution under the income tax or other laws of the United States or of any state or

political subdivision thereof;

       3.2.14  in reliance upon the Debtors' Schedules and the official Claims register

maintained in the Chapter 11 Cases, review, and where appropriate, cause the Trust to allow or

object to Claims, and, supervise and administer the Trust's commencement, prosecution,

settlement, compromise, withdrawal or resolution of all objections to Disputed Claims required

to be administered by the Trust;

       3.2.15  in reliance upon the Debtors' Schedules and the official Claims register

maintained in the Chapter 11 Cases, maintain a register evidencing the Beneficial Trust Interest

herein held by each Beneficiary and, in accordance with section 3.8 of this Agreement, such

register may be the official Claims register maintained in the Chapter 11 Cases;

       3.2.16  cause the Trust to make all tax withholdings, file tax information returns,

file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file

tax returns for the Trust as a grantor trust under IRC section 671 and Treasury Income Tax

Regulation section 1.671-4 pursuant to and in accordance with the Plan and Article VII hereof,

and pay taxes, if any, payable for and on behalf of the Trust, and to file any and all remaining tax

returns for the Debtors and the Estates, as applicable; provided, however, that notwithstanding

any other provision of this Agreement, neither the Trust nor the Trustee shall have any

responsibility or personal liability in any capacity whatsoever for the signing or accuracy of the

Debtors' income tax returns that are due to be filed after the Effective Date or for any tax

liability related thereto;

11

3.2.17  cause the Trust to abandon or donate to a charitable organization any Trust

Assets that the Trustee determines to be too impractical to distribute to Beneficiaries or of

inconsequential value to the Trust and Beneficiaries;

3.2.18  cause the Trust to send annually to Beneficiaries, in accordance with the

tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the

Trust's income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report

such items on their federal tax returns;

3.2.19  cause the Trust to seek a determination of tax liability or refund under

section 505 of the Bankruptcy Code;

3.2.20  cause the Trust to establish such reserves for taxes, assessments and other

expenses of administration of the Trust as may be necessary and appropriate for the proper

operation of matters incident to the Trust;

3.2.21  cause the Trust to purchase and carry all insurance policies that the

Trustee deems reasonably necessary or advisable and to pay all associated insurance premiums

and costs;

3.2.22  undertake to wind down the Debtors' employee benefit plans, cause the

issuance of W-2s and 1099s on behalf of the Debtors and the filing of final tax returns for the

Debtors, and effect the dissolution of each of the Debtor entities;

3.2.23  undertake all administrative functions of the Trust, including overseeing

the winding down and termination of the Trust;

3.2.24  undertake all administrative functions remaining in the Chapter 11 Cases,

reporting and making required payments of fees to the U.S. Trustee and overseeing the closing of

the Chapter 11 Cases;

12

3.2.25  exercise, implement, enforce, and discharge all of the terms, conditions,

powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement;

and

3.2.26  take all other actions consistent with the provisions of the Plan that the

Trustee deems reasonably necessary or desirable to administer the Trust.

3.3     Exclusive Authority to Pursue Retained Causes of Action.  The Trust shall have

the exclusive right, power, and interest to review, reconcile, enforce, collect, compromise, settle,

or elect not to pursue the Retained Causes of Action.  The Trust, acting by and through the

Trustee, shall be the sole representative of the Estates under section 1123(b)(3) of the

Bankruptcy Code with respect to the Retained Causes of Action.  The Trust shall be vested with,

and the Trust and Trustee shall be entitled to assert, all setoffs, and defenses of the Debtors or the

Trust to any counterclaims that may be asserted by any defendant with respect to any Retained

Causes of Action.  The Trust shall also be vested with, and the Trust and Trustee shall be entitled

to assert, all of the Debtors' and the Estates' rights with respect to any such counterclaims under

section 558 of the Bankruptcy Code.

3.4     Abandonment.  If, in the Trustee's reasonable judgment, any Trust Assets cannot

be sold in a commercially reasonable manner or the Trustee believes in good faith that such

property has inconsequential value to the Trust or its Beneficiaries, the Trustee shall have the

right to cause the Trust to abandon or otherwise dispose of such property, including by donation

of such property to a charitable organization.

3.5     Responsibility for Administration of Claims.  From and after the Effective Date,

the Trust shall become responsible for administering and paying distributions to the holders of

Allowed Claims.  The Trust, acting by and through the Trustee, shall have the exclusive right to

13

object to the allowance of any Claim on any ground, to file, withdraw or litigate to judgment

objections to Claims, to settle or compromise any Disputed Claims without any further notice to

or action, order or approval by the Bankruptcy Court, and to assert all defenses of the Debtors

and their Estates.  The Trust, acting by and through the Trustee, shall also be entitled to assert all

of the Debtors' and the Estates rights under, without limitation, section 558 of the Bankruptcy

Code, and may seek estimation of any Claims under and subject to section 502(c) of the

Bankruptcy Code.

      3.6    <u>Agents and Professionals</u>.  The Trustee may, but shall not be required to, consult

with and retain attorneys, financial advisors, accountants, appraisers, and other professionals the

Trustee believes have qualifications necessary to assist in the administration of the Trust,

including professionals previously retained by the Debtors or the Creditors' Committee.  For the

avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall

limit the Trustee from engaging counsel or other professionals, including the Trustee itself or the

Trustee's firm or their affiliates, to do work for the Trust.  The Trustee may pay the reasonable

salaries, fees and expenses of such Persons out of the Trust Assets in the ordinary course of

business.

      3.7    <u>Safekeeping and Investment of Trust Assets</u>.  All moneys and other assets

received by the Trustee shall, until distributed or paid over as provided herein and in the Plan, be

held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts

from other Trust Assets, unless and to the extent required by law or the Plan.  Neither the Trust

nor the Trustee shall have any liability for interest or producing income on any moneys received

by them and held for distribution on account of Allowed Claims or payment to the Beneficiaries

except as such interest shall actually be received by the Trust or Trustee, which shall be

14

distributed as provided in the Plan.  Except as otherwise provided by the Plan, the powers of the

Trustee to invest any moneys held by the Trust, other than those powers reasonably necessary to

maintain the value of the assets and to further the Trust's liquidating purpose, shall be limited to

powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks

or other savings institutions, or other temporary liquid investments, such as treasury bills;

provided, however, that the scope of permissible investments shall be limited to include only

those investments that a liquidating trust, within the meaning of Treas. Reg. § 3.01.7701-4(d),

may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS

guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise.  For the

avoidance of doubt, the provisions of section 11-2.3 of the Estates, Powers, and Trusts Law of

New York shall not apply to this Agreement.  Notwithstanding the foregoing, the Trustee shall

not be prohibited from engaging in any trade or business on its own account, provided that such

activity does not interfere or conflict with the Trustee's administration of the Trust.

      3.8    <u>Maintenance and Disposition of Trust and Debtor Records</u>.  The Trustee shall

maintain accurate records of the administration of Trust Assets, including receipts and

disbursements and other activity of the Trust.  The Trust may, but has no obligation to, engage a

claims agent (including, but not limited to, the Notice and Claims Agent) to continue to maintain

and update the Claims register maintained in the Chapter 11 Cases throughout the administration

of the Trust.  To the extent of any General Unsecured Claims reflected thereon, the Claims

register may serve as the Trustee's register of Beneficial Trust Interests held by Beneficiaries.

The books and records maintained by the Trustee and any records of the Debtors transferred to

the Trust may be disposed of by the Trustee at the later of (i) such time as the Trustee determines

that the continued possession or maintenance of such books and records is no longer necessary

15

for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of the winding down or dissolution of the Trust.

3.9    <u>Reporting Requirements</u>.  The Trustee shall provide the U.S. Trustee and the Bankruptcy Court the information and reports they may reasonably request concerning Trust administration.

3.10    <u>No Bond Required; Procurement of Insurance</u>.  Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond.  The Trustee is hereby authorized, but not required, to obtain all reasonable insurance coverage for itself, its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Trustee and its agents, representatives, employees or independent contractors under this Agreement.  The cost of any such insurance coverage shall be an expense of the Trust and paid out of Trust Assets.

**ARTICLE IV**

**DISTRIBUTIONS**

4.1    <u>Distribution and Reserve of Trust Assets</u>.  Following the transfer of Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate, and distribute all Trust Assets, subject to the reserves required under the Plan or this Agreement.

4.1.1    <u>Distributions</u>.  The Trustee shall cause the Trust to make distributions, at least annually, to the holders of Allowed Claims, except the Trust may retain an amount of net income and other Trust Assets reasonably necessary to maintain the value of the Trust Assets or to meet expenses, claims and contingent liabilities of the Trust and Trustee, and retention of such amount may preclude distributions to holders of Allowed Claims.

16

4.1.2    <u>Reserves; Pooling of Reserved Funds</u>.  Before any distribution can be made, the Trustee shall, in its reasonable discretion, establish, supplement, and maintain the Liquidation Trust Expense Reserve in an amount sufficient to meet any and all expenses and liabilities of the Trust, including attorneys' fees and expenses, the fees and expenses of other professionals, and fees owed the U.S. Trustee.  The Trustee shall also maintain sufficient funds (a) in the Liquidation Trust Claims Reserve until all Allowed Administrative Claims, Priority Tax Claims, Secured Tax Claims, Other Secured Claims and Other Priority Claims have been paid in full; and (b) in the Prepetition Credit Parties Reserve until all Prepetition Credit Parties Claims have been paid in full.  In accordance with section 3.2.12 of this Agreement, the Trust may also maintain as necessary a Disputed Claims Reserve with respect to General Unsecured Claims required to be administered by the Trust.  For the avoidance of doubt, the Trustee may withhold any distribution pending the Trust's determination of whether to object to any General Unsecured Claim.  Any such withheld distribution shall become part of the Disputed Claims Reserve and shall be distributed to the appropriate holder of an Allowed General Unsecured Claim no later than the first Distribution Date after a decision is made not to object to the pertinent Claim or the Claim becomes Allowed.  The Trustee need not maintain any of the Trust's reserves in segregated bank accounts and may pool funds in the reserves with each other and other funds of the Trust; <u>provided</u>, <u>however</u>, that the Trust shall treat all such reserved funds as being held in a segregated manner in its books and records.

4.1.3    <u>Distributions Net of Reserves and Costs</u>.  Distributions shall be made net of reserves in accordance with the Plan and this Agreement, and also net of the actual and reasonable costs of making the distributions.

4.1.4    <u>Right to Rely on Professionals</u>.  Without limitation of the generality of

section 6.6 of this Agreement, in determining the amount of any distribution or reserves, the

Trustee may rely and shall be fully protected in relying on the advice and opinion of the Trust's

financial advisors, accountants, or other professionals.

4.2    <u>Method and Timing of Distributions</u>.  Distributions to holders of Allowed Claims

will be made from the Trust in accordance with the terms of the Plan (in particular, Article V)

and this Agreement.  The Trust may engage disbursing agents and other Persons to assist in

making Distributions.

4.3    <u>Withholding from Distributions</u>.  The Trustee, in its discretion, may cause the

Trust to withhold from amounts distributable from the Trust to any holder of an Allowed Claim

any and all amounts as may be sufficient to pay the maximum amount of any tax or other charge

that has been or might be assessed or imposed by any law, regulation, rule, ruling, directive, or

other governmental requirement on such Claimholder or the Trust with respect to the amount to

be distributed to such Claimholder.  The Trustee shall determine such maximum amount to be

withheld by the Trust in its sole, reasonable discretion and shall cause the Trust to distribute to

the Claimholder any excess amount withheld.

4.4    <u>IRS Forms</u>.  As more fully set forth in Article V of the Plan, the Trustee may

require any holder of a Claim to complete the appropriate IRS Form W-8 or IRS Form W-9 as a

prerequisite to receiving any distribution under the Plan or this Agreement.  If a holder of a

Claim does not provide to the Trustee within forty-five (45) days of written request with all

documentation, that in the Trustee's reasonable business judgment, is necessary to determine that

all tax withholding and reporting requirement for such Allowed Claim, including a IRS Form W-

8 or IRS Form W-9, the distribution on such Allowed Claim shall be deemed disallowed and

18

expunged in its entirety and the funds shall become Trust Assets and redistributed to the other

holders of Allowed Claims in accordance with the terms of this Plan.

4.5    <u>Unclaimed and Undeliverable Distributions</u>.  Unclaimed Property, together with

any distributions to holders of Allowed Claims returned as undeliverable, such shall be held by

the Trustee in the Unclaimed Property Reserve for a period of sixty (60) days and may be

released by the Trustee prior to the expiration of the sixty (60) days if presentation of proper

proof by such holder of its entitlement thereto is presented to the Trustee. After the expiration of

the sixty (60) days, the respective holders of Allowed Claims otherwise entitled to such

Unclaimed Property shall cease to be entitled thereto and shall be entitled to no further

distributions under the Plan, and (a) such Allowed Claims shall be deemed disallowed and

expunged in their entirety; (b) the funds in respect of such Unclaimed Property shall become

Trust Assets and shall revert to the Trust for all purposes including, but not limited to, for

distribution to other holders of Allowed Claims in accordance with the terms of this Plan,

Confirmation Order and this Agreement, automatically and without any need for further order of

the Bankruptcy Court; and (c) the corresponding Beneficial Trust Interest of any Beneficiary

holding a disallowed Claim shall be deemed cancelled.  Any such funds that revert to the Trust

hereunder shall not be subject to the escheat, abandonment or unclaimed property laws of any

federal, state, provincial or local government authority.

4.5.1    <u>No Responsibility to Attempt to Locate Beneficiaries</u>.  If a distribution is

returned to the Trust as undeliverable, or otherwise remains unclaimed, no further distribution

shall be made to such claimholder unless and until the claimholder notifies the Trustee of such

claimholder's then-current address and taxpayer identification number.  The Trustee may, in its

19

sole discretion, attempt to determine a Claimholder's current address or otherwise locate a

Claimholder, but nothing in this Agreement or the Plan shall require the Trustee to do so.

4.5.2    Inapplicability of Escheat, Abandoned or Unclaimed Property Laws.

Unclaimed Property held by the Trust shall not be subject to the escheat, abandoned or

unclaimed property laws of the United States, or any state, provincial or local governmental unit.

4.6    Request for Reissuance.  Distribution checks shall be null and void if not

negotiated within ninety (90) days after the date of issuance thereof.  Distribution checks not

cashed within such ninety-day period shall be treated as Unclaimed Property that has been held

in the Unclaimed Property Reserve for the requisite time period specified in the Plan. [2]  Requests

for reissuance of any check shall be made in writing directly to the Trustee by the holder of the

Claim that was originally issued such check.  All such requests shall be made promptly and in

time for the check to be reissued and cashed before the funds for the checks become unrestricted

Trust Assets under section 4.5 of this Agreement.  The Claimholder shall bear all the risk that,

and shall indemnify and hold the Trust and Trustee harmless against any loss that may arise if,

the Trustee does not reissue a check promptly after receiving a request for its reissuance.

4.7    Conflicting Claims.  If any conflicting claims or demands are made or asserted

with respect to the Beneficial Trust Interest of a Beneficiary, or if there is any disagreement

between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of

such an interest resulting in adverse claims or demands being made in connection with such

interest, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse

to comply with any such conflicting claims or demands.

---

[2]        NTD: There is no provision in the Plan concerning uncashed checks.

60917/0001-21731993v3

4.7.1    The Trustee may elect to cause the Trust to make no payment or distribution with respect to the Beneficial Trust Interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands.  Neither the Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

4.7.2    The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court or any other court of competent jurisdiction adjudicating the matter; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee.  Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat as the absolute owner under this Agreement of the Beneficial Trust Interest in the Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Trustee.  The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

4.7.3    In acting or refraining from acting under and in accordance with this section 4.7 of the Agreement, the Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VI of this Agreement.

4.8    Priority of Expenses of Trust.  The Trust must pay all of its expenses before making distributions.

21

## ARTICLE V

### BENEFICIARIES

5.1     Interest Beneficial Only.  The ownership of a Beneficial Trust Interest shall not

entitle any Beneficiary or the Debtors to any title in or to the Trust Assets or to any right to call

for a partition or division of such assets or to require an accounting.

5.2     Ownership of Beneficial Interests Hereunder.  Each Beneficiary shall own a

Beneficial Trust Interest herein which shall, subject to section 4.1 of this Agreement and subject

to the Plan, be entitled to a distribution in the amounts, and at the times, set forth in the Plan.

5.3     Evidence of Beneficial Interest.  Ownership of a Beneficial Trust Interest in the

Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or

manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4     No Right to Accounting.  Neither the Beneficiaries nor their successors, assigns,

creditors, nor any other Person shall have any right to an accounting by the Trustee, and the

Trustee shall not be obligated to provide any accounting to any Person.  Nothing in this

Agreement is intended to require the Trustee at any time or for any purpose to file any

accounting or seek approval of any court with respect to the administration of the Trust or as a

condition for making any advance, payment, or distribution out of proceeds of Trust Assets.

5.5     No Standing.  Except as expressly provided in this Agreement, a Beneficiary shall

not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to

institute any action or proceeding at law or in equity against any Person upon or with respect to

the Trust Assets.

5.6     Requirement of Undertaking.  The Trustee may request the Bankruptcy Court to

require, in any suit for the enforcement of any right or remedy under this Agreement, or in any

22

suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party

litigant in such suit of an undertaking to pay the costs of such suit, including reasonable

attorneys' fees, against any party litigant in such suit; provided, however, that the provisions of

this section 5.6 shall not apply to any suit by the Trustee.

5.7    Limitation on Transferability.  It is understood and agreed that the Beneficial

Trust Interests shall be non-transferable and non-assignable during the term of this Agreement

except by operation of law.  An assignment by operation of law shall not be effective until

appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may

continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries

until receipt of proper notification and proof of assignment by operation of law.  The Trustee

may rely upon such proof without the requirement of any further investigation.

5.8    Exemption from Registration.  The rights of the Beneficiaries arising under this

Agreement may be deemed "securities" under applicable law.  However, such rights have not

been defined as "securities" under the Plan because (i) the parties hereto intend that such rights

shall not be securities and (ii) if the rights arising under this Agreement in favor of the

Beneficiaries are deemed to be "securities," the exemption from registration under section 1145

of the Bankruptcy Code is intended to be applicable to such securities.  No party to this

Agreement shall make a contrary or different contention.

5.9    Delivery of Distributions.  Subject to the terms of this Agreement, the Trustee

shall cause the Trust to make distributions to Beneficiaries in the manner provided in the Plan.

## ARTICLE VI

## THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY

6.1    Parties Dealing With the Trustee.  In the absence of actual knowledge to the

contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the

authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets. There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2    Limitation of Trustee Liability.  In exercising the rights granted herein, the Trustee shall exercise the Trustee's best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded.  However, notwithstanding anything herein to the contrary, neither the Trustee nor any of its respective firms, companies, affiliates, partners, officers, directors, members, employees, designees, professionals, advisors, attorneys, representatives, Distribution Agent or other disbursing agents, or agents, and any of such Person's successors and assigns, shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross negligence, or willful misconduct that is found by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust.  In no event shall the Trustee be liable for indirect, punitive, special, incidental or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action.  Without limiting the foregoing, the Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan, including, but not limited to sections IV.C.8 and VIII.C. of the Plan, and the Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Confirmation Order.

24

6.3    <u>No Liability for Acts of Other Persons</u>.  None of the Persons identified in the immediately preceding section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

6.4    <u>No Liability for Acts of Predecessors</u>.  No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

6.5    <u>No Liability for Good Faith Error of Judgment</u>.  The Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Trustee was grossly negligent in ascertaining the pertinent facts.

6.6    <u>Reliance by Trustee on Documents and Advice of Counsel or Other Persons</u>. Except as otherwise provided herein, the Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by them to be genuine and to have been signed or presented by the proper party or parties.  The Trustee also may engage and consult with its respective legal counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered in reliance upon the advice of such counsel, agents, or advisors.

6.7    <u>No Liability For Acts Approved by Bankruptcy Court</u>.  The Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust and the Claims required to be administered by the Trust. The Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

25

6.8     No Personal Obligation for Trust Liabilities.  Persons dealing with the Trustee shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

6.9     Indemnification.  The Trustee and each of its respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, real estate brokers, transfer agents, independent contractors, managers, members, officers, partners, predecessors, principals, professional persons, representatives, affiliate, employer and successors (each, an "Indemnified Party") shall be indemnified for, and defended and held harmless against, by the Trust and solely from the Trust Assets, any loss, liability, damage, judgment, fine, penalty, claim, demand, settlement, cost, or expense (including the reasonable fees and expenses of their respective professionals) actually incurred without gross negligence, willful misconduct, or fraud on the part of the applicable Indemnified Party (which gross negligence, willful misconduct, or fraud, if any, must be determined by a Final Order of a court of competent jurisdiction) for any action taken, suffered, or omitted to be taken by the Indemnified Parties in connection with the acceptance, administration, exercise, and performance of their duties under the Plan or this Agreement, as applicable if the applicable Indemnified Party acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interest of the Trust or its Beneficiaries.  An act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, willful misconduct, or fraud. The amounts necessary for the indemnification provided in this section (including, but not limited to, any costs and expenses incurred in enforcing the right of indemnification in this section) shall be paid by the Trustee out

26

of the Trust Assets. The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Liquidation Trustee personally for the payment of any such expense or liability. The indemnification provided in this section shall survive the death, dissolution, incapacity, resignation or removal of the Trustee, Indemnified Party or the termination of the Trust, and shall inure to the benefit of each Indemnified Party's heirs and assigns.

6.9.1    Expense of Trust; Limitation on Source of Payment of Indemnification. All indemnification liabilities of the Trust under this section 6.9 shall be expenses of the Trust. The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Trust.  The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

6.9.2    Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay.  The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this section 6.9 on submission of invoices for such amounts by the Indemnified Party. By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement.  The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 6.9.

6.10    No Implied Obligations.  The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

27

6.11    <u>Confirmation of Survival of Provisions</u>.  Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, incapacity, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

## ARTICLE VII

## TAX MATTERS

7.1    <u>Tax Treatment of Trust</u>.  Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Trustee and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 and transfer of the Trust Assets to the Trust shall be treated as a transfer of the Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed General Unsecured Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for their pro rata Beneficial Trust Interest.  The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes.

7.2    <u>Annual Reporting and Filing Requirements</u>.  Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Income Tax Regulation Section 1.671-4(a).

7.3    <u>Tax Treatment of Reserves for Disputed Claims</u>.  The Trustee may, in the Trustee's sole discretion, determine the best way to report for tax purposes with respect to any Disputed Claims Reserve, including (i) filing a tax election to treat any and all Disputed Claims Reserves as a Disputed Ownership Fund ("<u>DOF</u>") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a

28

part of the Trust; or (ii) electing to report as a separate trust or sub-trust or other entity.  If an

election is made to report any Disputed Claims Reserve as a DOF, the Trust shall comply with

all federal and state tax reporting and tax compliance requirements of the DOF, including but not

limited to the filing of a separate federal tax return for the DOF and the payment of federal

and/or state income tax due.

7.4    Valuation of Trust Assets.  After the Effective Date, but in no event later than the

due date for timely filing of the Trust's first federal income tax return (taking into account

applicable tax filing extensions), the Trustee shall determine the fair market value of the Trust

Assets as of the Effective Date, based on the Trustee's good faith determination and establish

appropriate means to apprise the Beneficiaries of such valuation.  The valuation shall be used

consistently by all parties (including, without limitation, the Debtors, the Trust, the Trustee, and

the Beneficiaries) for all federal income tax purposes.

## ARTICLE VIII

### SELECTION, REMOVAL, REPLACEMENT
### AND COMPENSATION OF TRUSTEE

8.1    Initial Trustee.  The Trustee has been selected by the Creditors' Committee and is

appointed effective as of the Effective Date.  The initial trustee shall be the Trustee.

8.2    Term of Service.  The Trustee shall serve until (a) the completion of the

administration of the Trust Assets and the Trust, including the winding up of the Trust, in

accordance with this Agreement and the Plan; (b) termination and dissolution of the Trust in

accordance with the terms of this Agreement and the Plan; or (c) the Trustee's resignation, death,

dissolution, incapacity, liquidation or removal.  In the event that the Trustee's appointment

terminates by reason of resignation, death, dissolution, incapacity, liquidation or removal, the

Trustee shall be immediately compensated for all reasonable fees and expenses accrued but

29

unpaid through the effective date of termination, whether or not previously invoiced. The

provisions of Article VI of this Agreement shall survive the resignation or removal of any

Trustee.

8.3    <u>Removal of Trustee</u>.  Any party in interest, on notice and hearing before the

Bankruptcy Court, may seek removal of the Trustee for cause.  The Bankruptcy Court shall hear

and finally determine any dispute arising out of this section.

8.4    <u>Resignation of Trustee</u>.  The Trustee may resign at any time on written notice to

the U.S. Trustee and Bankruptcy Court.  The resignation shall be effective on the later of (a) the

date specified in the notice of resignation and (b) the date that is thirty days (30) after the date

such notice is filed with the Bankruptcy Court and served on the United States Trustee.  In the

event of a resignation, the resigning Trustee shall render to the U.S. Trustee a full and complete

accounting of monies and assets received, disbursed, and held during the term of office of that

Trustee.

8.5    <u>Appointment of Successor Trustee</u>.  Upon the resignation, death, dissolution,

incapacity, liquidation or removal of a Trustee, any party in interest (including, in the case of

resignation, the Trustee) may file a motion in the Bankruptcy Court to appoint a successor

trustee.  In the event no party in interest seeks the appointment of a successor Trustee, the

Bankruptcy Court may do so on its own motion.  Any successor Trustee so appointed (a) shall

consent to and accept his, her or its appointment as successor Trustee, which may be done by e-

mail or through acquiescence in not objecting to a motion for approval of his, her or its

appointment as successor Trustee and (b) shall not have any liability or responsibility for the acts

or omissions of any predecessor(s).  Any successor Trustee may be appointed to serve only on an

interim basis.

30

8.6    <u>Powers and Duties of Successor Trustee</u>.  A successor Trustee shall have all the rights, privileges, powers, and duties of his, her or its predecessor under this Agreement, the Plan, and Confirmation Order.

8.7    <u>Trust Continuance</u>.  The resignation, death, dissolution, incapacity, liquidation or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

8.8    <u>Compensation of Trustee and Costs of Administration</u>.  The Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan, which shall be a charge against and paid out of the Trust Assets.  All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trust from the Trust Assets prior to any distribution to holders of Allowed Claims.  The terms of the compensation of the Trustee are set forth on Exhibit A hereto.

8.9    <u>Appointment of Supplemental Trustee</u>.  If the Trustee has a conflict or any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, the Trustee shall nominate and appoint a Person duly qualified to act as trustee (the "<u>Supplemental Trustee</u>") with respect to such conflict, or in such state or jurisdiction, and require from each such Supplemental Trustee such security as may be designated by the Trustee in its discretion.  In the event the Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental Trustee to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.  The Trustee or the Bankruptcy Court, as applicable, may confer upon such Supplemental Trustee any or all of the rights, powers, privileges and duties of the Trustee

31

hereunder, subject to the conditions and limitations of this Agreement, except as modified or

limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the

state or other jurisdiction in which such Supplemental Trustee is acting shall prevail to the extent

necessary).  To the extent the Supplemental Trustee is appointed by the Trustee, the Trustee shall

require such Supplemental Trustee to be answerable to the Trustee for all monies, assets and

other property that may be received in connection with the administration of all property.  The

Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental Trustee, with or

without cause, and appoint a successor Supplemental Trustee at any time by executing a written

instrument declaring such Supplemental Trustee removed from office and specifying the

effective date and time of removal.

**ARTICLE IX**

**DURATION OF TRUST**

9.1    <u>Duration</u>.  Once the Trust becomes effective upon the Effective Date of the Plan,

the Trust and this Agreement shall remain and continue in full force and effect until the Trust is

terminated.

9.2    <u>Termination on Payment of Trust Expenses and Distribution of Trust Assets</u>.

Upon the payment of all costs, expenses, and obligations incurred in connection with

administering the Trust, and the distribution of all Trust Assets in accordance with the provisions

of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate and dissolve

and the Trustee shall have no further responsibility in connection therewith except as may be

required to effectuate such termination under relevant law.

9.3    <u>Termination after Five Years</u>.  If the Trust has not been previously terminated and

dissolved pursuant to section 9.2 hereof, no later than five (5) years from the Effective Date,

unless the Trust term has been extended in accordance with section IV.D of the Plan, the Trustee

32

shall distribute all of the Trust Assets to the Beneficiaries in accordance with the Plan, and immediately thereafter the Trust shall dissolve and terminate and the Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in section 9.5 of this Agreement.

9.4    <u>No Termination by Beneficiaries</u>.  The Trust may not be terminated and dissolved at any time by the Beneficiaries.

9.5    <u>Continuance of Trust for Winding Up; Discharge and Release of Trustee</u>.  After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed.  Except as otherwise specifically provided herein, upon the distribution of the Trust Assets including all excess reserves, the Trustee and the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder.  Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the Trustee, its employees, professionals, and agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

## ARTICLE X

## MISCELLANEOUS

10.1    <u>Cumulative Rights and Remedies</u>.  The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

10.2    <u>Notices</u>.  All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, at the addresses for such Beneficiaries appearing on the books kept by the Trustee.  Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified

33

United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

> If to the Trust or Trustee:
>
> [*]
>
> with a copy to its counsel:
>
> [*]

or to such other address as may from time to time be provided in written notice by the Trustee.

10.3    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey, without giving effect to rules governing the conflict of laws.

10.4    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

10.5    <u>Particular Words</u>.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

10.6    <u>Execution</u>.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner or compel payment from the Trust except by Final Order of the Bankruptcy Court.  Payments will be solely governed by the Plan and this Agreement.

34

10.7    <u>Amendment</u>.  This Agreement may be amended by written agreement of the

Trustee or by order of the Bankruptcy Court; <u>provided</u>, <u>however</u>, that such amendment may not

be inconsistent with the Plan or the Confirmation Order.

10.8    <u>No Waiver</u>.  No failure or delay of any party to exercise any right or remedy

pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

10.9    <u>No Relationship Created</u>.  Nothing contained herein shall be construed to

constitute any relationship created by this Agreement as an association, partnership or joint

venture of any kind.

10.10    <u>Severability</u>.  If any term, provision covenant or restriction contained in this

Agreement is held by a court of competent jurisdiction or other authority to be invalid, void,

unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants

and restrictions contained in this Agreement shall remain in full force and effect and shall in no

way be affected, impaired or invalidated.

10.11    <u>Further Assurances</u>.  Without limitation of the generality of section 2.5 of this

Agreement, the Parties agree to execute and deliver all such documents and notices and to take

all such further actions as may reasonably be required from time to time to carry out the intent

and purposes and provide for the full implementation of this Agreement and the pertinent

provisions of the Plan, and to consummate the transactions contemplated hereby.

10.12    <u>Counterparts</u>.  This Agreement may be executed simultaneously in one or more

counterparts, each of which shall be deemed an original and all of which together shall constitute

one and the same instrument.

10.13    <u>Jurisdiction</u>.  The Bankruptcy Court shall have jurisdiction regarding the Debtors,

Trust, Trustee, and Trust Assets, including, without limitation, the determination of all disputes

35

arising out of or related to administration of the Trust.  The Bankruptcy Court shall have

continuing jurisdiction and venue to hear and finally determine all disputes and related matters

among the Parties arising out of or related to this Agreement or the administration of the Trust.

The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial

power as is necessary to finally determine all such disputes and matters.  If the Bankruptcy Court

abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction

over any matter arising in, arising under, or related to the Chapter 11 Cases, including the

matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and

shall not control, limit or prohibit the exercise of jurisdiction by any other court having

competent jurisdiction with respect to such matter, and all applicable references in this

Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or

decision of such other court of competent jurisdiction.

60917/0001-21731993v3

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this

Agreement as of the day and year written above.

RTW Retailwinds, Inc.
Lerner New York Holding, Inc.
Lernco, Inc.
Lerner New York, Inc.
New York & Company, Inc.
Lerner New York GC, LLC
Lerner New York Outlet, LLC
New York & Company Stores, Inc.
FTF GC, LLC
Lerner New York FTF, LLC
Fashion to Figure, LLC
FTF IP Company, Inc.

By:_____

Name:_____

Title:_____


[*], not individually but solely in its capacity as Trustee under
this Agreement

By:_____

Name:_____

Title:_____

37

# __Exhibit A__

## __Terms of Compensation of Trustee__

1.)      [to be addressed in subsequent filing]

## **EXHIBIT B**

### **Liquidation Trust Expense Reserve**

<u>Reserve Amount</u>

1.  $500,000

## **EXHIBIT C**

## **Identity of Liquidation Trustee**

Liquidation Trustee

1. META Advisors LLC