

**FILED**

JEANNE A. NAUGHTON, CLERK

**DEC. 8 , 2020**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: *Zelda Haywood*

DEPUTY

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| In re: | Chapter 11 |
| **RTW RETAILWINDS, INC, et al.,**[1] | Case No. 20-18445 (JKS) |
| Debtors. | (Jointly Administered) |

## DECISION AND ORDER ON DEBTORS' MOTION
## TO COMPEL RELEASE OF FUNDS IN ESCROW (DOC. 443)

The relief set forth on the following pages, numbered two (2) through eight (8), is hereby

**ORDERED**.

_____
HONORABLE JOHN K. SHERWOOD
UNITED STATES BANKRUPTCY JUDGE

Dated: December 8, 2020

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc. (4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095); Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341); Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936).  The Debtors' principal place of business is 330 W. 34th St., 9th Floor, New York, New York 10001.

Page 2
Debtor:     RTW Retailwinds, Inc., et al
Case No.:   20-18445 (JKS)
Caption:    **Decision and Order on Debtors' Motion to Compel Release of Funds in Escrow**

## FACTS AND PROCEDURAL HISTORY

1. This matter is before the Court on a Motion by the Debtors to compel the release of $6,100,000 held in escrow at the closing of the sale of the Debtors' e-commerce business to Saadia Group LLC ("Saadia"). (Doc. 443). The Court approved the sale of the business to Saadia by Order dated September 4, 2020 (Doc. 319) wherein the Court retained jurisdiction with respect to issues concerning the terms of the sale. This is a core proceeding under 28 U.S.C. § 157(b)(2).

2. The issue here relates to the interpretation of Section 5.9 of the Asset Purchase Agreement dated August 28, 2020[2] which calls upon the buyer (Saadia) to replace certain letters of credit totaling $6,125,000. According to the Debtors, this is a "cash component" of the transaction because once the letters of credit are replaced by Saadia, the Debtors can cancel their existing letters of credit and get back the cash they have posted as collateral. (Doc. 443-1, paras. 10-12). Saadia contends that it has no obligation to replace the letters of credit under Section 5.9 of the Purchase Agreement – that its obligation to replace letters of credit is limited to "Transferred Contracts" and "Assumed Liabilities" and related letters of credit, if any. Since there were none of these, Saadia argues that it has no exposure. (Doc. 542).

3. Section 5.9 of the Purchase Agreement provides:

> "Standby Letters of Credit. At or prior to Closing, Buyer shall replace each Standby Letter of Credit set forth on Schedule 5.9 by either (i) causing the termination, expiration or cancellation and return of all outstanding Standby Letters of Credit, and/or (ii) with respect to each such Standby Letter

---

[2] The "Purchase Agreement," a copy of which is attached to Doc. 319.

Debtor:    RTW Retailwinds, Inc., et al
Case No.:  20-18445 (JKS)
Caption:   **Decision and Order on Debtors' Motion to Compel Release of Funds in Escrow**

> of Credit, the furnishing to such issuing bank a cash deposit,
> or at the discretion of such issuing bank, a backup standby
> letter of credit satisfactory to the issuing bank, in an amount
> equal to 105% of the principal amount of the applicable
> Standby Letter(s) of Credit. Buyer acknowledges and agrees
> that it shall be solely responsible for ensuring that any credit
> support provided pursuant to this Section 5.9 satisfies all of
> the credit support provisions of the applicable Transferred
> Contract or Assumed Lease to which it relates. Sellers will
> cooperate with Buyer in connection with the performance of
> Buyer's obligations under this Section 5.9."

Schedule 5.9 of the Purchase Agreement listed the following letters of credit.

| Standby Letters of Credit: | |
|---|---|
| Hartford Fire Insurance Co. [3] | $ 1,600,000.00 |
| The Travelers Indemnity Co. | $      25,000.00 |
| American Alternative Insurance Corporation[4] | $ 4,500,000.00 |
| Total Standby Outstanding | $ 6,125,000.00[5] |

4.  The first sentence of Section 5.9 is a clear and unconditional commitment on the part of

Saadia to replace the letters of credit on Schedule 5.9.  The second sentence, which Saadia

relies on, refers to credit support for "Transferred Contracts" and "Assumed Leases"

which are defined terms.  The Court must determine whether this second sentence is an

additional obligation of Saadia's or whether it is a clarification or limitation of Saadia's

obligation to replace the letters of credit.

5.  The Court heard oral argument on November 13, 2020.  The Declaration of Perry

Mandarino (Doc. 443-3) was offered as evidence by the Debtors without objection.  The

---

[3] The Hartford Fire Insurance Co. letter of credit pertains to the Debtors' Workers' Compensation claims policy.
[4] The American Alternative Insurance Company letter of credit pertains to a required standby letter of credit
maintained for certain oversees vendors of goods and merchandise.
[5] The Debtors have since been able to cancel the Travelers LC and received $25,000 in collateral, leaving
$6,100,000 in LCs remaining.

Page 4
Debtor:    RTW Retailwinds, Inc., et al
Case No.:  20-18445 (JKS)
Caption:   **Decision and Order on Debtors' Motion to Compel Release of Funds in Escrow**

Declaration of Jack Saadia (Doc. 542) was offered as evidence by Saadia.  Certain hearsay statements in the Saadia Declaration were not admitted as evidence based on the Debtors' objections but most of the Declaration was allowed.   All parties were offered the opportunity to cross-examine the witnesses who were available by telephone, but no one accepted.  The record was closed without objection and the Court reserved decision.

## ANALYSIS

6. Looking closer at the second sentence of Section 5.9, the sentence seems to relate to an obligation on the part of Saadia to provide credit support with respect to a "Transferred Contract" or "Assumed Lease."  Both terms are defined in Section 2.6(b) of the Purchase Agreement.  Generally, they are the Debtors' contracts and leases that were to be assumed by the Debtors and assigned to Saadia as part of the sale of the business.  Pursuant to Section 2.6(h) of the Purchase Agreement, Saadia was obligated to pay all "Cure Costs" related to Transferred Contracts and Assumed Leases.  And, under Section 2.6(g), Saadia was obligated to take all actions necessary to obtain an Order from the Bankruptcy Court finding that the proposed assumption and assignment of leases and contracts satisfies the requirements of § 365 of the Bankruptcy Code.  One of the main requirements under § 365 is to provide the counterparty to the lease or contract with "adequate assurance of future performance."  *See* 11 U.S.C. §§ 365(b)(1)(C) and 365(b)(3).  Thus, a logical interpretation of "credit support" in the context of Transferred Contracts and Assumed Leases under Section 5.9 of the Purchase Agreement would be providing the counterparties to these leases and contracts with assurance that Saadia had the credit worthiness to pay the "Cure Costs" and pay the financial obligations under the leases and contracts going forward.

Debtor:     RTW Retailwinds, Inc., et al
Case No.:  20-18445 (JKS)
Caption:   **Decision and Order on Debtors' Motion to Compel Release of Funds in Escrow**

7.  Section 2.3 of the Purchase Agreement sets forth the consideration being paid by Saadia for the Debtors' business.  The purchase price includes Saadia's payment of the "Cure Costs" for the Transferred Contracts and Assumed Leases and the assumption of "Assumed Liabilities."  The definition of Assumed Liabilities includes: (a) all Liabilities under the Assumed Leases or Transferred Contracts solely to the extent such Liabilities arise from and after the Closing Date . . . (e) to undertake the obligations of (Saddia) set forth in Section 5.9 …."  These provisions reflect that the financial obligations in Section 5.9 (to replace the letters of credit) are separate from and in addition to financial obligations related to Transferred Contracts and Assumed Leases.

8.  There is a Schedule 5.9 to the Purchase Agreement which lists three letters of credit totaling $6,125,000.  (Doc. 319, p. 587).  To the extent Saadia believed that it had no obligations under Section 5.9 when it signed the Purchase Agreement, it could have left the schedule blank or inserted "None" under Schedule 5.9.  Saadia contends that even though it agreed to replace the letters of credit in the first sentence of Section 5.9 of the Purchase Agreement and then allowed a schedule of these letters of credit to be attached to the Purchase Agreement, it has no obligations under Section 5.9 because the letters of credit are not associated with Transferred Contracts or Assigned Leases.  To accept this interpretation, the Court would have to disregard the crystal-clear language of the first sentence of Section 5.9 and Schedule 5.9 entirely.

9.  But it is not clear why the second sentence of Section 5.9 is in Section 5.9 at all.  In a section devoted to letters of credit of $6,125,000 (which are not executory contracts or leases), there is a reference to credit support for Transferred Contracts and Assigned Leases

Page 6
Debtor:    RTW Retailwinds, Inc., et al
Case No.:    20-18445 (JKS)
Caption:    <u>**Decision and Order on Debtors' Motion to Compel Release of Funds in Escrow**</u>

which does not seem to belong.  The Debtors suggested at oral argument that there was a letter of credit on Schedule 5.9 that related to a real estate lease that was in place when the original Stalking Horse Purchase Agreement was being negotiated. (See Doc. 443-1)[6]. Although there was no evidence of this set forth on the record, this is a rational explanation of why the second sentence would be in Section 5.9.  And, as set forth above, there are reasons why Saadia would have to provide "credit support" in connection with the Transferred Contracts and Assumed Leases under the Purchase Agreement.

10. The Purchase Agreement is governed by New York law. The first question is whether the contract is ambiguous with respect to the question disputed by the parties. *See Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.,* 595 F. 3d 458, 465 (2d Cir. 2010).  But a contract is not ambiguous just because the parties offer different constructions of the same term. *Sayers v. Rochester Tel. Corp. Supp. Mgmt. Pension Plan,* 7 F.3d 1091, 1095 (2d Cir. 1993).  Here, considering the first sentence of Section 5.9, Schedule 5.9 and Section 2.3 of the Purchase Agreement (which sets forth obligations under the Transferred Contracts and Assumed Leases separate from Saadia's obligations under Section 5.9), it appears clear that Saadia agreed to replace the letters of credit. There is nothing that is ambiguous about this term of the agreement.

11. This does not mean that the second sentence of Section 5.9 should be ignored. To interpret the meaning of this second sentence, the Court considers canons of construction under New York law – (1) should there be an inconsistency between a specific and general provision

---

[6] Paragraph 11 of Doc. 443-1 says that one of the letters of credit attached to Schedule 5.9 of the original Stalking Horse Agreement was for Vornado 330 West 34th Street, LLC, a landlord. But this original Schedule 5.9 was not offered into evidence by the Debtors.

Page 7
Debtor:    RTW Retailwinds, Inc., et al
Case No.:  20-18445 (JKS)
Caption:   **Decision and Order on Debtors' Motion to Compel Release of Funds in Escrow**

of a contract, the specific controls; and (2) a reading of a contract should not render any portion meaningless. *See In re Energy Future Holdings Corp.,* 527 B.R. 178, 191 (Bankr. Del. 2015) (internal citations omitted).  It follows that the clear and specific language of the first sentence of Section 5.9 should control the more general and less clear provisions of the second sentence.  As to the meaning of the second sentence, it would have a logical place in Section 5.9 if there were letters of credit that provided credit support for Transferred Contracts or Assumed Leases, but there were no such letters of credit as part of the Saadia deal. It is worth noting that Saadia was the highest bidder at an auction for the Debtors' e-commerce business that was conducted according to bid procedures that were approved by the Court. (Doc. 192). The original Asset Purchase Agreement was negotiated with a "Stalking Horse Bidder" and Saadia was required to mark proposed changes to the original Asset Purchase Agreement as part of its bid. Both the original Agreement and Saadia's Purchase Agreement contained Section 5.9 – there were no changes.[7]  Again, the second sentence of Section 5.9 would have relevance to a transaction where letters of credit provided credit support for Transferred Contracts or Assumed Leases being assumed by the Stalking Horse Bidder or some other bidder – but not with Saadia. In hindsight, it would have been better if the Debtors took out the second sentence of Section 5.9 because it did not apply to the Saadia transaction. This does not mean that the first sentence of Section 5.9 and Schedule 5.9 are rendered meaningless.

12. The Court cannot disregard the clear obligation of Saadia under the first sentence of Section 5.9 based on an argument made after the Purchase Agreement was executed and approved

---

[7] Mandarino Declaration, Doc. 443-3, para. 14.

Page 8
Debtor:     RTW Retailwinds, Inc., et al
Case No.:   20-18445 (JKS)
Caption:    **Decision and Order on Debtors' Motion to Compel Release of Funds in Escrow**

by the Court. The language makes it clear that the Debtors expected Saadia to replace the letters of credit attached to Schedule 5.9. This clear commitment is not conditioned or modified by the unrelated commitment to provide credit support for Transferred Contracts or Assumed Leases.

## **CONCLUSION**

13. For the foregoing reasons, the Debtors' motion is granted. Saadia is obligated to replace the letters under Section 5.9 of the Purchase Agreement. The Debtors, Saadia, the escrow agent and any other party in interest are directed to meet and confer regarding the implementation of this Order. To the extent necessary, the Court retains jurisdiction over the interpretation and enforcement of this Order.