UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**
Bradford J. Sandler, Esq.
Paul J. Labov, Esq.
Beth E. Levine, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY  10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
bsandler@pszjlaw.com
plabov@pszjlaw.com
blevine@pszjlaw.com

James S. Carr, Esq.
Dana P. Kane, Esq.
Sean T. Wilson, Esq.
KELLEY DRYE & WARREN LLP
One Jefferson Road, Second Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
jcarr@kelleydrye.com
dkane@kelleydrye.com
swilson@kelleydrye.com

*Counsel to the Liquidation Trustee*

| | |
|---|---|
| In re: | Case No. 20-18445 (JKS) |
| RTW RETAILWINDS, INC.[1] | Chapter 11 |
| Debtor. | **Hearing Date:  June 14, 2022**<br>**Time:**          **10:00 a.m.**<br>**Judge:**        **Hon. John K. Sherwood** |

### NOTICE OF LIQUIDATION TRUSTEE'S OMNIBUS
### MOTION TO APPROVE SETTLEMENT AGREEMENTS

**PLEASE TAKE NOTICE** that on June 14, 2022 at 10:00 a.m., or as soon

thereafter as counsel may be heard, META Advisors LLC, in its capacity as liquidation trustee (the

---

[1]       The remaining Debtor in this chapter 11 case and the last four digits of the Debtor's federal tax identification
number is RTW Retailwinds, Inc. (1445).  By order and final decree entered February 22, 2021, the chapter
11 cases of the Debtor's affiliates were closed [Docket No. 844].

"Liquidation Trustee") of RTW Liquidation Trust established in the chapter 11 cases of the above-captioned debtors (collectively, the "Debtors"), shall move (the "Motion") before the Honorable John K. Sherwood, United States Bankruptcy Judge, United States Bankruptcy Court for the District of New Jersey, Courtroom 3D, 50 Walnut Street, 3rd Floor, Newark, NJ 07102,[2] for entry of an Order, substantially in the form submitted with the Motion, to approve settlement agreements with multiple parties, all as more fully set forth in the Motion.

PLEASE TAKE FURTHER NOTICE that the Motion sets forth the relevant factual bases upon which the relief requested should be granted. A proposed Order granting the relief requested in the Motion is also submitted herewith.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief requested in the Motion shall: (i) be in writing, (ii) state with particularity the basis of the objection, and (iii) be filed with the Clerk of the United States Bankruptcy Court electronically by attorneys who regularly practice before the Bankruptcy Court in accordance with the General Order Regarding Electronic Means for Filing, Signing, and Verification of Documents dated March 27, 2002 (the "General Order") and the Commentary Supplementing Administrative Procedures dated as of March 2004 (the "Supplemental Commentary") (the General Order, the Supplemental Commentary and the User's Manual for the Electronic Case Filing System can be found at www.njb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties-in-interest, on CD-ROM in Portable Document Format (PDF), and shall be served in accordance with the General Order and the Supplemental Commentary, so as to be received no later than seven (7) days before the hearing date set forth above.

---

[2]      Pursuant to this Court's Chamber procedures, in-person hearings have resumed, with the option to appear via Court Solutions in lieu of in-person participation. Please be advised that the Court has directed that parties who wish to appear via Court Solutions should submit their reservation requests to Court Solutions no later than noon on the day prior to the hearing.

**PLEASE TAKE FURTHER NOTICE** that unless objections are timely filed and

served, the Amended Motion shall be decided on the papers in accordance with D.N.J. LBR 9013-

3(d), and the relief requested may be granted without further notice or hearing.

Dated:    May 19, 2022              KELLEY DRYE & WARREN LLP


                                    */s/ James S. Carr*
                                    James S. Carr, Esq.
                                    Dana P. Kane, Esq.
                                    Sean T. Wilson, Esq.
                                    One Jefferson Road, Second Floor
                                    Parsippany, NJ 07054
                                    Telephone: (973) 503-5900
                                    Facsimile: (973) 503-5950
                                    jcarr@kelleydrye.com
                                    dkane@kelleydrye.com
                                    swilson@kelleydrye.com

                                    and

                                    Bradford J. Sandler, Esq.
                                    Paul J. Labov, Esq.
                                    Beth E. Levine, Esq.
                                    PACHULSKI STANG ZIEHL & JONES LLP
                                    780 Third Avenue, 34th Floor
                                    New York, NY  10017
                                    Telephone:  (212) 561-7700
                                    Facsimile:  (212) 561-7777
                                    bsandler@pszjlaw.com
                                    plabov@pszjlaw.com
                                    blevine@pszjlaw.com

                                    *Counsel to the Liquidation Trustee*

Bradford J. Sandler, Esq.                    James S. Carr, Esq.
Paul J. Labov, Esq.                          Dana P. Kane, Esq.
Beth E. Levine, Esq.                         Sean T. Wilson, Esq.
PACHULSKI STANG ZIEHL & JONES LLP            KELLEY DRYE & WARREN LLP
780 Third Avenue, 34th Floor                 One Jefferson Road, Second Floor
New York, NY 10017                           Parsippany, NJ 07054
Telephone: (212) 561-7700                    Telephone: (973) 503-5900
Facsimile: (212) 561-7777                    Facsimile: (973) 503-5950
bsandler@pszjlaw.com                         jcarr@kelleydrye.com
plabov@pszjlaw.com                           dkane@kelleydrye.com
blevine@pszjlaw.com                          swilson@kelleydrye.com

*Counsel to the Liquidation Trustee*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 20-18445 (JKS) |
| RTW RETAILWINDS, INC.[1] | Chapter 11 |
| Debtor. | **Hearing Date: June 14, 2022**<br>**Time:        10:00 a.m.**<br>**Judge:       Hon John K. Sherwood** |

## LIQUIDATION TRUSTEE'S OMNIBUS MOTION
## TO APPROVE SETTLEMENT AGREEMENTS

META Advisors LLC, in its capacity as Liquidation Trustee (the "Liquidation

Trustee") of the RTW Liquidation Trust established in the chapter 11 cases of RTW Retailwinds,

Inc. and its affiliated post-effective date debtors (collectively, the "Debtors"), by and through its

undersigned counsel, hereby moves this Court (the "Motion") for the entry of an order pursuant to

sections 105 and 363(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule

9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") approving

Settlement Agreements and Mutual Releases (each a "Settlement Agreement" and collectively, the

---

[1]        The remaining Debtor in this chapter 11 case and the last four digits of the Debtor's federal tax identification
number is RTW Retailwinds, Inc. (1445).  By order and final decree entered February 22, 2021, the chapter
11 cases of the Debtor's affiliates were closed [Docket No. 844].

"Settlement Agreements")[2] between the Liquidation Trustee and the following parties (each a "Transferee", collectively, "Transferees" and together with the Liquidation Trustee, the "Parties"): (i) Meta Platforms, Inc. f/k/a Facebook, Inc. ("Facebook"); (ii) Haute Fox Inc. ("Haute Fox"); (iii) Industrial Color ("Industrial Color"); (iv) Lennox National Account Services LLC ("Lennox"); (v) Staples Contract & Commercial LLC d/b/a Staple Business Advantage ("Staples"); (vi) Thinktime, LLC ("ThinkTime"); (vii) 88 International, Inc. ("88 International"); (viii) Career Group, Inc. ("Career Group"); and (ix) Like a Glove Company ("Like a Glove"). Copies of the Settlement Agreements are attached to the proposed form of order as **Exhibits 1 through 9**, respectively.  In support of this Motion, the Liquidation Trustee respectfully represents as follows:

**Jurisdiction**

1.      The Court has jurisdiction over this matter under 28 U.S.C. § 1334.  This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2).  Venue of this chapter 11 case in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested are Bankruptcy Code sections 105 and 363(b) of title 11 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules.

**Background**

**A.      General Background**

3.      On July 13, 2020 (the "Petition Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors continued to operate their businesses and manage their assets as debtors in possession pursuant to sections 1107(a) and

---

[2]      Capitalized terms not otherwise defined herein shall have the meaning given to them in the respective Settlement Agreement.

1108 of the Bankruptcy Code until the Effective Date of the Plan (each, as defined below). No trustee or examiner has been appointed in this case.

4.      In accordance with the *Order Pursuant to Fed. R. Bankr. P. 1015(b) Directing Joint Administration of Related Chapter 11 Cases* [Docket No. 65], the Debtors' cases were jointly administered pursuant to Bankruptcy Rule 1015 until the closure of all of the Debtors' cases other than the chapter 11 case of RTW Retailwinds, Inc. [see Docket No. 844].

5.      On September 4, 2020, the Court entered the *Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances and Interests, (B) Authorizing the Debtor to Enter Into and Perform Their Obligations Under the Purchase Agreement, (C) Approving Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (D) Granting Related Relief* [Docket No. 319] (the "Sale Order").

6.      On December 10, 2020, the Court entered its *Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 690] confirming the *Joint Plan of Liquidation of RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 390] (the "Plan").

7.      On December 31, 2020 (the "Effective Date"), the Plan became effective. *See Notice of (A) Entry of Order Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code and (B) The Effective Date Thereof; and (C) Certain Deadlines* [Docket No. 742] (the "Effective Date Notice).

8.      Pursuant to the Plan, the Liquidation Trustee was appointed pursuant to the terms of the *Liquidation Trust Agreement and Declaration of Trust* (the "Liquidation Trust Agreement") on the Effective Date.

3

9.     Following its appointment, and after conducting a review and analysis of the Debtors' records, the Liquidation Trustee determined that the Debtors' records reflect that Transferees each received payments from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date (as to each Transferee, respectively, the "90 Day Transfers"), which the Liquidation Trustee believes it can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550.

10.     Thereafter, the Liquidation Trustee sent correspondence to Transferees requesting payment of the 90 Day Transfers, and the Parties engaged in good faith, arms' length negotiations to resolve the matters.

### Summary of Settlement Agreements[3]

11.     As set forth in each Settlement Agreement, the primary terms are as follows:

**Facebook**

a.     Shall pay to the Liquidation Trustee the total sum of $50,000.00 on or before the deadline designated in the Settlement Agreement (the "Facebook Settlement Payment").  The Facebook Settlement Payment shall be wired in accordance with instructions to be provided by the Liquidation Trustee.

b.     Waives any and all claims that it filed or could have filed in the cases of the Debtors, including the proof of claim filed in the amount of $443,378, and any claim under Bankruptcy Code section 502(h) arising out of the Facebook Settlement Payment.

c.     Effective on the Settlement Effective Date, the Liquidation Trustee will release the Defendant Releasees solely in connection with the 90 Day Transfers and the Waived Claim.

---

[3]     The summary set forth in the Motion is only a summary.  To the extent the summary conflicts with the actual terms of the Settlement Agreements, the actual terms of the Settlement Agreements shall control.

d.      Effective on the Settlement Effective Date, the Defendant Releasees will release the Trustee Releasees solely in connection with the 90 Day Transfers.

**Haute Fox**

a.      Shall pay to the Liquidation Trustee the total sum of $15,000.00 on or before the deadline designated in the Settlement Agreement (the "Haute Fox Settlement Payment").  The Haute Fox Settlement Payment shall be wired in accordance with instructions to be provided by the Liquidation Trustee.

b.      Waives any and all claims that it filed or could have filed in the cases of the Debtors, and any claim under Bankruptcy Code section 502(h) arising out of the Haute Fox Settlement Payment.

c.      Effective on the Settlement Effective Date, the Liquidation Trustee will release the Defendant Releasees solely in connection with the 90 Day Transfers.

d.      Effective on the Settlement Effective Date, the Defendant Releasees will release the Trustee Releasees solely in connection with the 90 Day Transfers and the Waived Claim.

**Industrial Color**

a.      Defendant shall pay to the Liquidation Trustee the total sum of $17,500.00 on or before the deadline designated in the Settlement Agreement (the "Industrial Color Settlement Payment").  The Industrial Color Settlement Payment shall be wired in accordance with instructions to be provided by the Liquidation Trustee.

b.      Defendant waives any and all claims that it filed or could have filed in the cases of the Debtors, and any claim under Bankruptcy Code section 502(h) arising out of the Industrial Color Settlement Payment.

c.      Effective on the Settlement Effective Date, the Liquidation Trustee will release the Defendant Releasees solely in connection with the 90 Day Transfers.

d.      Effective on the Settlement Effective Date, the Defendant Releasees will release the Trustee Releasees solely in connection with the 90 Day Transfers and the Waived Claim.

**Lennox**

    a.    Shall pay to the Liquidation Trustee the total sum of $28,000.00 on or before the deadline designated in the Settlement Agreement (the "Lennox Settlement Payment").  The Lennox Settlement Payment shall be wired in accordance with instructions to be provided by the Liquidation Trustee.

    b.    Waives any and all claims that it filed or could have filed in the cases of the Debtors, including the proof of claim filed in the amount of $74,748.58 and any claim under Bankruptcy Code section 502(h) arising out of the Lennox Settlement Payment.

    c.    Effective on the Settlement Effective Date, the Liquidation Trustee will release the Defendant Releasees solely in connection with the 90 Day Transfers.

    d.    Effective on the Settlement Effective Date, the Defendant Releasees will release the Trustee Releasees solely in connection with the 90 Day Transfers and the Waived Claims.

**Staples**

    a.    Waives any and all claims that it filed or could have filed in the cases of the Debtors, including the proof of claim filed in the amount of $38,480.67 and any claim under Bankruptcy Code section 502(h) arising out of the Settlement Agreement.

    b.    Effective on the Settlement Effective Date, the Liquidation Trustee will release the Defendant Releasees solely in connection with the 90 Day Transfers.

    c.    Effective on the Settlement Effective Date, the Defendant Releasees will release the Trustee Releasees solely in connection with the 90 Day Transfers and the Waived Claims.

**ThinkTime**

    a.    Shall pay to the Liquidation Trustee the total sum of $57,750.00 on or before the deadline designated in the Settlement Agreement (the "ThinkTime Settlement Payment").  The ThinkTime Settlement Payment shall be wired in accordance with instructions to be provided by the Liquidation Trustee.

    b.    Waives any and all claims that it filed or could have filed in the cases of the Debtors, and any claim under Bankruptcy Code section 502(h) arising out of the ThinkTime Settlement Payment.

c.      Effective on the Settlement Effective Date, the Liquidation Trustee will release the Defendant Releasees solely in connection with the 90 Day Transfers.

d.      Effective on the Settlement Effective Date, the Defendant Releasees will release the Trustee Releasees solely in connection with the 90 Day Transfers and the Waived Claim.

## 88 International

a.      Shall pay to the Liquidation Trustee the total sum of $4,500.00 on or before the deadline designated in the Settlement Agreement (the "88 International Settlement Payment").  The 88 International Settlement Payment shall be wired in accordance with instructions to be provided by the Liquidation Trustee.

b.      Waives any and all claims that it filed or could have filed in the cases of the Debtors, and any claim under Bankruptcy Code section 502(h) arising out of the 88 International Settlement Payment.

c.      Effective on the Settlement Effective Date, the Liquidation Trustee will release the Defendant Releasees solely in connection with the 90 Day Transfers.

d.      Effective on the Settlement Effective Date, the Defendant Releasees will release the Trustee Releasees solely in connection with the 90 Day Transfers and the Waived Claim.

## Career Group

a.      Shall pay to the Liquidation Trustee the total sum of $5,000.00 on or before the deadline designated in the Settlement Agreement (the "Career Group Settlement Payment").    The Career Group Settlement Payment shall be wired in accordance with instructions to be provided by the Liquidation Trustee.

b.      Waives any and all claims that it filed or could have filed in the cases of the Debtors, and any claim under Bankruptcy Code section 502(h) arising out of the Career Group Settlement Payment.

c.      Effective on the Settlement Effective Date, the Liquidation Trustee will release the Defendant Releasees solely in connection with the 90 Day Transfers.

d.      Effective on the Settlement Effective Date, the Defendant Releasees will release the Trustee Releasees solely in connection with the 90 Day Transfers and the Waived Claim.

**Like a Glove**

a. Shall pay to the Liquidation Trustee the total sum of $7,500.00 on or before the deadline designated in the Settlement Agreement (the "Like a Glove Settlement Payment"). The Like a Glove Settlement Payment shall be wired in accordance with instructions to be provided by the Liquidation Trustee.

b. Waives any and all claims that it filed or could have filed in the cases of the Debtors, including the scheduled claim of $11,000 and any claim under Bankruptcy Code section 502(h) arising out of the Like a Glove Settlement Payment.

c. Effective on the Settlement Effective Date, the Liquidation Trustee will release the Defendant Releasees solely in connection with the 90 Day Transfers.

d. Effective on the Settlement Effective Date, the Defendant Releasees will release the Trustee Releasees solely in connection with the 90 Day Transfers and the Waived Claims.

## Relief Requested

12. By this Motion, the Liquidation Trustee seeks entry of an order approving the Settlement Agreements among the Parties which are attached as **Exhibits 1 through 9**, respectively, to the proposed form of order. The Liquidation Trustee submits that a memorandum of law under D.N.J. LBR 9013-1 is not necessary because the Motion raises no novel issue of law and the relevant authorities relied upon are set forth in the Motion.

## Basis for Relief

## Approval is Appropriate Pursuant to Bankruptcy Rule 9019

13. Section 105(a) of the Bankruptcy Code provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) has been interpreted to expressly empower bankruptcy courts with broad equitable powers to "craft flexible remedies that, while not

expressly authorized by the Code, effect the result the Code was designed to obtain." *Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003) (en banc).   Bankruptcy Rule 9019 governs the procedural prerequisites to approve a settlement, providing that:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

14.     Settlements in bankruptcy are favored as a means of minimizing litigation, expediting the administration of the bankruptcy estate, and providing for the efficient resolution of bankruptcy cases. *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996).  Bankruptcy Rule 9019 provides that on motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  In deciding whether to approve a settlement pursuant to Bankruptcy Rule 9019, the court should determine whether the compromise is fair, reasonable, and in the interests of the estates. *In re Marvel Entertainment Group, Inc.,* 222 B.R. 243, 249 (D. Del. 1998).  The decision whether to accept or reject a compromise lies within the sound discretion of the court. *In re Neshaminy Office Bldg. Assocs.*, 62 B.R. 798, 803 (E.D. Pa. 1986).

15.     In making this determination, the United States Court of Appeals for the Third Circuit has provided four criteria that a bankruptcy court should consider: (a) the probability of success in litigation; (b) the likely difficulties in collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (d) the paramount interest of the creditors. *Martin*, 91 F.3d at 393.  Courts generally defer to a trustee's business judgment when there is a legitimate business justification for the trustee's decision. *Id.* at 395.

16.     When applying the *Martin* factors to a particular motion, "the court is not supposed to have a 'mini-trial' on the merits, but should canvass the issues to see whether the settlement falls below the lowest point in the range of reasonableness." *Aetna Casualty & Surety Co. v. Jasmine, Ltd (In re Jasmine, Ltd)*, 258 B.R. 119, 123 (D.N.J. 2000) (internal quotations omitted); *see also In re TSIC, Inc.*, 393 B.R. 71, 79 (Bankr. D. Del. 2008); *In re World Health Alternatives, Inc.*, 344 B.R. 291, 296 (Bankr. D. Del. 2006). Although approval of a compromise is within the "sound discretion" of the bankruptcy court (*World Health*, 344 B.R. at 296), the court should not substitute its judgment for that of a trustee or debtor in possession. *In re Parkview Hosp.-Osteopathic Med. Ctr.*, 211 B.R. 603, 610 (Bankr. N.D. Ohio 1996). The ultimate inquiry is whether the compromise is "fair, reasonable, and in the interests of the estate." *TSIC*, 393 B.R. at 78. A court need not be convinced that a proposed settlement is the best possible settlement, but "must conclude that it is within the reasonable range of litigation possibilities." *World Health*, 344 B.R. at 296 (internal citations omitted).

17.     The Liquidation Trustee believes the Settlement Agreements are fair and reasonable and are in the best interests of the Debtors' estates and creditors, and should be approved pursuant to Bankruptcy Rule 9019. Each Settlement Agreement is the product of good-faith discussions and arms' length bargaining among the Parties. For the reasons outlined below, the Liquidation Trustee believes that the Settlement Agreements are in the best interests of the Debtors' estates.

18.     First, the Settlement Agreements resolve potential costly litigation over recovery of the 90 Day Transfers. The Settlement Agreements are favorable because the Liquidation Trust receives significant recoveries from the Transferees of cash, valuable claim waivers or both.

10

19.    The settlements also avoids any collection difficulties or delays if the Liquidation Trustee were to file a complaint and litigate the 90 Day Transfers against the Transferees, the outcome of which is uncertain and could be delayed by any appeal even assuming a favorable result to the Liquidation Trustee.  In addition, the Settlement Agreements are in the best interests of the estates because the estates receive immediate cash and/or valuable claim waivers and avoid administrative costs in pursuing litigation against the Transferees.

20.    Aside from the standards under Rule 9019, a settlement of claims and causes of action by a trustee constitutes a use of property of the estate.  *See e.g. Northview Motors, Inc. v. Chrysler Motors Corp.*, 186 F.3d 346, 350-51 (3d Cir. 1999).  If a settlement is outside of the ordinary course of business of the debtor, it requires approval of the bankruptcy court pursuant to section 363(b) of the Bankruptcy Code.  *See id.*; *see also Martin*, 91 F.3d at 395 n.2 ("Section 363 of the Code is the substantive provision requiring a hearing and court approval; Bankruptcy Rule 9019 sets forth the procedure for approving an agreement to settle or compromise a controversy.").  Courts normally defer to the trustee's business judgment so long as there is a legitimate business justification.  *See id.*; *see also Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*, 242 B.R. 147, 153 (Bankr. D. Del. 1999) (trustee need only have a "sound business purpose" to justify use of estate property pursuant to section 363(b)).

21.    Here, the Liquidation Trustee submits that approval under section 363(b) of the Bankruptcy Court is required.  The Settlement Agreements provide for, among other terms, a resolution and waiver of potential claims by the Liquidation Trustee against the Transferees.  *See Northview Motors*, 186 F.3d at 350 (settling a claim against a third party constitutes a sale of the claim under section 363 and subject to court approval).  For all the reasons set forth above, the

Liquidation Trustee, in an exercise of its sound business judgment, submits that each of the Settlement Agreements is fair, reasonable, and appropriate and should be approved by this Court.

**<u>Notice</u>**

22.     Notice of this Motion has been provided to the following parties, or their counsel, if known: (a) the Office of the United States Trustee; (b) the Transferees; and (c) all parties that have filed a renewed request for service of papers under Bankruptcy Rule 2002 pursuant to the Effective Date Notice. The Liquidation Trustee respectfully submits that such notice is sufficient under the circumstances.

WHEREFORE, the Liquidation Trustee respectfully requests that the Court enter the Proposed Order, granting the Motion and approving each of the Settlement Agreements, and such other and further relief as is just and proper.

Dated:    May 19, 2022                          KELLEY DRYE & WARREN LLP


                                                */s/ James S. Carr*
                                                James S. Carr, Esq.
                                                Dana P. Kane, Esq.
                                                Sean T. Wilson, Esq.
                                                KELLEY DRYE & WARREN LLP
                                                One Jefferson Road, Second Floor
                                                Parsippany, NJ 07054
                                                Telephone: (973) 503-5900
                                                Facsimile: (973) 503-5950
                                                jcarr@kelleydrye.com
                                                dkane@kelleydrye.com
                                                swilson@kelleydrye.com


                                                and

                                                Bradford J. Sandler, Esq.
                                                Paul J. Labov, Esq.
                                                Beth E. Levine, Esq.
                                                PACHULSKI STANG ZIEHL & JONES LLP
                                                780 Third Avenue, 34th Floor
                                                New York, NY  10017
                                                Telephone:  (212) 561-7700
                                                Facsimile:  (212) 561-7777
                                                bsandler@pszjlaw.com
                                                plabov@pszjlaw.com
                                                blevine@pszjlaw.com

                                                *Counsel to the Liquidation Trustee*

| |
|---|
| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY |

**Caption in Compliance with D.N.J. LBR 9004-1(b)**
Bradford J. Sandler, Esq.
Paul J. Labov, Esq.
Beth E. Levine, Esq.
PACHULSKI STANG ZIEHL & JONES LLP
780 Third Avenue, 34th Floor
New York, NY  10017
Telephone:  (212) 561-7700
Facsimile:  (212) 561-7777
bsandler@pszjlaw.com
plabov@pszjlaw.com
blevine@pszjlaw.com

James S. Carr, Esq.
Dana P. Kane, Esq.
Sean T. Wilson, Esq.
KELLEY DRYE & WARREN LLP
One Jefferson Road, Second Floor
Parsippany, NJ 07054
Telephone: (973) 503-5900
Facsimile: (973) 503-5950
jcarr@kelleydrye.com
dkane@kelleydrye.com
swilson@kelleydrye.com

*Counsel to the Liquidation Trustee*

In re:

RTW RETAILWINDS, INC.,[1]

                                    Debtor.

Case No. 20-18445 (JKS)

Chapter 11

**Hearing Date:    June 14, 2022**
**Time:             10:00 a.m.**
**Judge:            Hon John K. Sherwood**

## ORDER GRANTING LIQUIDATION TRUSTEE'S OMNIBUS MOTION TO APPROVE SETTLEMENT AGREEMENTS

The relief set forth on the following pages, numbered two (2) through three (3), is hereby

**ORDERED**:

---

[1]     The remaining Debtor in this chapter 11 case and the last four digits of the Debtor's federal tax identification number is RTW Retailwinds, Inc. (1445).  By order and final decree entered February 22, 2021, the chapter 11 cases of the Debtor's affiliates were closed [Docket No. 844].

Page:      2
Debtor:    RTW Retailwinds, Inc..
Case No.:  20-18445 (JKS)
Caption:   Order Granting Liquidation Trustee's Omnibus Motion to Approve Settlement
           Agreements

Upon consideration of the Liquidation Trustee's Omnibus Motion to Approve Settlement Agreements (the "Motion")[2] filed by META Advisors LLC, in its capacity as Liquidation Trustee (the "Liquidation Trustee") of the RTW  Trust established in the chapter 11 cases of the above-captioned debtors (collectively, the "Debtors") pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019, to approve each of the respective settlement agreements (each, a "Settlement Agreement") between the Liquidation Trustee and each of the Transferees; a copy of which Settlement Agreements are attached hereto as **Exhibits 1 through 9**, respectively; the Court having reviewed the Motion and the Settlement Agreements and having considered the record with respect to the Motion; the Court having found that and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and all other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that no other or further notice need be provided; and no objections to the Motion having been filed; and after due deliberation and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED THAT:

1.        The Motion is GRANTED as set forth herein.

2.        The Settlement Agreements attached hereto as **Exhibits 1 through 9** are APPROVED in their entirety pursuant to sections 105(a) and 363(b) of the Bankruptcy Code

---

[2]        Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

Page:       3
Debtor:     RTW Retailwinds, Inc..
Case No.:   20-18445 (JKS)
Caption:    Order Granting Liquidation Trustee's Omnibus Motion to Approve Settlement
            Agreements

and Bankruptcy Rule 9019.

3.      The Parties are hereby authorized to take such additional actions or

execute such additional documents as are necessary or appropriate to implement the terms of the

Settlement Agreements.

4.      Notwithstanding the possible applicability of Rules 6004, 7062, or 9014

of the Bankruptcy Rules, any other Bankruptcy Rule, this Order shall be immediately effective

and enforceable upon its entry and there shall be no stay of effectiveness or execution of this

Order.

5.      The Court shall retain exclusive jurisdiction over any and all matters

arising from or related to the implementation, interpretation, or enforcement of the Settlement

Agreements or this Order.

## **Exhibit 1**

## **Meta Platforms, Inc. f/k/a Facebook, Inc.**

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between RTW LIQUIDATION TRUST (the "Trust"), established in the chapter 11 cases of RTW Retailwinds, Inc. and its affiliates (collectively, the "Debtors")[1], by and through META Advisors LLC, solely in its capacity as Liquidation Trustee (the "Liquidation Trustee"), and not in any other capacity, on the one hand, and Meta Platforms, Inc. f/k/a Facebook, Inc. (the "Company"), on the other hand. Company and the Liquidation Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

## Background

WHEREAS, on or about July 13, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Prior to the Effective Date of the Plan, the Debtors continued to operate their businesses and managed their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, On December 11, 2020 [Docket No. 690], the Court entered its Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan"). The Plan became effective on December 31, 2020 (the "Effective Date"). (See Notice of (A) Entry of Order Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc. (4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095); Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341); Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936).

\

and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code; (B) The Effective Date

Thereof; and (C) Certain Deadlines [Docket No. 742].); and

WHEREAS, the Liquidation Trustee was duly appointed pursuant to the terms of

the Plan, Liquidating Trust Agreement and Declaration of Trust on the Effective Date. Per

Section 3.2.10 of the Liquidation Trust Agreement, the Liquidation Trustee has the power to

review, reconcile, prosecute, enforce, collect, compromise, settle, abandon or elect not to pursue

all Retained Causes of Action, including but not limited to, all Avoidance Actions.

WHEREAS, the Debtors and Company had a business relationship prior to the

Petition Date; and

WHEREAS, the Debtors' records reflect that Company received payments from

the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

(the "90 Day Transfers"), which the Liquidation Trustee has asserted that it can avoid and

recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections

547 and 550, and the Company disputes; and

WHEREAS, the Liquidation Trustee sent a letter dated January 10, 2022 (the

"Demand Letter") to Company requesting payment of the 90 Day Transfers, and the Parties have

engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.      **Recitals.**  The recitals set forth above are incorporated herein by

reference.

2.      **Settlement Amount.**  Upon execution of this Settlement Agreement,

Company shall pay to "RTW LIQUIDATION TRUST" the sum of Fifty Thousand Dollars (U.S.

$50,000.00) (the "Settlement Payment") within thirty (30) days after execution of this Settlement

Agreement by all parties, provided there is no change to the completed and signed IRS Form W9

or the wire transfer instructions for RTW LIQUIDATION TRUST provided to the Company for

review and approval in connection with the execution and delivery of this Settlement

Agreement).  The Settlement Payment shall be wired in accordance with instructions provided by

the Liquidation Trustee. If the Bankruptcy Court does not approve the settlement set forth in this

Agreement, then Liquidating Trustee will return to Company the Settlement Payment not later

than 10 days after an Order denying approval of the Settlement Agreement becomes a Final

Order.

        3.        **Settlement Effective Date.**  The effective date of this Settlement

Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the

Settlement Payment, and (iii) entry of an order of the Bankruptcy Court approving the Settlement

Agreement (the "Settlement Effective Date").

        4.        **Claims Waiver.**  Effective on the Settlement Effective Date, Company

waives any and all claims that it filed or could have filed in the cases of the Debtors, including

the proof of claim filed in the amount of $443,378, and any claim under Bankruptcy Code

section 502(h) arising out of the Settlement Payment (the "Waived Claims").  For the avoidance

of doubt, counsel for the Company will not be required to submit a Withdrawal of such filed

proof of claim in the Bankruptcy Case.

        5.        **Liquidation Trustee's Limited Release.**  Effective on the Settlement

Effective Date, the Liquidation Trustee, solely in its capacity as Liquidation Trustee of the

Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and

unconditionally, fully, finally and forever waived, released, acquitted and discharged Company,

its directors, employees, officers and the successors and assigns of any of them (collectively, the

"Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs,

debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties,

covenants, contracts, controversies, agreements, promises, variances, trespasses, damages,

judgments, executions and demands whatsoever, of whatever kind or nature, whether known or

unknown, suspected or unsuspected, in law or equity, which the Liquidation Trustee has, had,

may have, or may claim to have against the Defendant Releasees that is the subject of or related

to the Demand Letter or the Waived Claims.

6.    **Company's Limited Release.**    Effective on the Settlement Effective Date,

the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally

and forever waived, released, acquitted and discharged the Liquidation Trustee, the Debtors and

their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors,

employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them

(collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of

action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings,

bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances,

trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature,

whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant

Releasees has, had, may have, or may claim to have against any of the Trustee Releasees that is

the subject of or related to the Demand Letter or the Waived Claims.

7.    **No Admissions.**    This Settlement Agreement is not and shall not in any

way be construed as an admission by the Parties of any allegations made in connection with the

Demand Letter.

8.      **Expenses.**  The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the subject of or matters related to the Demand Letter, the Waived Claims and this Settlement Agreement, including but not limited to the Liquidating Trustee's 9019 motion to be made by the Liquidating Trustee in accordance with Section 11 below.  In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

9.      **Severability.**  The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

10.     **Miscellaneous.**

(a)     Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)     Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things

reasonably necessary or appropriate in conjunction with the performance of each of the Parties'
respective obligations hereunder.

(c)     No provision of this Settlement Agreement is intended to confer any
rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the
Parties hereto and their respective successors.

(d)     This Settlement Agreement shall be governed by and construed in
accordance with the law of the State of New Jersey without regard to any choice of law
provisions.

(e)     This Settlement Agreement may be signed in counterpart originals
and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)     The United States Bankruptcy Court for the District of New Jersey
shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with
respect to any disputes arising from or related to, or other actions to interpret, administer or
enforce the terms and provisions of, this Settlement Agreement.

(g)     Any statute or period of limitations, statutes of repose, or other time-
based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise
(including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time
bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the
Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or
extend the time for filing any claim that is now time barred or barred by any applicable statute or
period of limitations, statutes of repose, or other time-related defense as of the date this
Settlement Agreement is executed as set forth below.

(h)      Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)      In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)      The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)      This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)      This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)    The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

(n)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[*balance of page left intentionally blank*]

11. **Bankruptcy Court Approval.**  Promptly following the Parties' execution of this Agreement, the Liquidation Trustee shall draft a motion seeking approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019 and provide a copy of the same to the Company for its review and approval before filing with the Bankruptcy Court.  Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated: <u>April 21, 2022</u>

RTW LIQUIDATION TRUST, by and through META Advisors LLC, solely in its capacity as the Liquidation Trustee of RTW Retail Winds, Inc. et al

By:_____
     Grace Marie Codispoti,
     Its Chief Operating Officer

Dated: _____May 4_____, 2022

META PLATFORMS, INC. f/k/a FACEBOOK, INC.

By:_Allison C. Stanton_____
Name: _Allison Stanton, Director & Associate General Counsel_
Title: _____

**<u>Exhibit 2</u>**

**<u>Haute Fox, Inc.</u>**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is

entered into by and between META Advisors LLC, solely in its capacity as Liquidation Trustee

(the "Liquidation Trustee") of the RTW Liquidation Trust (the "Trust"), established in the

chapter 11 cases of RTW Retailwinds, Inc. and its affiliates (collectively, the "Debtors")[1], and

not in any other capacity, on the one hand, and Haute Fox, Inc. (the "Company"), on the other

hand. Company and the Liquidation Trustee may be referenced herein collectively as the

"Parties" and/or each as a "Party."

### Background

WHEREAS, on or about July 13, 2020 (the "Petition Date"), each of the Debtors

filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Prior to the

Effective Date of the Plan, the Debtors continued to operate their businesses and managed their

assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

and

WHEREAS, On December 11, 2020 [Docket No. 690], the Court entered its

Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Plan of Liquidation of

RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code

(the "Plan"). The Plan became effective on December 31, 2020 (the "Effective Date"). (See

Notice of (A) Entry of Order Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as
applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc.
(4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095);
Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341);
Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936).

and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code; (B) The Effective Date

Thereof; and (C) Certain Deadlines [Docket No. 742].); and

      WHEREAS, the Liquidation Trustee was duly appointed pursuant to the terms of

the Plan, Liquidating Trust Agreement and Declaration of Trust on the Effective Date. Per

Section 3.2.10 of the Liquidation Trust Agreement, the Liquidation Trustee has the power to

review, reconcile, prosecute, enforce, collect, compromise, settle, abandon or elect not to pursue

all Retained Causes of Action, including but not limited to, all Avoidance Actions.

      WHEREAS, the Debtors and Company had a business relationship prior to the

Petition Date; and

      WHEREAS, the Debtors' records reflect that Company received payments from

the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

(the "90 Day Transfers"), which the Liquidation Trustee has asserted that it can avoid and

recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections

547 and 550, and the Company disputes; and

      WHEREAS, the Liquidation Trustee sent a letter to Company requesting payment

of the 90 Day Transfers, and the Parties have engaged in good faith, arms' length negotiations to

resolve the matter; and

      NOW THEREFORE, for good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, the Parties hereby agree that:

      1.    **Recitals.** The recitals set forth above are incorporated herein by

reference.

      2.    **Settlement Amount.** Upon execution of this Settlement Agreement,

Company shall pay to the Liquidation Trustee the sum of Fifteen Thousand Dollars (U.S.

DOCS_LA:342061.1 73215/003

$15,000.00) (the "Settlement Payment") on or before March 1, 2022. The Settlement Payment shall be wired in accordance with instructions provided by the Liquidation Trustee.

3.  **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of an order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

4.  **Claims Waiver.** Effective on the Settlement Effective Date, Company waives any and all claims that it could have file in the cases of the Debtors under Bankruptcy Code section 502(h) arising out of the Settlement Payment (the "Waived Claim").

5.  **Liquidation Trustee's Limited Release.** Effective on the Settlement Effective Date, the Liquidation Trustee, solely in its capacity as Liquidation Trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its directors, employees, officers and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Liquidation Trustee has, had, may have, or may claim to have against the Defendant Releasees solely in connection with the 90 Day Transfers.

6.  **Company's Limited Release.** Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally

and forever waived, released, acquitted and discharged the Liquidation Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees solely in connection with the 90 Day Transfers and the Waived Claim.

7.    **No Admissions.** This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfers.

8.    **Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the 90 Day Transfers, the Waived Claim and this Settlement Agreement. In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

9.    **Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality,

validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

10.    **Miscellaneous.**

(a)    Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)    The United States Bankruptcy Court for the District of New Jersey shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with

respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)    Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)    Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights

6

and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)    The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)    This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)    This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)    The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

(n)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

*[balance of page left intentionally blank]*

11.    **Bankruptcy Court Approval.**  Promptly following the Parties' execution of this

Agreement, the Liquidation Trustee shall move for approval of this Agreement by the

Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and unless the

Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect.

        IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s)

set forth below:

ACCEPTED AND AGREED TO BY:

Dated: _____2/7_____, 2022                    Dated: __2 / 7__, 2022

META Advisors LLC, solely in its capacity as the        HAUTE FOX, INC.
Liquidation Trustee of RTW Retail Winds, Inc.
et al

By: _Grace Marie Codispoti_                    By: _____
        Grace Marie Codispoti,
        Its Chief Operating Officer                Name: JUN IM
                                Title: **PRESIDENT**

**<u>Exhibit 3</u>**

**<u>Industrial Color, Inc.</u>**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between META Advisors LLC, solely in its capacity as Liquidation Trustee (the "Liquidation Trustee") of the RTW Liquidation Trust (the "Trust"), established in the chapter 11 cases of RTW Retailwinds, Inc. and its affiliates (collectively, the "Debtors"), and not in any other capacity, on the one hand, and Industrial Color, Inc. (the "Company"), on the other hand. Company and the Liquidation Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about July 13, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). Prior to the Effective Date of the Plan, the Debtors continued to operate their businesses and managed their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, on December 11, 2020 [Docket No. 690], the Bankruptcy Court entered its Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan"). The Plan became effective on December 31, 2020 (the "Effective Date"). (See Notice of (A) Entry of Order Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code; (B) The Effective Date Thereof; and (C) Certain Deadlines [Docket No. 742].); and

WHEREAS, the Liquidation Trustee was duly appointed pursuant to the terms of the Plan, Liquidating Trust Agreement and Declaration of Trust on the Effective Date. Per Section 3.2.10 of the Liquidation Trust Agreement, the Liquidation Trustee has the power to review, reconcile, prosecute, enforce, collect, compromise, settle, abandon or elect not to pursue all Retained Causes of Action, including, but not limited to, all Avoidance Actions.

WHEREAS, the Debtors and Company had a business relationship prior to the Petition Date; and

WHEREAS, the Debtors' records reflect that Company received payments from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date (the "90 Day Transfers"), which the Liquidation Trustee has asserted that it can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, which the Company disputes; and

WHEREAS, the Liquidation Trustee sent a letter to Company requesting payment of the 90 Day Transfers, and the Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1. **Recitals.**  The recitals set forth above are incorporated herein by reference.

2. **Settlement Amount.**  Upon execution of this Settlement Agreement, Company shall pay to the Liquidation Trustee the sum of Seventeen Thousand Five Hundred Dollars (U.S. $17,500.00) (the "Settlement Payment") on or before May 20, 2022.  The Settlement Payment shall be wired in accordance with instructions provided by the Liquidation Trustee and shall be held in escrow by the Liquidation Trustee pending the occurrence of the Settlement Effective Date (as defined below).

3. **Settlement Effective Date.**  The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of a final, non-appealable order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

4. **Claims Waiver.**  Upon the occurrence of the Settlement Effective Date, Company waives any and all claims that it could have filed in the Debtors' cases under Bankruptcy Code section 502(h) arising out of the Settlement Payment (the "Waived Claim").

5. **Liquidation Trustee's Limited Release.**  Upon the occurrence of the Settlement Effective Date, the Liquidation Trustee, solely in its capacity as Liquidation Trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, and its parents, subsidiaries and affiliates, and each of their past or present directors, officers, employees, attorneys, accountants, and financial advisors, and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements,

promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or in equity, which the Liquidation Trustee has, had, may have, or may claim to have against any of the Defendant Releasees solely based upon or in any way related to the 90 Day Transfers and the Waived Claim.

**6. Company's Limited Release.** Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Liquidation Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees solely based upon or in any way related to the 90 Day Transfers and the Waived Claim.

**7. No Admissions.** This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfers.

**8. Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees incurred in connection with the 90 Day Transfers, the Waived Claim and this Settlement Agreement. However, in the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

**9. Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

**10. Miscellaneous.**

(a) Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b) Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c) No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d) This Settlement Agreement shall be governed by and construed in accordance with the law of the State of New Jersey without regard to any choice of law provisions.

(e) This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f) The Bankruptcy Court shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g) Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the 90 Day Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h) Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph

shall survive execution of this Settlement Agreement.

and warrants, for itself, that: (a) it does so knowingly and voluntarily, each of the Parties represents acknowledges its legal rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j) The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k) This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l) This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m) The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[*balance of page left intentionally blank*]□

11. **Bankruptcy Court Approval.** Promptly following the Parties' execution of this Settlement Agreement, the Liquidation Trustee shall move for approval of this Settlement Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019. Until and unless the Bankruptcy Court enters an order of approval, this Settlement Agreement shall have no binding effect. In the event this Settlement Agreement is not approved by the Bankruptcy Court for any reason within 90 days of the execution of this Settlement Agreement by all Parties, then the Liquidation Trustee shall return the Settlement Payment to Company within seven business days after entry of an order by the Bankruptcy Court not approving this Settlement Agreement, at which time the Parties shall be restored to the same position they were in immediately prior to the execution of this Settlement Agreement without waiver of any rights, claims, defenses or remedies, except that above paragraph 10(g) shall apply to preclude Company from asserting that any claim asserted by the Liquidating Trustee is time-barred.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated: ___5/9_____, 2022        Dated: _5/9_____, 2022

META Advisors LLC, solely in its capacity as the        INDUSTRIAL COLOR, INC.
Liquidation Trustee of RTW Retail Winds, Inc.
et al

By: _Grace Marie Codispoti_           By: _D. White_
    Grace Marie Codispoti,             Name: _Devin White_
    Its Chief Operating Officer        Title: _CFO-COO_

4867-4131-6637.1 DOCS_LA:342061.1 73215/003

## RTW LIQUIDATION TRUST WIRE INSTRUCTIONS

Bank Name: U.S. Bank
ABA No.: 073000545
Account Name: RTW Liquidation Trust
        3 World Trade Center
        175 Greenwich Street
        New York, NY 10007
Phone Number: 212-808-7531
Account No.: 196477017145
Bank branch address:  P.O. Box 1800, St. Paul, MN 55101-0800

**<u>Exhibit 4</u>**

**<u>Lennox National Account Services LLC</u>**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between META Advisors LLC, solely in its capacity as Liquidation Trustee (the "Liquidation Trustee") of the RTW Liquidation Trust (the "Trust"), established in the chapter 11 cases of RTW Retailwinds, Inc. and its affiliates (collectively, the "Debtors")[1], and not in any other capacity, on the one hand, and Lennox National Account Services LLC (the "Company"), on the other hand.  Company and the Liquidation Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about July 13, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Prior to the Effective Date of the Plan, the Debtors continued to operate their businesses and managed their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, On December 11, 2020 [Docket No. 690], the Court entered its Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan"). The Plan became effective on December 31, 2020 (the "Effective Date"). (See Notice of (A) Entry of Order Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc. (4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095); Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341); Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936).

and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code; (B) The Effective Date

Thereof; and (C) Certain Deadlines [Docket No. 742].); and

WHEREAS, the Liquidation Trustee was duly appointed pursuant to the terms of

the Plan, Liquidating Trust Agreement and Declaration of Trust on the Effective Date. Per

Section 3.2.10 of the Liquidation Trust Agreement, the Liquidation Trustee has the power to

review, reconcile, prosecute, enforce, collect, compromise, settle, abandon or elect not to pursue

all Retained Causes of Action, including but not limited to, all Avoidance Actions.

WHEREAS, the Debtors and Company had a business relationship prior to the

Petition Date; and

WHEREAS, the Debtors' records reflect that Company received payments from

the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

of $115,521.54 (the "90 Day Transfers"), which the Liquidation Trustee has asserted that it can

avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy

Code sections 547 and 550, and the Company disputes; and

WHEREAS, the Liquidation Trustee sent a letter dated January 10, 2022 to

Company requesting payment of the 90 Day Transfers, and the Parties have engaged in good

faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.    **Recitals.**  The recitals set forth above are incorporated herein by

reference.

2.    **Settlement Amount.**  Upon execution of this Settlement Agreement,

Company shall pay to the Liquidation Trustee the sum of Twenty Eight Thousand Dollars (U.S.

2

$28,000.00) (the "Settlement Payment") on or before March 21, 2022.  The Settlement Payment

shall be wired in accordance with instructions provided by the Liquidation Trustee. If the

Bankruptcy Court does not approve the settlement set forth in this Agreement, then Liquidating

Trustee will return to Company the payment of $ 28,000.00 not later than 10 days after an Order

denying approval of the Settlement Agreement becomes a Final Order.

3.      **Settlement Effective Date.**  The effective date of this Settlement

Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the

Settlement Payment, and (iii) entry of an order of the Bankruptcy Court approving the Settlement

Agreement (the "Settlement Effective Date").

4.      **Claims Waiver.**  Effective on the Settlement Effective Date, Company

waives any and all claims that it filed or could have filed in the cases of the Debtors, including

the proof of claim filed in the amount of $74,748.58, and any claim under Bankruptcy Code

section 502(h) arising out of the Settlement Payment (the "Waived Claims").

5.      **Liquidation Trustee's Limited Release.**  Effective on the Settlement

Effective Date, the Liquidation Trustee, solely in its capacity as Liquidation Trustee of the

Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and

unconditionally, fully, finally and forever waived, released, acquitted and discharged Company,

its directors, employees, officers and the successors and assigns of any of them (collectively, the

"Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs,

debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties,

covenants, contracts, controversies, agreements, promises, variances, trespasses, damages,

judgments, executions and demands whatsoever, of whatever kind or nature, whether known or

unknown, suspected or unsuspected, in law or equity, which the Liquidation Trustee has, had,

DOCS_LA:342489.1 73215/003

may have, or may claim to have against the Defendant Releasees solely in connection with the 90 Day Transfers.

6.      **Company's Limited Release.**  Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Liquidation Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees solely in connection with the 90 Day Transfers and the Waived Claims.

7.      **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfers.

8.      **Expenses.**  The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the 90 Day Transfers, the Waived Claim and this Settlement Agreement.  In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved

4

or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

9.      **Severability.**  The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

10.      **Miscellaneous.**

(a)      Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)      Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)      No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

5

(d)     This Settlement Agreement shall be governed by and construed in accordance with the law of the State of New Jersey without regard to any choice of law provisions.

(e)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)     The United States Bankruptcy Court for the District of New Jersey shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)     Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

6

(i)      In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)      The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)      This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)      This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)      The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

DOCS_LA:342489.1 73215/003

(n)    The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[*balance of page left intentionally blank*]

8

11.     **Bankruptcy Court Approval.**  Promptly following the Parties' execution of this

Agreement, the Liquidation Trustee shall move for approval of this Agreement by the

Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and unless the

Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s)

set forth below:

ACCEPTED AND AGREED TO BY:

Dated: _____2/28_____, 2022

META Advisors LLC, solely in its capacity as the
Liquidation Trustee of RTW Retail Winds, Inc.
et al

By: _Grace Marie Codispoti_____
        Grace Marie Codispoti,
        Its Chief Operating Officer

Dated: ___2/25_____, 2022

LENNOX NATIONAL ACCOUNT
SERVICES LLC

By:_____

Name: _Mark Tamim_____
Title: _Finance Director_____

9

**Exhibit 5**

**Staples Contract & Commercial LLC d/b/a Staples Business Advantage**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between META Advisors LLC, solely in its capacity as Liquidation Trustee (the "Liquidation Trustee") of the RTW Liquidation Trust (the "Trust"), established in the chapter 11 cases of RTW Retailwinds, Inc. and its affiliates (collectively, the "Debtors")[1], and not in any other capacity, on the one hand, and Staples Contract & Commercial LLC d/b/a Staples Business Advantage (the "Company"), on the other hand. Company and the Liquidation Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about July 13, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Prior to the Effective Date of the Plan, the Debtors continued to operate their businesses and managed their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, On December 11, 2020 [Docket No. 690], the Court entered its Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan"). The Plan became effective on December 31, 2020 (the "Effective Date"). (See Notice of (A) Entry of Order Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc. (4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095); Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341); Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936).

and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code; (B) The Effective Date

Thereof; and (C) Certain Deadlines [Docket No. 742].); and

      WHEREAS, the Liquidation Trustee was duly appointed pursuant to the terms of

the Plan, Liquidating Trust Agreement and Declaration of Trust on the Effective Date. Per

Section 3.2.10 of the Liquidation Trust Agreement, the Liquidation Trustee has the power to

review, reconcile, prosecute, enforce, collect, compromise, settle, abandon or elect not to pursue

all Retained Causes of Action, including but not limited to, all Avoidance Actions.

      WHEREAS, the Debtors and Company had a business relationship prior to the

Petition Date; and

      WHEREAS, Company filed a proof of claim for a general unsecured claim in the

amount of $38,480.67, which was designated as Claim No. 190 by the claims agent (the

"Claim");

      WHEREAS, the Debtors' records reflect that Company received payments from

the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

(the "90 Day Transfers"), which the Liquidation Trustee has asserted that it can avoid and

recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections

547 and 550, and the Company disputes; and

      WHEREAS, the Liquidation Trustee sent a letter to Company requesting payment

of the 90 Day Transfers, and the Parties have engaged in good faith, arms' length negotiations to

resolve the matter; and

      NOW THEREFORE, for good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.        **Recitals.**  The recitals set forth above are incorporated herein by reference.

2.        **Settlement Effective Date.**  The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties and (ii) entry of an order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

3.        **Claims Waiver.**  Effective on the Settlement Effective Date, Company waives any and all claims that it filed or could have filed in these bankruptcy cases, including the Claim and any claim under Bankruptcy Code section 502(h) arising out of this Settlement Agreement (the "Waived Claims").

4.        **Liquidation Trustee's Limited Release.**  Effective on the Settlement Effective Date, the Liquidation Trustee, solely in its capacity as Liquidation Trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its parent Staples, Inc., and each of their respective directors, employees, officers and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Liquidation Trustee has, had, may have, or may claim to have against the Defendant Releasees solely in connection with the 90 Day Transfers.

3

5.      **Company's Limited Release.**   Effective on the Settlement Effective Date,
the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally
and forever waived, released, acquitted and discharged the Trust, the Liquidation Trustee, the
Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial
advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and
assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner
of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money,
accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements,
promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of
whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity,
which the Defendant Releasees has, had, may have, or may claim to have against any of the
Trustee Releasees solely in connection with the 90 Day Transfers and the Waived Claims.

6.      **No Admissions.**   This Settlement Agreement is not and shall not in any
way be construed as an admission by the Parties of any allegations made in connection with the
90 Day Transfers.

7.      **Expenses.**   The Parties shall bear their own costs, expenses, and attorneys'
fees incurred to date in connection with the 90 Day Transfers, the Waived Claims and this
Settlement Agreement, as well as any costs, expenses, and attorneys' fees that may be incurred in
seeking court approval for this Settlement Agreement pursuant to section 10 below.  In the event
of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing
Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and
out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in
connection with such action or proceeding, as determined by the Court.

4

8.      **Severability.**  The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

9.      **Miscellaneous.**

(a)     Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)     Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

(d)     This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

5

(f)     The United States Bankruptcy Court for the District of New Jersey shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)     Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the 90 Day Transfers is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)     In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to

6

making an informed judgment concerning the Settlement Agreement, and (d) it has conducted

such investigation as it or its counsel deemed appropriate regarding the settlement and its rights

and asserted rights in connection with the matters that are the subject of the Settlement

Agreement.

(j)    The Parties acknowledge that this Settlement Agreement constitutes

the entire agreement between the Parties with respect to the subject matter hereof, and all prior

agreements, negotiations and understandings with respect to the subject matter hereof are

canceled and superseded by this Settlement Agreement.

(k)    This Settlement Agreement shall not be modified, altered, amended

or vacated without the written consent of all parties hereto or order of the Court.

(l)    This Settlement Agreement shall inure to the benefit of and be

binding upon the successors and assigns of the Parties hereto.

(m)    The Parties each agree to indemnify the other for any and all costs

incurred as a result of any breach of any representation, warranty, or covenant set forth in this

Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees

and expenses.

(n)    The headings of all sections of this Settlement Agreement are

inserted solely for the convenience of reference and are not a part of and are not intended to

govern, limit, or aid in the construction or interpretation of any term or provision hereof.

*[balance of page left intentionally blank]*

10.    **Bankruptcy Court Approval.**  Promptly following the Parties' execution of this

Agreement, the Liquidation Trustee shall move for approval of this Agreement by the

Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and unless the

Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s)

set forth below:

ACCEPTED AND AGREED TO BY:

Dated:  February 8      , 2022

META Advisors LLC, solely in its capacity as the
Liquidation Trustee of RTW Retail Winds, Inc.
et al

By: _Grace Marie Codispoti_
        Grace Marie Codispoti,
        Its Chief Operating Officer

Dated: February 8 , 2022

STAPLES CONTRACT &
COMMERCIAL LLC D/B/A STAPLES
BUSINESS ADVANTAGE

By: _Kevin Jones_
Name: Kevin V. Jones
Title: Sr. Company Counsel

8

**<u>Exhibit 6</u>**

**<u>ThinkTime, LLC</u>**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between META Advisors LLC, solely in its capacity as Liquidation Trustee (the "Liquidation Trustee") of the RTW Liquidation Trust (the "Trust"), established in the chapter 11 cases of RTW Retailwinds, Inc. and its affiliates (collectively, the "Debtors")[1], and not in any other capacity, on the one hand, and ThinkTime, LLC (the "Company"), on the other hand. Company and the Liquidation Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about July 13, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Prior to the Effective Date of the Plan, the Debtors continued to operate their businesses and managed their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, On December 11, 2020 [Docket No. 690], the Court entered its Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan"). The Plan became effective on December 31, 2020 (the "Effective Date"). (See Notice of (A) Entry of Order Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc. (4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095); Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341); Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936).

and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code; (B) The Effective Date

Thereof; and (C) Certain Deadlines [Docket No. 742].); and

      WHEREAS, the Liquidation Trustee was duly appointed pursuant to the terms of

the Plan, Liquidating Trust Agreement and Declaration of Trust on the Effective Date. Per

Section 3.2.10 of the Liquidation Trust Agreement, the Liquidation Trustee has the power to

review, reconcile, prosecute, enforce, collect, compromise, settle, abandon or elect not to pursue

all Retained Causes of Action, including but not limited to, all Avoidance Actions.

      WHEREAS, the Debtors and Company had a business relationship prior to the

Petition Date; and

      WHEREAS, the Debtors' records reflect that Company received payments from

the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

of $115,521.54 (the "90 Day Transfers"), which the Liquidation Trustee has asserted that it can

avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy

Code sections 547 and 550, and the Company disputes; and

      WHEREAS, the Liquidation Trustee sent a letter dated January 10, 2022 to

Company requesting payment of the 90 Day Transfers, and the Parties have engaged in good

faith, arms' length negotiations to resolve the matter; and

      NOW THEREFORE, for good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, the Parties hereby agree that:

      1.    **Recitals.**  The recitals set forth above are incorporated herein by

reference.

      2.    **Settlement Amount.**  Within three (3) business days after the entry of an

order of the Bankruptcy Court approving the Settlement Agreement, Company shall pay to the

2

Liquidation Trustee the sum of Fifty-Seven Thousand Seven Hundred and Fifty Dollars (U.S. $57,750.00) (the "Settlement Payment").  The Settlement Payment shall be wired in accordance with instructions provided by the Liquidation Trustee.

       3.      **Settlement Effective Date.**  The effective date of this Settlement Agreement and all of its terms (the "Settlement Effective Date") shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of an order of the Bankruptcy Court approving the Settlement Agreement.

       4.      **Claims Waiver.**  Effective on the Settlement Effective Date, Company waives any claim that it could file under Bankruptcy Code section 502(h) arising out of the Settlement Payment (the "Waived Claim").

       5.      **Liquidation Trustee's Limited Release.**  Effective on the Settlement Effective Date, the Liquidation Trustee, solely in its capacity as Liquidation Trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its directors, employees, officers and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Liquidation Trustee has, had, may have, or may claim to have against the Defendant Releasees solely in connection with the 90 Day Transfers.

6.    **Company's Limited Release.**  Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Liquidation Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees solely in connection with the 90 Day Transfers and the Waived Claim.

7.    **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfers.

8.    **Expenses.**  The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the 90 Day Transfers, the Waived Claim and this Settlement Agreement.  In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

4

9.     **Severability.**  The Parties agree that if any provision of this Settlement

Agreement is determined by a court of competent jurisdiction to be illegal, invalid or

unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality,

validity and enforceability of the remaining provisions shall not be affected by a provision of this

Settlement Agreement that is illegal, invalid, or unenforceable.

10.    **Miscellaneous.**

(a)    Neither this Settlement Agreement, nor any statement made or

action taken in connection with the negotiation of this Settlement Agreement, shall be offered or

received in evidence or in any way referred to in any legal action or administrative proceeding

among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and

to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to

seek damages or injunctive relief in connection therewith.

(b)    Each of the Parties hereto shall execute and deliver any and all

additional papers, documents and other assurances, and shall do any and all acts and things

reasonably necessary or appropriate in conjunction with the performance of each of the Parties'

respective obligations hereunder.

(c)    No provision of this Settlement Agreement is intended to confer any

rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the

Parties hereto and their respective successors.

(d)    This Settlement Agreement shall be governed by and construed in

accordance with the law of the State of New Jersey without regard to any choice of law

provisions.

5

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)    The United States Bankruptcy Court for the District of New Jersey shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)    Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)    Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i)    In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard

6

to the Settlement Agreement, other than any written representations and agreements contained

herein, (c) it has had available to it such information as it or its counsel considered necessary to

making an informed judgment concerning the Settlement Agreement, and (d) it has conducted

such investigation as it or its counsel deemed appropriate regarding the settlement and its rights

and asserted rights in connection with the matters that are the subject of the Settlement

Agreement.

(j)     The Parties acknowledge that this Settlement Agreement constitutes

the entire agreement between the Parties with respect to the subject matter hereof, and all prior

agreements, negotiations and understandings with respect to the subject matter hereof are

canceled and superseded by this Settlement Agreement.

(k)     This Settlement Agreement shall not be modified, altered, amended

or vacated without the written consent of all parties hereto or order of the Court.

(l)     This Settlement Agreement shall inure to the benefit of and be

binding upon the successors and assigns of the Parties hereto.

(m)    The Parties each agree to indemnify the other for any and all costs

incurred as a result of any breach of any representation, warranty, or covenant set forth in this

Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees

and expenses.

(n)     The headings of all sections of this Settlement Agreement are

inserted solely for the convenience of reference and are not a part of and are not intended to

govern, limit, or aid in the construction or interpretation of any term or provision hereof.

11.     **Bankruptcy Court Approval.** Promptly following the Parties' execution of this

Agreement, the Liquidation Trustee shall move for approval of this Agreement by the

Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and unless the

Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect.

*[balance of page left intentionally blank]*

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s)

set forth below:

ACCEPTED AND AGREED TO BY:

Dated: _____ April 7 ____, 2022          Dated: _4 - 6 - 2022__, 2022

META Advisors LLC, solely in its capacity as the          THINKTIME LLC
Liquidation Trustee of RTW Retail Winds, Inc.
et al

By: _Grace Marie Codispoti_____          By: _____
      Grace Marie Codispoti,
      Its Chief Operating Officer          Name: _Joel Live t_____
                         Title: _Managing Partner_____

**<u>Exhibit 7</u>**

**<u>88 International, Inc.</u>**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between META Advisors LLC, solely in its capacity as Liquidation Trustee (the "Liquidation Trustee") of the RTW Liquidation Trust (the "Trust"), established in the chapter 11 cases of RTW Retailwinds, Inc. and its affiliates (collectively, the "Debtors"), and not in any other capacity, on the one hand, and 88 International, Inc. (the "Company"), on the other hand. Company and the Liquidation Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about July 13, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). Prior to the Effective Date of the Plan, the Debtors continued to operate their businesses and managed their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, On December 11, 2020 [Docket No. 690], the Bankruptcy Court entered its Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan"). The Plan became effective on December 31, 2020 (the "Effective Date"). (See Notice of (A) Entry of Order Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code; (B) The Effective Date Thereof; and (C) Certain Deadlines [Docket No. 742].); and

WHEREAS, the Liquidation Trustee was duly appointed pursuant to the terms of the Plan, Liquidating Trust Agreement and Declaration of Trust on the Effective Date. Per Section 3.2.10 of the Liquidation Trust Agreement, the Liquidation Trustee has the power to review, reconcile, prosecute, enforce, collect, compromise, settle, abandon or elect not to pursue all Retained Causes of Action, including but not limited to, all Avoidance Actions.

WHEREAS, the Debtors and Company had a business relationship prior to the Petition Date; and

WHEREAS, the Debtors' records reflect that Company received payments from the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date (the "90 Day Transfers"), which the Liquidation Trustee has asserted that it can avoid and recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections 547 and 550, which the Company disputes; and

WHEREAS, the Liquidation Trustee sent a letter to Company requesting payment of the 90 Day Transfers, and the Parties have engaged in good faith, arms' length negotiations to resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1. **Recitals.** The recitals set forth above are incorporated herein by reference.

2. **Settlement Amount.** Upon execution of this Settlement Agreement, Company shall pay to the Liquidation Trustee the sum of Four Thousand Five Hundred Dollars (U.S. $4,500.00) (the "Settlement Payment") on or before April 1, 2022. The Settlement Payment shall be wired in accordance with instructions provided by the Liquidation Trustee and shall be held in escrow by the Liquidation Trustee pending the occurrence of the Settlement Effective Date (as defined below).

3. **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of a final, non-appealable order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

4. **Claims Waiver.** Upon the occurrence of the Settlement Effective Date, Company waives any and all claims that it could have filed in the Debtors' cases under Bankruptcy Code section 502(h) arising out of the Settlement Payment (the "Waived Claim").

5. **Liquidation Trustee's Limited Release.** Upon the occurrence of the Settlement Effective Date, the Liquidation Trustee, solely in its capacity as Liquidation Trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably

and unconditionally, fully, finally and forever waived, released, acquitted and discharged
Company, and its parents, subsidiaries and affiliates, and each of their past or present directors,
officers, employees, attorneys, accountants, and financial advisors, and the successors and
assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner
of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money,
accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements,
promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of
whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity,
which the Liquidation Trustee has, had, may have, or may claim to have against the Defendant
Releasees solely based upon or in any way related to the 90 Day Transfers and the Waived
Claim.

     6. **Company's Limited Release.** Effective on the Settlement Effective Date, the
Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and
forever waived, released, acquitted and discharged the Liquidation Trustee, the Debtors and their
bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors,
employees, officers, parents, subsidiaries, and the successors and assigns of any of them
(collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of
action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings,
bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances,
trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or
nature, whether known or unknown, suspected or unsuspected, in law or equity, which the
Defendant Releasees has, had, may have, or may claim to have against any of the Trustee
Releasees solely based upon or in any way related to the 90 Day Transfers and the Waived
Claim.

     7. **No Admissions.** This Settlement Agreement is not and shall not in any way be
construed as an admission by the Parties of any allegations made in connection with the 90 Day
Transfers.

     8. **Expenses.** The Parties shall bear their own costs, expenses, and attorneys' fees
incurred to date in connection with the 90 Day Transfers, the Waived Claim and this Settlement
Agreement. In the event of any dispute in connection with the enforcement of this Settlement
Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all
necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-
approved costs, incurred in connection with such action or proceeding, as determined by the
Court.

     9. **Severability.** The Parties agree that if any provision of this Settlement
Agreement is determined by a court of competent jurisdiction to be illegal, invalid or
unenforceable, that provision shall not be a part of this Settlement Agreement. The legality,
validity and enforceability of the remaining provisions shall not be affected by a provision of this
Settlement Agreement that is illegal, invalid, or unenforceable.

     10. **Miscellaneous.**

       (a) Neither this Settlement Agreement, nor any statement made or action
taken in connection with the negotiation of this Settlement Agreement, shall be offered or
received in evidence or in any way referred to in any legal action or administrative proceeding
among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and
to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to
seek damages or injunctive relief in connection therewith.

       (b) Each of the Parties hereto shall execute and deliver any and all
additional papers, documents and other assurances, and shall do any and all acts and things
reasonably necessary or appropriate in conjunction with the performance of each of the Parties'
respective obligations hereunder.

       (c) No provision of this Settlement Agreement is intended to confer any
rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the
Parties hereto and their respective successors.

       (d) This Settlement Agreement shall be governed by and construed in
accordance with the law of the State of New Jersey without regard to any choice of law
provisions.

       (e) This Settlement Agreement may be signed in counterpart originals and
delivered by facsimile or email, which, when fully executed, shall constitute a single original.

       (f) The Bankruptcy Court shall retain exclusive jurisdiction (and the
Parties consent to such retention of jurisdiction) with respect to any disputes arising from or
related to, or other actions to interpret, administer or enforce the terms and provisions of, this
Settlement Agreement.

       (g) Any statute or period of limitations, statutes of repose, or other time-

based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h) Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(i) In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j) The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k) This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l) This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m) The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[*balance of page left intentionally blank*]

11. **Bankruptcy Court Approval.** Promptly following the Parties' execution of this Agreement, the Liquidation Trustee shall move for approval of this Agreement by the Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019. Until and unless the Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect. In the event this Agreement is not approved by the Bankruptcy Court for any reason within 90 days of the execution of this Agreement by all Parties, then the Liquidation Trustee shall promptly return the Settlement Payment to Company, at which time the Parties shall be restored to the same position they were in immediately prior to the execution of this Agreement without waiver of any rights, claims, defenses or remedies, except that above paragraph 10(g) shall apply to preclude Company from asserting that any claim asserted by the Liquidating Trustee is time-barred.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated: March 23 , 2022

Dated: 3/23 , 2022

META Advisors LLC, solely in its capacity as the Liquidation Trustee of RTW Retail Winds, Inc. et al

88 INTERNATIONAL, INC.

By: [signature] 

Grace Marie Codispoti,
Its Chief Operating Officer

By: LARRY ROSENBLUM

Name: [signature]

Title: PRESIDENT

**Exhibit 8**

**Career Group, Inc.**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "<u>Settlement Agreement</u>") is entered into by and between META Advisors LLC, solely in its capacity as Liquidation Trustee (the "<u>Liquidation Trustee</u>") of the RTW Liquidation Trust (the "<u>Trust</u>"), established in the chapter 11 cases of RTW Retailwinds, Inc. and its affiliates (collectively, the "<u>Debtors</u>")[1], and not in any other capacity, on the one hand, and Career Group, Inc. (the "<u>Company</u>"), on the other hand. Company and the Liquidation Trustee may be referenced herein collectively as the "<u>Parties</u>" and/or each as a "<u>Party</u>."

### Background

WHEREAS, on or about July 13, 2020 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). Prior to the Effective Date of the Plan, the Debtors continued to operate their businesses and managed their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, On December 11, 2020 [Docket No. 690], the Bankruptcy Court entered its Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (the "<u>Plan</u>"). The Plan became effective on December 31, 2020 (the "<u>Effective Date</u>"). (See Notice of (A) Entry of Order Confirming the Joint Plan of Liquidation of RTW

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc. (4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095); Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341); Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936).

Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code; (B) The

Effective Date Thereof; and (C) Certain Deadlines [Docket No. 742].); and

WHEREAS, the Liquidation Trustee was duly appointed pursuant to the terms of

the Plan, Liquidating Trust Agreement and Declaration of Trust on the Effective Date. Per

Section 3.2.10 of the Liquidation Trust Agreement, the Liquidation Trustee has the power to

review, reconcile, prosecute, enforce, collect, compromise, settle, abandon or elect not to pursue

all Retained Causes of Action, including but not limited to, all Avoidance Actions.

WHEREAS, the Debtors and Company had a business relationship prior to the

Petition Date; and

WHEREAS, the Debtors' records reflect that Company received payments from

the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

(the "90 Day Transfers"), which the Liquidation Trustee has asserted that it can avoid and

recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections

547 and 550, which the Company disputes; and

WHEREAS, the Liquidation Trustee sent a letter to Company requesting payment

of the 90 Day Transfers, and the Parties have engaged in good faith, arms' length negotiations to

resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.      **Recitals.** The recitals set forth above are incorporated herein by

reference.

2.      **Settlement Amount.** Upon execution of this Settlement Agreement,

Company shall pay to the Liquidation Trustee the sum of Five Thousand Dollars (U.S.

2

$5,000.00) (the "Settlement Payment") on or before May 20, 2022.  The Settlement Payment shall be wired in accordance with instructions provided by the Liquidation Trustee and shall be held in escrow by the Liquidation Trustee pending the occurrence of the Settlement Effective Date (as defined below).

3.     **Settlement Effective Date.**  The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of a final, non-appealable order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

4.     **Claims Waiver.**  Upon the occurrence of the Settlement Effective Date, Company waives any and all claims that it could have filed in the Debtors' cases under Bankruptcy Code section 502(h) arising out of the Settlement Payment (the "Waived Claim").

5.     **Liquidation Trustee's Limited Release.**  Upon the occurrence of the Settlement Effective Date, the Liquidation Trustee, solely in its capacity as Liquidation Trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, and its parents, subsidiaries and affiliates, and each of their past or present directors, officers, employees, attorneys, accountants, and financial advisors, and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity,

3

which the Liquidation Trustee has, had, may have, or may claim to have against the Defendant

Releasees solely based upon or in any way related to the 90 Day Transfers and the Waived Claim.

6.     **Company's Limited Release.**  Effective on the Settlement Effective Date,

the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally

and forever waived, released, acquitted and discharged the Liquidation Trustee, the Debtors and

their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors,

employees, officers, parents, subsidiaries, and the successors and assigns of any of them

(collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of

action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings,

bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances,

trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature,

whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant

Releasees has, had, may have, or may claim to have against any of the Trustee Releasees solely

based upon or in any way related to the 90 Day Transfers and the Waived Claim.

7.     **No Admissions.**  This Settlement Agreement is not and shall not in any

way be construed as an admission by the Parties of any allegations made in connection with the

90 Day Transfers.

8.     **Expenses.**  The Parties shall bear their own costs, expenses, and attorneys'

fees incurred to date in connection with the 90 Day Transfers, the Waived Claim and this

Settlement Agreement.  In the event of any dispute in connection with the enforcement of this

Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees,

costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved

4

or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

9.      **Severability.**  The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

10.     **Miscellaneous.**

(a)     Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)     Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

5

(d)     This Settlement Agreement shall be governed by and construed in accordance with the law of the State of New Jersey without regard to any choice of law provisions.

(e)     This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)     The Bankruptcy Court shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)     Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)     Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

6

(i)     In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)     The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)     This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[*balance of page left intentionally blank*]

7

11.     **Bankruptcy Court Approval.** Promptly following the Parties' execution of this

Agreement, the Liquidation Trustee shall move for approval of this Agreement by the

Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019. Until and unless the

Bankruptcy Court enters an order of approval, this Agreement shall have no binding effect. In

the event this Agreement is not approved by the Bankruptcy Court for any reason within 90 days

of the execution of this Agreement by all Parties, then the Liquidation Trustee shall promptly

return the Settlement Payment to Company, at which time the Parties shall be restored to the

same position they were in immediately prior to the execution of this Agreement without waiver

of any rights, claims, defenses or remedies, except that above paragraph 10(g) shall apply to

preclude Company from asserting that any claim asserted by the Liquidating Trustee is time-

barred.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s)

set forth below:

ACCEPTED AND AGREED TO BY:

Dated: _____April 20_____, 2022

META Advisors LLC, solely in its capacity as the
Liquidation Trustee of RTW Retail Winds, Inc.
et al

By: _Grace Marie Codispoti_____
        Grace Marie Codispoti,
        Its Chief Operating Officer

Dated: _4 . 19_____, 2022

CAREER GROUP, INC.

By: _____

Name: ___MICHAEL B LEVINE___

Title: ___PRESIDENT___

8

**Exhibit 9**

**Like a Glove Company**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between META Advisors LLC, solely in its capacity as Liquidation Trustee (the "Liquidation Trustee") of the RTW Liquidation Trust (the "Trust"), established in the chapter 11 cases of RTW Retailwinds, Inc. and its affiliates (collectively, the "Debtors")[1], and not in any other capacity, on the one hand, and Like a Glove Company (the "Company"), on the other hand.  Company and the Liquidation Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

### Background

WHEREAS, on or about July 13, 2020 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  Prior to the Effective Date of the Plan, the Debtors continued to operate their businesses and managed their assets as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

WHEREAS, On December 11, 2020 [Docket No. 690], the Court entered its Findings of Fact, Conclusions of Law, and Order (I) Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc. and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code (the "Plan"). The Plan became effective on December 31, 2020 (the "Effective Date"). (See Notice of (A) Entry of Order Confirming the Joint Plan of Liquidation of RTW Retailwinds, Inc.

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number, as applicable, are as follows: RTW Retailwinds, Inc. (1445); Lerner New York Holding, Inc. (2460); Lernco, Inc. (4787); Lerner New York, Inc. (2137); New York & Company, Inc. (4569); Lerner New York GC, LLC (6095); Lerner New York Outlet, LLC (6617); New York & Company Stores, Inc. (6483); FTF GC, LLC (7341); Lerner New York FTF, LLC (6279); Fashion to Figure, LLC (6997); FTF IP Company, Inc. (6936).

and Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code; (B) The Effective Date

Thereof; and (C) Certain Deadlines [Docket No. 742].); and

WHEREAS, the Liquidation Trustee was duly appointed pursuant to the terms of

the Plan, Liquidating Trust Agreement and Declaration of Trust on the Effective Date. Per

Section 3.2.10 of the Liquidation Trust Agreement, the Liquidation Trustee has the power to

review, reconcile, prosecute, enforce, collect, compromise, settle, abandon or elect not to pursue

all Retained Causes of Action, including but not limited to, all Avoidance Actions.

WHEREAS, the Debtors and Company had a business relationship prior to the

Petition Date; and

WHEREAS, the Debtors' records reflect that Company received payments from

the Debtors on account of outstanding indebtedness within the 90 days prior to the Petition Date

(the "90 Day Transfers"), which the Liquidation Trustee has asserted that it can avoid and

recover for the benefit of the Debtors' bankruptcy estates pursuant to Bankruptcy Code sections

547 and 550, and the Company disputes; and

WHEREAS, the Liquidation Trustee sent a letter to Company requesting payment

of the 90 Day Transfers, and the Parties have engaged in good faith, arms' length negotiations to

resolve the matter; and

NOW THEREFORE, for good and valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1.      **Recitals.**  The recitals set forth above are incorporated herein by

reference.

2.      **Settlement Amount.**  Upon execution of this Settlement Agreement,

Company shall pay to the Liquidation Trustee the sum of Seven Thousand five Hundred Dollars

2

(U.S. $7,500.00) (the "Settlement Payment") on or before June 3, 2022.  The Settlement Payment shall be wired in accordance with instructions provided by the Liquidation Trustee. If the Bankruptcy Court does not approve the settlement set forth in this Agreement, then Liquidating Trustee will return to Company the Settlement Payment not later than 10 days after an Order denying approval of the Settlement Agreement becomes a Final Order.

      3.    **Settlement Effective Date.**  The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) payment of the Settlement Payment, and (iii) entry of an order of the Bankruptcy Court approving the Settlement Agreement (the "Settlement Effective Date").

      4.    **Claims Waiver.**  Effective on the Settlement Effective Date, Company waives any and all claims that it filed or could have filed in the cases of the Debtors, including the scheduled claim in the amount of $11,000.00, and any claim under Bankruptcy Code section 502(h) arising out of the Settlement Payment (the "Waived Claims").

      5.    **Liquidation Trustee's Limited Release.**  Effective on the Settlement Effective Date, the Liquidation Trustee, solely in its capacity as Liquidation Trustee of the Debtors, and not in any individual or other capacity, shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Company, its directors, employees, officers and the successors and assigns of any of them (collectively, the "Defendant Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Liquidation Trustee has, had,

DOCS_LA:342489.1 73215/003

may have, or may claim to have against the Defendant Releasees solely in connection with the 90 Day Transfers.

6.      **Company's Limited Release.**  Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Liquidation Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees solely in connection with the 90 Day Transfers and the Waived Claims.

7.      **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the 90 Day Transfers.

8.      **Expenses.**  The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the 90 Day Transfers, the Waived Claim and this Settlement Agreement.  In the event of any dispute in connection with the enforcement of this Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved

4

or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

9.      **Severability.**  The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement.  The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

10.     **Miscellaneous.**

(a)     Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b)     Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c)     No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties hereto and their respective successors.

DOCS_LA:342489.1 73215/003

(d)    This Settlement Agreement shall be governed by and construed in accordance with the law of the State of New Jersey without regard to any choice of law provisions.

(e)    This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f)    The United States Bankruptcy Court for the District of New Jersey shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g)    Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Preferential Transfers is hereby tolled until the Settlement Effective Date.  Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(h)    Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement.  The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

6

(i)     In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(j)     The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(k)     This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(l)     This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(m)     The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

7

(n)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[*balance of page left intentionally blank*]

11.   **Bankruptcy Court Approval.**  Promptly following the Parties' execution of this

Agreement, the Liquidation Trustee shall move for approval of this Agreement by the

Bankruptcy Court pursuant to Federal Rules of Bankruptcy Procedure 9019.  Until and

unless the Bankruptcy Court enters an order of approval, this Agreement shall have no

binding effect.

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the

date(s) set forth below:

ACCEPTED AND AGREED TO BY:

Dated:  __May 10__ , 2022                    Dated: _May 9_ , 2022

META Advisors LLC, solely in its capacity as the       LIKE A GLOVE COMPANY
Liquidation Trustee of RTW Retail Winds, Inc.
et al

By:_____          By:_____ DBA LIKE A
      Grace Marie Codispoti,                                                                  GLOVE
      Its Chief Operating Officer               Name: _DEIRDRE H.R. LORENZ_        COMPANY
                                                Title: _SOLE PROPRIETOR - MODEL_